UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAYMOUNT URGENT CARE PC, AND
ROBERT A. CLINTON, JR., INDIGO
INSTALLATIONS, INC., AND CHRISTOPHER A.
TURRENTINE, individually, and on behalf of all
those similarly situated,

                 Plaintiffs,

v.

GOFUND ADVANCE, LLC, FUNDING 123, LLC,
MERCHANT CAPITAL LLC, ALPHA
RECOVERY PARTNERS, LLC, YITZCHOK WOLF,
YOSEF BREZEL, JOSEPH KROEN, and YISROEL
C. GETTER,

                 Defendants.

Case No. 1:22-cv-01245-JSR

---

### AFFIDAVIT OF YOSEF BREZEL

Yosef Brezel, being duly sworn, hereby deposes and states the following:

1. I am over the age of 18 and reside in the State of New York. I am an authorized representative of Defendant GoFund Advance, LLC ("GFA") and, as such, I am fully familiar with the facts and circumstances stated herein. I am authorized to make this affidavit on behalf of Plaintiff.

2. I have reviewed Plaintiff's books and records as they pertain to this file and am fully familiar with such. The business records annexed to this Affidavit are made in the regular course of business and are maintained under my supervision and control. The records were made in the regular course of Plaintiff's business at or around the time of the transactions reflected therein (or within a reasonable time thereafter). The information reflected in the records was

given to the recorder by someone with personal knowledge and a business duty to transmit the information accurately.

3. I make this Affidavit in support of GFA's Opposition to the Motion of Plaintiffs Haymount Urgent Care PC ("Merchant") and Robert A. Clinton, Jr. ("Dr. Clinton") (together, "Movants") for a Preliminary Injunction against GFA (the "Motion").

4. GFA is a Connecticut limited liability company engaged in the receivable financing business.

5. On January 20, 2022, GFA and Merchant entered into an agreement for the Purchase and Sale of Future Receivables (the "Purchase Agreement") pursuant to which GFA purchased 45% (the "Purchased Percentage") of Merchant's total future accounts receivable up to the sum of $1,499,990 (the "Purchased Amount") in exchange for an upfront purchase price of $1,000,000 (the "Purchase Price"). A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit A**.

6. Merchant agreed to remit the Purchased Amount to GFA via daily ACH debits in the amount of $60,000 (the "Remittance"). The parties agreed that the Remittance was a good faith estimate of the Purchased Percentage multiplied by the revenues of Merchant.

7. The Purchase Agreement provided that GFA would debit the Remittance each business day from a designated account (the "Account"). In Section 1.1. of the Purchase Agreement, Merchant "authorize[d] GFA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to GFA for the receipts as specified herein and to pay such amounts to GFA" and agreed that "[t]hese authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by GFA or not." At page 10 of the Purchase Agreement, Merchant executed an

"AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)" (the "Authorization Agreement"). The Authorization Agreement authorized GFA to debit from a certain Bank of America account and a certain Wells Fargo account.

8. The Remittance was subject to the Purchase Agreement's mandatory reconciliation or "true up" provision, which ensured that the aggregate amount of Remittances could be adjusted to reflect the Purchased Percentage of Merchant's actual receipts for each period. That section (Section 1.4) provides as follows:

> As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount (for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to GFA after GFA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to eric@gofundadvance.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by GFA with in five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by GFA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request.

9. The Remittance was also subject to the Purchase Agreement's mandatory adjustment provision, pursuant to which the Remittance could be adjusted prospectively (as opposed to retroactively) to "more closely reflect Merchant's actual receipts." That section (Section 1.5) provides as follows:

> As long an Event of Default. or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its Future Receipts, Merchant may give notice to GFA to request a decrease in the Remittance. All requests

hereunder must be in writing to eric@gofundadvance.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts. refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide GFA with viewing access to their bank account as well as all information reasonably requested by GFA to property calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

10. GFA was not obligated to conduct a reconciliation or adjustment unless Merchant made a written request pursuant to Section 1.4 or 1.5 and provided the necessary information. Merchant never made such a written request or provided the necessary information such a reconciliation or adjustment was never performed.

11. On page 1 of the Purchase Agreement, Merchant acknowledged that there could be "no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by GFA" and that it was "selling a portion of a future revenue stream to GFA at a discount, not borrowing money from GFA." Also on page 1, the parties agreed that "Merchant going bankrupt...in and of itself, does not constitute a breach of this Agreement.

12. In Section 1.1 of the Purchase Agreement, Merchant agreed that its sale of future receivables was "not intended to be, nor shall it be construed as a loan from GFA to Merchant.

13. To secure its obligations under the Purchase Agreement, Merchant executed a Security Agreement in which it granted to GFA a security interest in certain collateral. The Security Agreement is a part of the Purchase Agreement attached hereto as Exhibit A. The Security Agreement provided that, upon an Event of Default, GFA could exercise its security

interest "without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral" and that "GFA shall have the right to notify account debtors at any time."

14. In addition, Dr. Clinton executed a personal Guaranty (the "Guaranty") in which he agreed to be jointly and severally liable for all amounts owed to GFA in the event of Merchant's default. The Guaranty is also a part of the Purchase Agreement attached hereto as Exhibit A. The Guaranty stated that Dr. Clinton would "not be personally liable *for* any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement."

15. GFA and Dr. Clinton, on behalf of Merchant, agreed that GFA would fund the Purchase Price in two parts.

16. On January 20, 2022, GFA funded the first half of the Purchase Price, less applicable fees. These fees, amounting to 20% of the funded amount, are clearly and explicitly disclosed in Appendix A to the Purchase Agreement, entitled "THE FEE STRUCTURE."

17. As I understand the facts, on the morning of February 7, 2022, Dr. Clinton, on behalf of Merchant, spoke with a GFA representative, Michael Wilson. According to Mr. Wilson, Dr. Clinton advised that he wanted GFA to send the second half of the Purchase Price. Shortly thereafter, however, Dr. Clinton emailed Mr. Wilson stating, "I would really rather not get the second part of the contract." But GFA had already sent the second half of the Purchase Price (pursuant to Dr. Clinton's earlier instructions). As such, Mr. Wilson responded stating, "The money is in your bank account, we agreed to the deal and you confirmed you want it [*i.e.*, that morning]." At any rate, Merchant kept the $400,000 that GFA sent on February 7, 2022, and never return[ed] the money to GFA.

18. In mid-February 2022, Merchant defaulted under the Purchase Agreement by repeatedly failing to give GFA 24 hours advance notice that there would be insufficient funds in the account such that the ACH of the Remittance amount was not honored by Merchant's bank. A true and correct copy of GFA's payment history on this transaction is attached hereto as **Exhibit B**. Upon Merchant's default, GFA exercised its remedies under the Security Agreement and UCC Article 9 by, among other things, authorizing its collection company, Alpha Recovery Partners, to send UCC lien notices to account debtors of Merchant.

19. I am advised by counsel that Dr. Clinton has filed an Affidavit in support of the Motion in which he claims that the Purchased Percentage did not accurately reflect 45% of Merchant's receivables. As noted above, however, Sections 1.4 and 1.5 of the Purchase Agreement provided a procedure by which Merchant could request a reconciliation so that "the total amount debited by GFA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request." Merchant never requested such a reconciliation. Likewise, and also as noted above, Section 1.5 of the Purchase Agreement provided a procedure by which Merchant could request a prospective adjustment so that "[t]he Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts." Merchant never requested such an adjustment.

20. I am advised by counsel that Dr. Clinton states in his Affidavit that GFA has improperly taken thousands of dollars in unauthorized overpayments from Merchant as allegedly

demonstrated by Merchant's bank statements. This statement is incorrect as evidenced by the payment history attached hereto as Exhibit B.

21. I am advised by counsel that Dr. Clinton states in his Affidavit that, throughout February 2022, GFA intentionally attacked every one of Merchant's bank accounts by fraudulently debiting $60,000. These debits, however, were authorized under the Purchase Agreement and the Authorization Agreement referenced above.

22. I am advised by counsel that Dr. Clinton states in his Affidavit that GFA attacked Merchant's Bank of America bank account on February 9, February 10, February 16, February 18, and February 23, 2022, by fraudulently attempting to debit $60,000. Again, however, these attempted debits were authorized under the Purchase Agreement and the Authorization Agreement, which specifically identifies the Bank of America account.

23. I am advised by counsel that Dr. Clinton states in his Affidavit that, on February 16, February 18, and February 23, 2022, GFA attempted to bypass its block from debiting from Merchant's account by debiting $60,000 from Merchant's bank account under the name "GoFund b" as opposed to "GoFund." Dr. Clinton's assertion is incorrect. As evidenced by the screenshot contained within paragraph 59 of Dr. Clinton's Affidavit, "Go Fund" is the entity debiting the account. The way the bank processes batches when we send them is by date and batch number. Paragraph 69 references b150222012; b is for "Batch"; 15 is the day of the month; 02 is the month; 22 is the year; and 012 is the 12th batch of the day. In addition, attached as **Exhibit C** is an "Update Schedule" pursuant to which the ACH debit referenced in paragraph 59 of Dr. Clinton's Affidavit was initiated and the payee was clearly designated as "Go Fund".

24. Based upon the foregoing, it is respectfully requested that the Court deny the relief requested in the Motion.

_____
Yosef Brezel

## ACKNOWLEDGMENT

STATE OF NEW YORK    )
                                           ss:
COUNTY OF  Kings      )

On March 16, 2022 before me, the undersigned, personally appeared Yosef Brezel, an authorized representative of GoFund Advance, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his representative capacity, and that by his signature on the instrument, he executed the instrument.

_____
Notary Public

BREINDY KRAUSZ
Notary Public, State of New York
No. 01KR6390280
Qualified in Kings County
Commission Expires April 15, 2023