```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| HAYMOUNT URGENT CARE PC; ROBERT A. CLINTON, JR.; INDIGO INSTALLATIONS, INC.; and CHRISTOPHER A. TURRENTINE; et al.,<br><br>    Plaintiffs,<br><br>    -v-<br><br>GOFUND ADVANCE, LLC; FUNDING 123, LLC; MERCHANT CAPITAL LLC; ALPHA RECOVERY PARTNERS, LLC; YITZCHOK ("ISAAC") WOLF; JOSEF BREZEL; JOSEPH KROEN; AND YISROEL C. GETTER,<br><br>    Defendants. | 22-cv-1245 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

   This is a putative class action concerning allegedly fraudulent and usurious loans and abusive collection tactics employed by defendants, which are companies and individuals engaged in the "merchant cash advance" ("MCA") industry. MCA agreements are financial products, often marketed to small businesses through allegedly high-pressure sales operations resembling "boiler rooms," that purport to purchase at a discount a portion of a business's future receivables. The plaintiffs are two small businesses (a North Carolina urgent care facility and a Texas construction contractor) and their principals that entered into MCA agreements with defendants.

   Now before the Court is the motion of plaintiff Haymount Urgent Care PC ("Haymount") and its principal, Dr. Robert A. Clinton, Jr.,

1

for a preliminary injunction against defendant GoFund Advance, LLC ("Gofund").[1] Haymount seeks to convert a temporary restraining order previously entered in its favor, ECF 36, into a narrower preliminary injunction.

For the reasons set forth below, the Court grants Haymount's motion. The Court assumes the parties' familiarity with the facts and procedural history of this case.

## I. Discussion

"A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).[2] To obtain a preliminary injunction, a party need only demonstrate likelihood of success on one claim against each defendant. See 725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019).

---

[1] Plaintiffs' counsel confirmed at argument that the motion only seeks preliminary injunctive relief against GoFund, not any other defendant.

[2] Unless otherwise specified, all internal quotation marks, citations, omissions, elisions, emphases, and alterations are omitted from all sources cited herein.

A. **Likelihood of Success**

Haymount moves for a preliminary injunction in connection with two of its breach of contract and RICO claims. The Court concludes that Haymount has established a sufficient likelihood of success on its breach of contract claim, and this is sufficient to grant the motion. Haymount has failed to establish a likelihood of success on its RICO claim, because counsel took the erroneous position at oral argument that he need not now establish that plaintiffs would likely prove the enterprise element of their RICO claim.

1. Breach of Contract

Haymount's primary argument at this stage is that, assuming the MCA agreements' validity as MCA transactions rather than as loans, GoFund breached the contract associated with Haymount's sixth MCA transaction by failing to timely pay Haymount the purportedly agreed-upon purchase price. Instead, Haymount alleges that GoFund withdrew excessive fees and withheld $400,000 of the $1 million purchase price until Haymount had nearly paid GoFund as much as the total amount ultimately advanced on the contract.

The relevant facts are as follows: On January 20, 2022, Haymount and GoFund entered into a sixth MCA agreement, which provided that GoFund would advance $1 million as a "purchase price" in exchange for the purported purchase of all of Haymount's receipts until Haymount had repaid $1.499 million through daily ACH withdrawals of $60,000. ECF 60-1 at 3. On its face, therefore, the repayment should have been completed in approximately 25 days. However, GoFund initially provided

3

Haymount with only $400,000, after supposedly subtracting $100,000 in fees. See Affidavit of Dr. Robert Clinton, ECF 38 ¶ 50; Affidavit of Mechie Gross, ECF 57 ¶ 3; ECF 60-1 at 10 (fee schedule). On February 7, 2022, after Haymount had made approximately $785,000 in payments to GoFund over a little more than two weeks, GoFund deposited an additional $400,000, supposedly reflecting a deduction of another $100,000 in fees. Clinton Aff. ¶ 51; Opp. 9-10. Under the contract, Haymount was required to notify GoFund 24 hours in advance if one of the ACH withdrawals of the $60,000 daily remittance would result in an insufficient funds warning; failure to provide notice was identified in the contract as an event of default. ECF 60-1 at 6 § 3.1(d). Several of Haymount's remittance payments, beginning on January 28, 2022, resulted in ACH payments being returned for insufficient funds, but Haymount did not notify GoFund as required. See ECF 60-2.

There are four elements for pleading breach of contract: the existence of the contract, the plaintiff's adequate performance, the defendant's breach, and damages. Dee v. Rakower, 112 A.D.3d 204, 208-209 (2d Dep't 2013). For purposes of this claim, the existence of the MCA contract is undisputed.

Haymount contends that GoFund breached by initially depositing only $400,000 of the $1 million purchase price, withdrawing excessive fees and withholding a second $400,000 tranche until later. Mot. 8-9. GoFund responds that the fees structure was disclosed in the contract and that the second payment was made pursuant to an agreement between GoFund and Haymount. Opp. 9-10. But the only evidence GoFund provides

4

of an agreement to pay the purchase price in two tranches is the bare assertion in a declaration that such an agreement existed. See Affidavit of Yosef Brezel, ECF 59 ¶ 15. Defense counsel was unable during oral argument to locate any provision of the applicable contract that permitted GoFund to pay the purchase price in tranches, rather than one cash advance. That Clinton later asked for the rest of the money to be sent does not establish that GoFund was entitled not to send the full purchase price at the outset. Cf. Gross Aff. ¶¶ 2-3. Therefore, Haymount is likely to prove that GoFund breached the contract on January 20, 2022 by failing to send the full purchase price, minus applicable and appropriately disclosed fees.[3]

GoFund argues that Haymount cannot establish its own performance, because Haymount failed to provide notice before certain ACH withdrawals were returned for insufficient funds. But according to GoFund's records, the first insufficient funds alert occurred on January 28, 2022. ECF 60-2. But this is after GoFund's likely breach, which occurred at the outset of the transaction on January 20, 2022. (Indeed, the payment may not have failed had the account been fully funded from the outset.) Therefore, Haymount will likely prove that it adequately performed, at least up to the point of GoFund's breach.

Haymount alleged a litany of harms that supposedly resulted from its supposed default on the MCA contract. And this default was clearly

---

[3] The Court need not and does not now address whether GoFund's fee structure was adequately disclosed in the contract to avoid a breach claim.

5

hastened because GoFund failed to timely deposit the cash advance in Haymount's account. Therefore, Haymount is likely to succeed in proving contract damages and, by extension, in prevailing on its breach of contract claim.

2. RICO

With respect to Haymount's RICO claim, Haymount has failed to establish a likelihood of success. At oral argument, plaintiffs' counsel conceded that he was not trying to establish and had not established a likelihood of success in proving a RICO enterprise. Haymount has alleged a RICO enterprise consisting of all defendants and engaged in the systemaic collection of debts that are criminally usurious under New York law. Of course, the existence of an enterprise is an element of a RICO claim. See Durante Bros. & Sons v. Flushing Nat. Bank, 755 F.2d 239, 248 (2d Cir. 1985). And a movant requesting a preliminary injunction must establish a likelihood of success on each essential element of the relevant claims. But plaintiffs' counsel conceded that Haymount had not submitted documents and declarations to establish a RICO enterprise, and he puzzlingly insisted that he only now has to prove that loans were usurious.[4] This is wrong as a

---

[4] Plaintiffs' counsel's reasoning -- that usury is an affirmative defense -- is inapposite, because this is not an action by a lender to enforce a loan agreement. Rather, plaintiffs are bringing affirmative RICO claims, for which a preliminary injunction will only issue if they adduce evidence supporting each essential element (including the existence of the RICO enterprise). The plaintiffs must prove several specific elements as part of its RICO claim concerning the alleged enterprise's involvement in the collection of unlawful

matter of law and precludes issuance of a preliminary injunction on the RICO claim.

### B. Irreparable Harm and the Public Interest

Haymount has amply demonstrated that it would suffer irreparable harm absent a preliminary injunction. The papers establish that defendants' issuance of UCC lien letters has frozen its bank and health insurance accounts, effectively locking up the urgent care center's finances. If the urgent care center is unable to collect insurance reimbursements, and thus cannot make payroll or purchase medical supplies, there is a material risk of the business's collapse. That would constitute an irreparable harm for which later payment of money damages would be inadequate.

The urgent care center's inability to continue as a going concern would also disserve the public interest, because it would eliminate a source of medical care to the people of Fayetteville, N.C. To withdraw medical resources from any community would seriously harm the public interest at any time, but the implications are particularly serious in light of the continuing COVID-19 pandemic, since Haymount avers that it provides extensive testing and treatment capacity for its community.

---

debts, with reference to state usury laws. See Durante Bros. and Sons, 755 F.2d at 248.

## II. Conclusion

For the reasons set forth above, the Court grants Haymount's motion for a preliminary injunction. During the pendency of this case, GoFund is enjoined from continuing to debit unauthorized monetary amounts from bank accounts belonging to Haymount or Dr. Clinton and from freezing bank accounts, health insurance accounts, assets and receivables belonging to Haymount or Dr. Clinton. GoFund is further enjoined to withdraw and retract any UCC Lien Letters sent to third parties and to direct any other person or entity acting on its behalf to do the same.

The Clerk is directed to apply the $5,000 bond previously posted in connection with the temporary restraining order to the preliminary injunction as a bond thereon.

SO ORDERED.

New York, NY
March 21, 2022

JED S. RAKOFF, U.S.D.J.