UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————

HAYMOUNT URGENT CARE PC, AND
ROBERT A. CLINTON, JR., INDIGO
INSTALLATIONS, INC., AND CHRISTOPHER A.
TURRENTINE, individually, and on behalf of all
those similarly situated,                                                    Case No. 1:22-cv-01245-JSR

                    Plaintiffs,

      v.

GOFUND ADVANCE, LLC, FUNDING 123, LLC,
MERCHANT CAPITAL LLC , ALPHA
RECOVERY PARTNERS, LLC, YITZCHOK WOLF,
YOSEF BREZEL, JOSEPH KROEN, and YISROEL
C. GETTER,

                Defendants.
———————————————————————————

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF PARTIAL MOTION TO DISMISS

John A. Mueller
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216
716.853.5100
jmueller@lippes.com

*Counsel for Defendants*

i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………..iii

PRELIMINARY STATEMENT………………………………………………………1

FACTUAL ALLEGATIONS…………………………………………………………..3

      I.     The Parties……………………………………………………………...3

      II.    The Purchase Agreements……………………………………………….3

      III.   The Security Agreements and Guaranties………………………………5

      IV.   The Amended Complaint…………………………………………………5

LEGAL STANDARD…………………………………………………………………..6

LEGAL ARGUMENT…………………………………………………………………7

      I.     Plaintiffs Have Failed to State a Claim Under Section 1962(c) of the RICO Statute……………………………………………………………7

          A.    Plaintiffs Have Failed to State a Claim Under the RICO Statute for Collection of an Unlawful Debt…………………………………7

              1.    Plaintiffs' Simple Usury Allegations Are Insufficient to Invoke RICO Liability Intended to Combat Organized Crime……8

              2.    Plaintiffs Have Failed to Plead Collection of an Unlawful Debt Because the Parties' Transaction Was Not a Loan………….9

                  a.    A Transaction Cannot be Usurious if it is Not a Loan…….9

                  b.    The Parties' Merchant Cash Advance Transactions Were Not Loans…………………………………………10

                      i.    The Purchase Agreements Have Mandatory Reconciliation and Adjustment Provisions………12

                      ii.   The Purchase Agreements Have Indefinite Terms…………………………………………13

                      iii.  The Merchants' Filing for Bankruptcy is Not an Event of Default………………………14

B.     Plaintiffs Have Failed to Establish a Pattern of Racketeering Activity Through Wire Fraud……………………………………………14

         1.     Plaintiffs Have Failed to Adequately Plead the Continuity Requirement……………………………………………………...15

         2.     Plaintiffs Have Failed to Plead Wire Fraud with Sufficient Particularity………………………………………………………16

C.     GFA, Funding 123, Merchant Capital and Alpha Are Not Proper RICO Defendants…………………………………………………...18

II.     Plaintiffs Have Failed to State a Claim for RICO Conspiracy Under Section 1962(d)………………………………………………………..18

III.     Plaintiffs Have Failed to State a Claim for a Declaratory Judgment that the Purchase Agreements Are Void Ab Initio…………………………………18

IV.     Indigo Has Failed to State a Claim for a Declaratory Judgment that its Settlement with GFA is Void……………………………………………19

V.     Plaintiffs Have Failed to State a Claim for Fraud………………………..20

VI.     Indigo Has Failed to State a Claim for Violation of Section 1983……………22

CONCLUSION……………………………………………………………………..23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)……………………………………………………………6

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc.,
98 F.3d 13, 20 (2d Cir. 1996)……………………………………………………21

*Chambers v. Time Warner, Inc.*,
282 F.3d 147, 152 (2d Cir. 2002)………………………………………………6

*Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*,
69 N.Y.S.3d 798 (1st Dep't 2018)………………………………………………10

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
477 F. Supp. 3d 123, 128 (S.D.N.Y. 2020)……………………………………6

*Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*,
252 F. Supp. 3d 274, 287 (S.D.N.Y. 2017)……………………………..2, 8, 10, 11, 13

*Cont. Transp. Servs., Inc. v. New Era Lending LLC*,
2018 WL 11226077, at *6 (S.D.N.Y. Oct. 26, 2018)…………………………..9, 16, 17

*DeFalco v. Bernas*,
244 F.3d 286, 305 (2d Cir. 2001)………………………………………………7

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242, 1247 (2d Cir. 1987)……………………………………………...16

*Donatelli v. Siskind*,
170 A.D.2d 433, 434 (2d Dep't 1991)……………………………………………...9, 10

*Durante Bros. & Sons v. Flushing Nat. Bank*,
755 F.2d 239, 248 (2d Cir. 1985)………………………………………………8

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011)…………………………………………20, 21

*Figueroa Ruiz v. Alegria*,
896 F.2d 645, 650 (1st Cir.1990)………………………………………………7

*First Asset Capital Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159, 182 (2d Cir. 2004)……………………………………………...18

*Giventer v. Arnow*,
    37 N.Y.2d 305, 309 (1975)……………………………………………………………10

*Grace Int'l Assembly of God v. Festa*,
    797 F. App'x 603, 605 (2d Cir. 2019)………………………………………………...15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)……………………………………………………………………...15

*IBIS Capital Grp., LLC v. Fletcher*,
    2018 WL 2187076, at *3 (Sup. Ct. Rockland Cty. Mar. 5, 2018)…………………...12, 14

*IBIS Capital Grp., LLC v. Four Paws Orlando LLC*,
    2017 WL 1065071, at *3 (Sup. Ct. Nassau Cty. Mar. 10, 2017)……………………13, 14

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69, 72 (2d Cir. 1995)…………………………………………………………...6

*K9 Bytes, Inc. v. Arch Cap. Funding, LLC*,
    57 N.Y.S.3d 625, 633 (N.Y. Sup. Ct. 2017)………………………………………12, 13, 19

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649, 655 (S.D.N.Y. 1996)…………………………………………………7

*Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*,
    2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012)………………………..10

*Kennard L. P.C. v. High Speed Cap. LLC*,
    154 N.Y.S.3d 522 (4th Dep't 2021)……………………………………………………...10

*LCS Grp., LLC v. Shire LLC*,
    2019 WL 1234848, at *6 (S.D.N.Y. Mar. 8, 2019)……………………………………...21

*McGee v. State Farm Mut. Auto. Ins. Co.*,
    2009 WL 2132439, at *5 (E.D.N.Y. July 10, 2009)……………………………………22

*McLaughlin v. Anderson*,
    962 F.2d 187, 191 (2d Cir. 1992)……………………………………………………...16

*Merch. Cash & Capital, LLC v. Transfer Int'l Inc.*,
    2016 WL 7213444, at *3 (Sup. Ct. Nassau Cty. Nov. 2, 2016)…………………………13

*OT Aspekt & Chiropractic PLLC v. Fox Cap. Grp., Inc.*,
    154 N.Y.S.3d 217 (N.Y. Sup. Ct. 2021)………………………………………………19

*Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*,
    141 N.Y.S.3d 319 (2d Dep't 2021)………………………………………....19

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
    2019 WL 1473090, at *6 (E.D.N.Y. Apr. 3, 2019)……………………………...11, 12, 14

*Principis Cap., LLC v. I Do, Inc.*,
    160 N.Y.S.3d 325, 327 (2d Dep't 2022)……………………………………10, 11, 12, 14

*Related Companies, L.P. v. Ruthling*,
    2017 WL 6507759, at *18 (S.D.N.Y. Dec. 18, 2017)…………………………………...15

*Rubenstein v. Small*,
    273 A.D. 102, 104 (1st Dep't 1947)……………………………………………..10

*Scantek Med., Inc. v. Sabella*,
    582 F.Supp.2d 472, 474 (S.D.N.Y. 2008)………………………………………19

*Seidel v. 18 E. 17th St. Owners*,
    79 N.Y.2d 735, 744 (1992)………………………………………………..9

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178, 184 (2d Cir. 2008)…………………………………………....15

*Stewart M. Muller Const. Co. v. New York Tel. Co.*,
    40 N.Y.2d 955, 956, (1976)………………………………………………...20

*Ujueta v. Euro-Quest Corp.*,
    29 A.D.3d 895, 895-96 (2d Dep't 2006)………………………………………10

*United States v. Binday*,
    804 F.3d 558, 569 (2d Cir. 2015)…………………………………………....16

*United States v. Greenberg*,
    835 F.3d 295, 305 (2d Cir. 2016)…………………………………………....16

*Womack v. Cap. Stack, LLC*,
    2019 WL 4142740, at *5 (S.D.N.Y. Aug. 30, 2019)……………………………………11

*Zoo Holdings, LLC v. Clinton*,
    814 N.Y.S.2d 893 (Sup. Ct. 2006)………………………………………………10

**Statutes**

18 U.S.C. § 1961……………………………………………………………………..9

18 U.S.C. § 1962……………………………………………………………………………5, 7, 18

42 U.S.C. § 1983……………………………………………………………………………2, 6, 22

Conn. Gen. Stat. Ann. § 52-278………………………………………………………...22, 23

Defendants GoFund Advance, LLC ("GFA"), Funding 123, LLC ("Funding 123"), Merchant Capital LLC ("Merchant Capital"), Alpha Recovery Partners, LLC ("Alpha"), Yitzchok Wolf, Yosef Brezel, Joseph Kroen, and Yisroel C. Getter (together, "Defendants") respectfully submit this Memorandum of Law in Support of their Partial Motion to Dismiss the Amended Complaint of Plaintiffs Haymount Urgent Care PC ("Haymount"), Robert A. Clinton, Jr. ("Dr. Clinton"), Indigo Installations, Inc. ("Indigo"), and Christopher Turrentine (together, "Plaintiffs") and state as follows.

## PRELIMINARY STATEMENT

Defendants respectfully move the Court to dismiss all of the claims in Plaintiffs' Amended Class Action Complaint (the "Complaint") except for Haymount's breach of contract claim.

At its heart, this case is a contract action between sophisticated, commercial entities. GFA, Funding 123, and Merchant Capital (together, the "Funding Companies") are engaged in the receivables financing business. They contracted to purchase, at a discount, a percentage of the future receivables of Haymount and Indigo (together, the "Merchants") up to a certain sum. After the Merchants defaulted under their respective contracts with GFA, GFA began collection proceedings. In response, the Merchants claimed that GFA had failed to comply with certain contractual terms.

Instead of filing a simple breach of contract action, however, Plaintiffs filed a 333-paragraph putative class action Complaint – consisting largely of legal argument, inflammatory and irrelevant allegations and press articles, and other documents regarding non-parties – asserting, among other things, baseless claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Essentially, Plaintiffs argue that, because of their subjective belief that the parties' transactions were loans and not purchases of receivables – a belief rejected by literally dozens of

New York courts – Defendants should be subject to laws intended to combat organized crime.  As one New York court noted, a party's claim that a transaction is a loan instead of a purchase of receivables "is not helped by extravagant invocation of laws prohibiting racketeering by organized crime."  *Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 287 (S.D.N.Y. 2017).  Respectfully, Plaintiffs have failed to state a claim under the RICO statute and their RICO claims should be dismissed.

Plaintiffs' claim for a declaratory judgment that the parties' agreements are criminally usurious and, therefore, "void ab initio" fails because corporate entities may only assert criminal usury as an affirmative defense, not as a claim for affirmative relief.

Indigo's claim for a declaratory judgment to void a March 8, 2022, settlement agreement with GFA fails because there are no plausible allegations from which the Court may conclude that Indigo was somehow deprived of its free will in entering into this agreement.  Moreover, because this declaratory judgment claim fails, Indigo's other claims must be dismissed pursuant to the settlement agreement's release provision.

Plaintiffs' fraud claim fails because it is based on nothing but alleged breaches of contract. Moreover, Plaintiffs failed to plead this claim with particularity.

Finally, Indigo's claim that GFA violated its due process rights under 42 U.S.C. § 1983 is contradicted by the parties' own contracts, wherein Indigo waived the due process rights of which it was allegedly deprived.  Moreover, Indigo's claim – which challenges the constitutionality of a Connecticut statute – fails because Indigo did not comply with Rule 5.1 of the Federal Rules of Civil Procedure governing such challenges.

Pursuant to the foregoing – and as set forth more fully herein – Defendants respectfully request that the Court dismiss all of Plaintiffs' claims except for Haymount's breach of contract claim.

## FACTUAL ALLEGATIONS

### I.   The Parties.

The Funding Companies are Connecticut companies engaged in the receivable financing business (also known as the merchant cash advance business).  (Doc. No. 22, Am Compl. ¶¶ 1, 44-46).  Messrs. Wolf, Brezel, Getter, and Kroen are alleged to be principals of GFA, Funding 123, and Merchant Capital.  (*See id.* ¶ 244).  Alpha is a New York collections company.  (*Id.* ¶¶ 47, 251-53).

Haymount is a North Carolina professional corporation that provides urgent care and primary medical services.  (*Id.* ¶¶ 40, 87).  Dr. Clinton is Merchant's principal.  (*See id.* ¶ 41).  Indigo is a Texas corporation that installs restaurant equipment.  (*Id.* ¶¶ 42, 192).  Mr. Turrentine is Indigo's owner.  (*Id.* ¶ 192).

### II.   The Purchase Agreements.

Haymount entered into six revenue purchase agreements with Defendants: (1) an August 25, 2021, agreement with Merchant Capital; (2) an August 26, 2021, agreement with GFA; (3) a September 27, 2021, agreement with GFA; (4) a December 16, 2021, agreement with GFA; (5) a December 27, 2021, agreement with Funding 123; and (6) a January 20, 2022, agreement with GFA.  (*See id.* ¶¶ 103-86; *see also* Declaration of Yosef Brezel, Exs. A-F).[1]  Indigo entered into two revenue purchase agreements with GFA: (1) a February 1, 2022, agreement; and (2) a February

---

[1] Plaintiffs did not file the agreements at issue as exhibits to their Amended Compliant.  As such, Defendants are submitting the agreements as exhibits to the Affidavit of Yosef Brezel.

18, 2022, agreement with GFA.  (*See* Doc. No. 22, Am. Compl. ¶ 200; Brezel Aff., Exs. G, H).

The foregoing are collectively referred to herein as the "Purchase Agreements."

The Purchase Agreements all have substantially the same structure and terms.  Under the

Purchase Agreements, the Funding Companies agreed to purchase a specified percentage of the

total future accounts receivable of the Merchants up to a certain sum in exchange for an upfront

purchase price.  (*See* Brezel Aff., Exs. A-H).  For example, under the August 25, 2021, agreement

between Haymount and Merchant Capital, Merchant Capital agreed to purchase 45% of

Haymount's total future accounts receivable up to the sum of $275,000 in exchange for an upfront

purchase price of $200,000.  (*Id.*, Ex. A at p. 1).

Under the Purchase Agreements, the Merchants agreed to remit the purchased amount to

the Funding Companies via daily ACH debits (each a "<u>Remittance</u>") in a designated amount

intended to represent an initial good faith estimate of the specified percentage of the Merchants'

daily receivables.  (*See id.*, Exs. A-H).

The Purchase Agreements all contain mandatory reconciliation provisions such that the

aggregate amount of the Remittances could be adjusted retroactively to reflect the purchased

percentage of the Merchants' actual receipts for each period.  (*Id.*, Exs. A-H § 1.4).  In addition,

the Purchase Agreements all contain mandatory adjustment provisions such that the amount of the

Remittances could be adjusted prospectively to reflect the purchased percentage of the Merchants'

actual receipts.  (*Id.*, Exs. A-H § 1.5).

Pursuant to the foregoing, the Remittance was not a fixed amount, but was subject to

regular adjustment.  (*See id.*, Exs. A-H §§ 1.4, 1.5).  As a result – and as all of the Purchase

Agreements expressly acknowledged – there was "no interest rate or payment schedule and no

time period during which the Purchased Amount must be collected by [the funding company]." (*Id*., Exs. A-H at p. 1).

Under each of the Purchase Agreements, the Merchants agreed that their sale of future receivables was "not intended to be, nor shall it be construed as a loan [] to Merchant." (*Id*., Exs. A-H § 1.11). The Merchants further agreed that they were "selling a portion of a future revenue stream to [the Funding Companies] at a discount, not borrowing money…." (*Id*., Exs. A-H at p. 1).

### III.    The Security Agreements and Guaranties.

To secure their obligations under the Purchase Agreements, the Merchants executed Security Agreements in which they granted the Funding Companies a security interest in their collateral. (*See id*., Exs. A-H). Dr. Clinton and Mr. Turrentine, as the owners of Haymount and Indigo, respectively, executed personal Guaranties in which they agreed to be jointly and severally liable for all amounts owed to the Funding Companies in the event of the Merchants' default. (*Id*., Ex. A at pp. 6-7).

### IV.    The Amended Complaint.

On March 9, 2022, Plaintiffs filed an Amended (putative) Class Action Complaint. (Doc. No. 22, Am. Compl.) In their First Cause of Action, Plaintiffs alleged that Defendants violated Section 1962(c) of the RICO statue through a pattern of racketeering activity and collection of an unlawful debt. (*See id*. ¶¶ 240, 242). In their Second Cause of Action, Plaintiffs alleged that Defendants violated Section 1962(d) of the RICO statue by conspiring to violate Section 1962(c). (*See id*. ¶¶ 264-71). In their Third Cause of Action, Plaintiffs sought a declaratory judgment that "the [Purchase Agreements] are void as a matter of law." (*See id*. ¶ 274). In their Fourth Cause of Action, Plaintiffs alleged that Defendants committed fraud by charging alleged "sham fees" and

"extracting unauthorized debits from the Plaintiff's [sic] bank accounts." (*See id*. ¶¶ 291, 306). In their Fifth Cause of Action, Plaintiffs alleged that Defendants committed breaches of contract by failing to advance the amounts promised and debiting more than they were entitled to. (*See id*. ¶¶ 310, 312). Finally, in their Sixth Cause of Action, Indigo alleged that GFA violated 42 U.S.C. § 1983. (*See id*. ¶ 332).

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), the Court should dismiss a complaint that "fails to state a claim upon which relief can be granted." The Court must assess whether the Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court should accept as true all well-pleaded factual allegations, but must "discard[] allegations that amount to nothing more than legal conclusions." *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 128 (S.D.N.Y. 2020) (Rakoff, J.) On a motion to dismiss, the Court must generally consider only the allegations of the complaint, but "the complaint is deemed to include any…documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (internal quotation marks omitted). The Court may also consider a document that is "integral to the complaint" because "the complaint 'relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).[2]

---

[2] It is pursuant to the foregoing legal principles that Defendants are providing the Court with copies of the Purchase Agreements that form the entire basis of Plaintiffs' case but that Plaintiffs failed to attach to their Complaint.

## LEGAL ARGUMENT

**I.   Plaintiffs Have Failed to State a Claim Under Section 1962(c) of the RICO Statute.**

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute []; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation marks omitted). Section 1962(c) – the section upon which Plaintiffs rely – provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

"Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996). The "mere assertion of a RICO claim…has an almost inevitable stigmatizing effect on those named as defendants." *Id.* (quoting *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990)). For that reason, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman*, 167 F.R.D. at 655.

### A.  Plaintiffs Have Failed to State a Claim Under the RICO Statute for Collection of an Unlawful Debt.

Respectfully, Plaintiffs' RICO claim for collection of an unlawful debt should be dismissed because (a) Plaintiff's allegations of alleged usury, even if true, are insufficient to invoke RICO liability intended to combat loansharking by organized crime; and (b) the parties' transactions were not loans to which usury laws apply.

1.  **Plaintiffs' Simple Usury Allegations Are Insufficient to Invoke RICO Liability Intended to Combat Organized Crime.**

Plaintiffs' claim – based entirely on their subjective belief that the parties' transactions were loans and not purchases of receivables – does not rise to the level of a RICO claim for collection of unlawful debt.

As the Second Circuit has explained, a civil RICO action for collection of unlawful debt is not an appropriate vehicle simply "to recover excessive interest or to enforce a penalty for the overcharge." *Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 248 (2d Cir. 1985). That is because "RICO is concerned with evils far more significant than the simple practice of usury." *Id.* In particular, Congress enacted RICO to "eradicate[e] [] organized crime in the United States…by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Id.* (quoting Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of Findings and Purpose)). This enactment was based upon Congress' "findings that organized crime uses money gained through illegal activities such as loansharking to infiltrate legitimate businesses." *Durante Bros.*, 755 F.2d at 248.

Respectfully, there are simply no plausible allegations to establish that Defendants are engaged in the type of organized crime loansharking operation that RICO was intended to address, *i.e.*, one where loansharking is used to infiltrate legitimate businesses. To the contrary, stripped of its bombast, hyperbole, and irrelevant speculation, the gravamen of Plaintiffs' Complaint is simply that Plaintiffs believe the parties' transactions were usurious loans, not enforceable purchases of future receivable. Even if this were true – and it is not – "the simple practice of usury" is insufficient to invoke RICO liability and Plaintiffs' claim should dismissed. *See Durante Bros.*, 755 F.2d at 248; *Colonial*, 252 F. Supp. 3d at 287 (dismissing a RICO claim against a

merchant cash advance company and noting that the defendants' case was "not helped by extravagant invocation of laws prohibiting racketeering by organized crime"); *Cont. Transp. Servs., Inc. v. New Era Lending LLC*, 2018 WL 11226077, at *6 (S.D.N.Y. Oct. 26, 2018) (dismissing the plaintiffs' RICO claim against merchant cash advance companies where the complaint merely alleged that the companies made alleged usurious loans disguised as purchases of receivables).

### 2. Plaintiffs Have Failed to Plead Collection of an Unlawful Debt Because the Parties' Transaction Was Not a Loan.

Even if Plaintiffs' allegations regarding "the simple practice of usury" were sufficient to invoke RICO liability, Plaintiffs' claim still fails because the parties' transactions were not loans subject to usury laws.

### a. A Transaction Cannot be Usurious if it is Not a Loan.

Under the RICO statute, an "unlawful debt" is:

> [A] debt…which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and [] which was incurred in connection with…the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).

It is axiomatic that a transaction cannot be usurious if it is not a loan. *See, e.g.*, *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances….If the transaction is not a loan, there can be no usury, however unconscionable the contract may be") (internal citation and quotation marks omitted); *Donatelli v. Siskind*, 170 A.D.2d 433, 434 (2d Dep't 1991) ("It is well established that there can be no usury in the absence of a loan or forbearance of money").

An agreement is not a loan unless it provides (1) a right of interest on principal, *see Donatelli*, 170 A.D.2d at 434; *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012) ("The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term.") and (2) an absolute right to repayment, *see, e.g.*, *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dep't 1947); *Zoo Holdings, LLC v. Clinton*, 814 N.Y.S.2d 893 (Sup. Ct. 2006); *Colonial*, 252 F. Supp. 3d at 282-83 (distinguishing merchant cash advance agreements from loans because only loans have absolute and unconditional payment obligations).

New York law includes a strong presumption against a finding of usury, and requires it to be supported by "clear and convincing evidence." *See Ujueta v. Euro-Quest Corp.*, 29 A.D.3d 895, 895-96 (2d Dep't 2006); *see also Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975).

### b.  The Parties' Merchant Cash Advance Transactions Were Not Loans.

The great weight of authority in New York has held that merchant cash advance transactions are not loans.  In fact, the Second Department recently issued an authoritative opinion holding that a transaction nearly identical to the one in this case constituted an enforceable purchase of future receivables (not a usurious loan).  *Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 327 (2d Dep't 2022).  In this opinion, the Second Department reached the same result as the Fourth Department in *Kennard L. P.C. v. High Speed Cap. LLC*, 154 N.Y.S.3d 522 (4th Dep't 2021), and the First Department in *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 69 N.Y.S.3d 798 (1st Dep't 2018).[3]  These Appellate Division decisions are consistent with dozens of lower court rulings that merchant cash advance transactions are purchases of future

---

[3] The trial court decisions from *Kennard* and *Champion Auto* are attached to Mr. Mueller's Declaration filed contemporaneously herewith.

receivables, and not loans subject to usury laws.[4]  They are also consistent with numerous federal court decisions reaching the same conclusion.  *See, e.g.*, *Womack v. Cap. Stack, LLC*, 2019 WL 4142740, at *5 (S.D.N.Y. Aug. 30, 2019) ("[A merchant cash advance] transaction is not a loan where the agreement provided that the buyer purchased a fixed amount of the seller's future sales proceeds which were deliverable to the buyer from a percentage of the seller's daily sales proceed"); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *6 (E.D.N.Y. Apr. 3, 2019) ("[T]he Court finds that the Agreement is not a loan and, accordingly, that criminal usury does not apply"); *Colonial*, 252 F. Supp. 3d at 281 (holding as a matter of law that the parties' merchant cash advance transaction was not a loan).  Respectfully, the foregoing Appellate Division decisions – which are consistent with the great weight of lower court and federal court decisions in New York – are dispositive of the issue presented and binding.

New York courts (most recently the Second Department in *Principis Cap.*) have developed a three-factor test to determine whether a merchant cash advance transaction should be considered a loan (as opposed to a purchase of future receivables).  *Principis Cap.*, 160 N.Y.S.3d 325.  Under this test, courts evaluate: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."  *Id.*[5]  If, as in this case, the contract has a mandatory reconciliation (and adjustment) provision, an indefinite term, and limited recourse in bankruptcy, the parties' transaction is not a loan.

---

[4] These cases were previously identified in GFA's Memorandum of Law in Opposition to Plaintiffs' Order to Show Cause for Temporary Restraining Order and Preliminary Injunction. (Doc. No. 61, Memo. of Law at p. 14 n.6).

[5] Not all factors need to be met.  For instance, in *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, the court held that the third factor "weighs against defendants," but nevertheless concluded that the parties' transaction was not a loan.  57 N.Y.S.3d 625, 633 (N.Y. Sup. Ct. 2017).

### i.   The Purchase Agreements Have Mandatory Reconciliation and Adjustment Provisions.

The Purchase Agreements all have mandatory reconciliation provisions stating that, at the merchant's written request and upon its provision of certain necessary information, a reconciliation "shall be performed by…either crediting or debiting the difference back to, or from, Merchant's Bank Account so that the total amount debited by [the funding company] shall equal the Specific Percentage of the Future Receipts…." (*See, e.g.*, Brezel Aff., Ex. A § 1.4). The Purchase Agreements also all have mandatory prospective adjustment provisions, pursuant to which "[t]he [amount of the daily ACH debit] shall be modified to more closely reflect the Merchant's actual receipts…." (*See, e.g., id.*, Ex. A § 1.5). These mandatory reconciliation and adjustment provisions ensure that the Merchants' payments are based on a percentage of their receivables. *See K9 Bytes*, 57 N.Y.S.3d at 632 ("The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof)"). Because the amount of the merchants' payments can change based upon its receivables, there is no fixed repayment of "principal" as with a loan. (*See, e.g., id.*, Ex. A §§ 1.4, 1.5).

New York courts have repeatedly held that merchant cash advance agreements containing such mandatory reconciliation and adjustment provisions evidence that a transaction is not a loan. *See, e.g.*, *Principis Cap.*, 160 N.Y.S.3d 325 (holding that the parties' transaction was not a loan because the agreement contained a reconciliation provision "provid[ing] for adjustments to the monthly payments made by [the defendant] to the plaintiff based on changes in [the defendant's] monthly sales"); *Power Up Lending Grp.*, 2019 WL 1473090, at *5 (finding that the parties' transaction was not a loan where the agreement contained a reconciliation that was "automatic, mandatory, and [provided] no discretion for Plaintiff"); *IBIS Capital Grp., LLC v. Fletcher*, 2018 WL 2187076, at *3 (Sup. Ct. Rockland Cty. Mar. 5, 2018) (noting a reconciliation provision in the

parties' agreement and concluding that the transaction was not a loan); *K9 Bytes*, 57 N.Y.S.3d at 632 (noting that "every court that found that [a] transaction was not a loan" cited a similar reconciliation provision); *Colonial*, 252 F. Supp. 3d at 281 (finding no usurious loan where the parties' reconciliation provisions "limit[ed] [defendant's] obligation to 15% of daily receipts"); *IBIS Capital Grp., LLC v. Four Paws Orlando LLC*, 2017 WL 1065071, at *3 (Sup. Ct. Nassau Cty. Mar. 10, 2017) (finding no loan where the parties' agreement contained "mechanisms for the parties to ensure the percentage of sales proceeds collected by [plaintiff] remain[ed] true to [defendant's] actual sales proceeds over the course of the Agreement"); *Merch. Cash & Capital, LLC v. Transfer Int'l Inc.*, 2016 WL 7213444, at *3 (Sup. Ct. Nassau Cty. Nov. 2, 2016) (holding that a receivables purchase agreement was not a loan where it "provided that the amount of daily payments toward the total purchased amount could be adjusted downward in the event that the average daily receipts were less than anticipated….")  The Purchase Agreements' mandatory reconciliation and adjustment provisions evidence that the parties' transactions were not loans.

### ii.  The Purchase Agreements Have Indefinite Terms.

On their face, the Purchase Agreements state that there is "no…payment schedule and no time period during which the Purchased Amount must be collected by GFA."  (*See, e.g.*, Brezel Aff., Ex. A at p. 1).  In fact, there could be no payment schedule or definite term because, under the reconciliation and adjustment provisions, the amount of the Remittance was subject to regular change.  (*See, e.g., id*., Ex. A §§ 1.4, 1.5).

A "quintessential" indicium of a receivables purchase agreement is that it does not prescribe when payments must be completed.  *K9 Bytes*, 57 N.Y.S.3d at 633.  Instead, in a receivables purchase agreement, the payment term is indefinite because payments are "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection

of revenue." *Four Paws*, 2017 WL 1065071, at \*3; *see also Fletcher*, 2018 WL 2187076, at \*4 (same); *Power Up Lending Grp.*, 2019 WL 1473090, at \*5 ("[T]he term in the Agreement is indefinite because…every time Defendants' receipts change the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid").  "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Four Paws*, 2017 WL 1065071, at \*3.  The fact that the Purchase Agreements' have an indefinite term evidences that the parties' transactions were not loans.

### iii.    The Merchants' Filing for Bankruptcy is Not an Event of Default.

The Purchase Agreements expressly state that "Merchant going bankrupt…in and of itself, does not constitute a breach of this Agreement."  (*See, e.g.*, Brezel Aff., Ex. A at p. 1).  Indeed, the Merchants' filing for bankruptcy is not identified as an Event of Default.  (*See, e.g., id.*, Ex. A § 3.1).  As such, the Funding Companies have limited recourse in bankruptcy.  This factor supports a conclusion that the parties' transactions were not loans.  *See Principis Cap.*, 160 N.Y.S.3d 325 (rejecting defendants' usury defense where "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default").

***

The foregoing evidences that, as a matter of law, the parties' transactions were not loans subject to usury laws and, therefore, Plaintiffs' RICO claim for collection of unlawful debt fails.

### B.  Plaintiffs Have Failed to Establish a Pattern of Racketeering Activity Through Wire Fraud.

Plaintiffs' RICO claim predicated on a pattern of racketeering activity also fails.  A plaintiff alleging a pattern of racketeering must establish: (1) at least two predicate acts of racketeering

occurring within a ten-year period; (2) that these predicate acts are related to each other; and (3) that these predicate acts amount to or pose a threat of continuing criminal activity. *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *18 (S.D.N.Y. Dec. 18, 2017) (Rakoff, J.)

### 1. Plaintiffs Have Failed to Adequately Plead the Continuity Requirement.

"Prong three – known as the 'continuity requirement'—can be satisfied either by showing a 'closed-ended' pattern of racketeering activity (i.e., a series of related predicate acts extending over a substantial period of time) – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.* (citing numerous cases).

"Closed-ended continuity is primarily a temporal concept." *Spool v. World Child Int'l Adoption Agency, 520 F.3d 178*, 184 (2d Cir. 2008) (internal quotation omitted). Since the U..S. Supreme Court's decision in *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989), the Second Circuit has "never found predicate acts spanning less than two years to be sufficient to constitute cl0osed-ended continuity." *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). In the instant case, the transactions at issue occurred during an approximate seven-month period (from August 2021 to February 2022). (*See* Brezel Aff., Exs. A-H). As a matter of law, therefore, Plaintiffs cannot establish closed-ended continuity.

Nor can they establish open-ended continuity.[6] Initially, the alleged predicate acts are non-actionable and, as such, there is nothing to suggest a threat of continuing criminal conduct. In fact,

---

[6] Open-ended continuity exists where (1) the acts of the defendant or the enterprise are inherently unlawful, such as murder or obstruction of justice, and are in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995), or (2) where the enterprise primarily conducts a legitimate business but there is some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued

Plaintiffs do not even allege such a continuing threat. Even if they did, the allegations in the Complaint would not support such claim. Indeed, in a similar case involving RICO claims against several merchant cash advance companies, the Court held that Plaintiffs' allegations of a supposed wide-ranging scheme to defraud (by allegedly misrepresenting that loan transactions were sales of future receivables) were insufficient to establish open-ended continuity. *Cont. Transp.*, 2018 WL 11226077, at *5. Plaintiffs have likewise failed to plead open-ended continuity and they cannot state a RICO claim based upon an alleged pattern of racketeering activity.

### 2. Plaintiffs Have Failed to Plead Wire Fraud with Sufficient Particularity.

A plaintiff who alleges racketeering activity based on mail or wire fraud must prove (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims predicated on fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

In the instant case, Plaintiffs have failed to plead their wire fraud claim with particularity. The only reference in the RICO cause of action to any alleged scheme is that "the members of the Enterprise have…collect[ed] upon fraudulent fees through electronic wires." (Doc. No. 22, Am.

---

criminal activity, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999).

Compl. ¶ 241).  Plaintiffs, however, do not identify the alleged fraudulent fees; the specific wire transactions at issue; the statements that were allegedly false or misleading; when and where the statements were made; or who made the statements.  Notably, Plaintiffs do not specifically allege that Messrs. Wolf, Kroen, Brezel or Getter – the only culpable "persons" identified in the Complaint, (*see* Doc. 22, Am. Compl. ¶ 235) – made <u>any</u> fraudulent statements or <u>any</u> fraudulent wire transactions.

The case of *Cont. Transp. Servs.* is instructive.  In that case, the plaintiffs alleged that the defendant merchant cash advance companies had violated the RICO statute by engaging in a wide-ranging scheme to defraud "by misrepresenting through advertising and documents that they provided loans rather than sales of future receivables."  2018 WL 11226077, at *3.  The Court rejected this claim, holding that "Plaintiffs have not set forth, with adequate particularity, the specific circumstances of how the mail and wire fraud of each defendant advanced the larger fraudulent scheme."  *Id*.  The Court further held that the vague statements identified by the plaintiffs were insufficient to establish an alleged scheme to defraud.  *Id*.  In addition, the Court held that "Plaintiffs' blanket allegations that all members of the purported enterprise collectively 'conducted multiple acts of mail and wire fraud'" were insufficient to state a claim for wire fraud.  *Id*. at *4.  Finally, the Court found that the plaintiffs had failed to plead "each Defendant's fraudulent intent."  *Id*. at *4.  The Court dismissed the plaintiffs' RICO claim with prejudice.  *Id*. at *7.

Defendants respectfully submit that, just as in *Cont. Transp. Servs.*, Plaintiffs have failed to plead wire fraud with particularity and, therefore, their RICO claim predicated on a pattern of racketeering activity should be dismissed with prejudice.

### C.  GFA, Funding 123, Merchant Capital, and Alpha Are Not Proper RICO Defendants.

GFA, Funding 123, Merchant Capital, and Alpha are not proper RICO defendants because they are not alleged to be culpable "persons."  Section 1962(c) prohibits "any person employed by or associated with any enterprise…to conduct or participate…in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  The culpable "person" (*i.e.*, the defendant) and the "enterprise" must be distinct.  *Katzman*, 167 F.R.D. at 658. In the instant case, Plaintiffs allege that only Messrs. Wolf, Kroen, Brezel and Getter are the culpable "persons."  (Doc. No. 22, Am. Compl. ¶ 235).  Plaintiffs do not allege that GFA, Funding 123, Merchant Capital, or Alpha are culpable "persons"; rather, they are alleged merely to be part of the "enterprise."  As such, they should be dismissed as RICO defendants.

## II.   Plaintiffs Have Failed to State a Claim for RICO Conspiracy Under Section 1962(d).

Plaintiffs' RICO conspiracy claim under Section 1962(d) fails as a matter of law.  The conspiracy section of RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of" 18 U.S.C. § 1962(a), (b), or (c).  To state a claim under § 1962(d), a plaintiff must allege a valid underlying claim under subsections (a), (b), or (c), plus an agreement to carry out such acts.  *See, e.g.*, *First Asset Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).  Here, Plaintiffs' § 1962(d) claim must be dismissed because the underlying § 1962(c) claim fails for the reasons stated in Point I, *supra*.

## III.  Plaintiffs Have Failed to State a Claim for a Declaratory Judgment that the Purchase Agreements Are Void Ab Initio.

Plaintiffs seek a declaratory judgment that the Purchase Agreements are "void ab initio" because the parties' transactions were allegedly criminally usurious loans.  (*See* Doc. No. 22, Am. Compl. ¶¶ 274-76, p. 55).  It is well-settled, however, that corporate entities may only assert

criminal usury as an affirmative defense, not as a claim for affirmative relief. *See Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319 (2d Dep't 2021). New York courts routinely dismiss claims for declaratory judgment and other affirmative relief based upon alleged criminal usury. *See, e.g., id.* at 320 (holding that the trial court should have dismissed the plaintiff's cause of action alleging criminal usury); *OT Aspekt & Chiropractic PLLC v. Fox Cap. Grp., Inc.*, 154 N.Y.S.3d 217 (N.Y. Sup. Ct. 2021) ("[D]efendant has sufficiently demonstrated that plaintiffs' affirmative relief sought in their first four causes of action, on the basis of their allegation that this was a criminally usurious loan…all fail as a matter of law"); *K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 56 Misc.3d 807, 815 (Sup. Ct. West. Co. May 4, 2017) (dismissing usury cause of action and affirming that "it has long been settled in this state that criminal usury may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief"); *Scantek Med., Inc. v. Sabella*, 582 F.Supp.2d 472, 474 (S.D.N.Y. 2008) (holding that a debtor could not seek declaratory relief to void an agreement based upon criminal usury). Pursuant to the foregoing, Defendants' request for a declaratory judgment that the parties' transactions are "void ab initio" because of alleged usury fails as a matter of law and, respectfully, should be dismissed.

## IV.   Indigo Has Failed to State a Claim for a Declaratory Judgment that its Settlement with GFA is Void.

Indigo entered into a March 8, 2022, Settlement Agreement (the "Settlement Agreement") with GFA in which it agreed to pay $4,000 in exchange for GFA's discontinuing a Connecticut lawsuit against it and releasing all liens and restraints. (*See* Doc. No. 22, Am. Compl. ¶ 277; Brezel Aff., Ex. I). Indigo now seeks a declaratory judgment that the Settlement Agreement is void principally because GFA allegedly "circumvent[ed] Indigo's and Turrentine's New York counsel [Shane Heskin]." (Doc. No. 22, Am. Compl. ¶ 278). In fact, prior to execution of the

Settlement Agreement, a GFA representative directly asked Mr. Turrentine, Indigo's owner, "Did Shane [Heskin] give you the okay to sign [the Settlement Agreement]?"  (Brezel Aff., Ex. J).  Mr. Turrentine responded, "I didn't ask him[.]  I'm discussing with my company attorney."  (*Id.*)[7]  As evidenced by the foregoing, Plaintiff obviously had the opportunity to consult with an attorney before entering into the Settlement Agreement and was not deprived of its free will such that the Settlement Agreement should be voided for alleged economic duress.  *See Stewart M. Muller Const. Co. v. New York Tel. Co.*, 40 N.Y.2d 955, 956, (1976) ("A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will").

Moreover, because the Settlement Agreement is valid, Indigo's claims in this lawsuit must be dismissed because it released all of those claims in the Settlement Agreement.  (Brezel Aff., Ex. I § 11).

## V. Plaintiffs Have Failed to State a Claim for Fraud.

"Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract."  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011).  Indeed, a party seeking "[t]o maintain a claim of fraud in such a situation…must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation

---

[7] The Court may consider the foregoing exchange because Plaintiffs' Complaint relies heavily on the parties' communications regarding the Settlement Agreement and effectively incorporates those communications by reference.  *Int'l Audiotext Network*, 62 F.3d at 72; *Chambers*, 282 F.3d at 152.  Respectfully, it would be grossly inequitable to permit Plaintiffs to rely on a materially incomplete characterization of the parties' communications while refusing Defendants the opportunity simply to "fill in the blanks."

and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).  Pursuant to the foregoing, courts routinely dismiss fraud claims that are simply alleged breaches of contract.  *See, e.g., LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *6 (S.D.N.Y. Mar. 8, 2019) (holding that "[the plaintiff's] fraud allegations based on the [parties' contract]...do not state a claim"); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) (dismissing plaintiff's fraud claim as "duplicative of the breach of contract claim"); *Bridgestone/Firestone*, 98 F.3d at 19 (vacating a finding of fraud where "the[] facts amount to little more than intentionally-false statements by [defendant] indicating his intent to perform under the contract").

In the instant case, Plaintiffs' primary fraud claim is that Defendants deducted certain fees disclosed in the Purchase Agreements (*e.g.*, underwriting fees and ACH origination fees), but then allegedly failed to apply those fees for their stated purpose.  (Doc. No. 22, Am. Compl. ¶¶ 291-302).  At most, these allegations articulate a breach of contract claim.  Plaintiffs have not demonstrated (or even attempted to demonstrate) a legal duty separate from the duty to perform under the Purchase Agreements, a fraudulent misrepresentation collateral or extraneous to the Purchase Agreements, or special damages caused by the misrepresentation and unrecoverable as contract damages.  *See Bridgestone/Firestone, Inc.*, 98 F.3d at 20.  Plaintiffs' fraud claim based on this alleged breach of contract fails.

Plaintiffs also claim that "Defendants have intentionally committed wire fraud by extracting unauthorized debits from the Plaintiff's bank accounts."  (Doc. No. 22, Am. Compl. ¶ 306).  Again, this appears to be, at most, a breach of contract claim (namely, that Defendants breached the Purchase Agreements' respective Authorization Agreements for ACH Debits).  (*See, e.g.*, Brezel Aff., Ex. A at p. 8).  In fact, it is one of Plaintiffs' breach of contract claims.  (Doc.

No. 22, Am. Compl. ¶ 312).  In any event, Plaintiffs have failed to identify with particularity the alleged unauthorized debits and, as such, the claim should be dismissed. *See McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439, at \*5 (E.D.N.Y. July 10, 2009) (dismissing a RICO claim predicated on wire fraud where "the Complaint specifie[d] no dates of any uses of the interstate mails or wires").

Finally, Plaintiffs do not allege that Messrs. Wolf, Kroen, Brezel, Getter, or Alpha made any of the alleged misrepresentations (all of which are contained in the Purchase Agreements) or the (unidentified) unauthorized debits.  Plaintiffs, therefore, cannot state a fraud claim against those Defendants.

## VI.     Indigo Has Failed to State a Claim for Violation of Section 1983.

Indigo claims that GFA violated its due process rights under 42 U.S.C.§ 1983 by relying upon Conn. Gen. Stat. Ann. § 52-278f, which allows for certain prejudgment remedies "[i]n an action upon a commercial transaction…wherein the defendant has waived his right to a notice and hearing…."[8]  The instant case, however, is a commercial transaction and Indigo expressly waived its right to notice and a hearing under Section 4.13 of the parties' Purchase Agreement.  (Brezel Aff., Exs. G, H § 4.13).  GFA's reliance upon Conn. Gen. Stat. Ann. § 52-278f was proper.  To the extent Indigo claims that GFA failed to comply with the procedural requirements of Conn. Gen. Stat. Ann. § 52-278f, the proper venue to raise those arguments was the Connecticut Court in which the underlying litigation was filed.  Moreover, while Indigo complains that GFA used Conn. Gen. Stat. Ann. § 52-278f to restrain its bank account, Indigo ignores the fact that GFA had

---

[8]  Plaintiffs claim that "Defendants require merchants…to consent to the jurisdiction of…Connecticut, New York, and Texas [] even though neither Connecticut nor Texas has anything to do with the transaction or parties."  (Doc. No. 22, Am. Compl. ¶ 319).  This claim is puzzling. According to Plaintiff's own Complaint, the Funding Companies are Connecticut entities and Indigo is located in Texas.  (*Id*. ¶¶ 44-46).

the right to do that under the parties' Security Agreement.  (*Id*., Exs. G, H at p. 6) ("This security interest may be exercised by GFA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral").  Indigo can hardly be heard to complain that GFA exercised a remedy to which the parties agreed in advance.  Finally, while Indigo claims that Conn. Gen. Stat. Ann. § 52-278f is unconstitutional, it has failed to comply with Fed. R. Civ. P. 5.1, which states that "[a] party that files a pleading…drawing into question the constitutionality of a…state statute must promptly [] file a notice of constitutional question stating the question and identifying the paper that raises…[and] serve the notice and paper…on the state attorney general if a state statute is questioned…."  Respectfully, Indigo's Section 1983 claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the causes of action in Plaintiffs' Complaint as requested herein.

Respectfully submitted,


/s John A. Mueller
John A. Mueller
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216
716.853.5100
jmueller@lippes.com

*Attorneys for Defendants*