UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAYMOUNT URGENT CARE PC, AND
ROBERT A. CLINTON, JR., INDIGO
INSTALLATIONS, INC., AND CHRISTOPHER A.
TURRENTINE, individually, and on behalf of all
those similarly situated,

      Plaintiffs,

 v.

GOFUND ADVANCE, LLC, FUNDING 123, LLC,
MERCHANT CAPITAL LLC , ALPHA
RECOVERY PARTNERS, LLC, YITZCHOK WOLF,
YOSEF BREZEL, JOSEPH KROEN, and YISROEL
C. GETTER,

      Defendants.

Case No. 1:22-cv-01245-JSR

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF PARTIAL MOTION TO DISMISS**

John A. Mueller
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216
716.853.5100
jmueller@lippes.com

*Counsel for Defendants*

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………...ii

I.    Plaintiffs Have Failed to State a RICO Claim for Collection of Unlawful Debt….2

     A.    Plaintiffs' Simple Usury Allegations Are Insufficient to Invoke RICO Liability Intended to Combat Organized Crime…………………………..2

     B.    Plaintiffs Have Failed to Plead Collection of an Unlawful Debt Because the Parties' Transaction Was Not a Loan………………………..3

II.   Plaintiffs Have Failed to Established a Pattern of Racketeering Activity Through Wire Fraud……………………………………………………………………6

     A.    GFA, Funding 123, Merchant Capital, and Alpha Are Not Proper RICO Defendants Under Section 1962(c)……………………………………..7

III.  Plaintiffs Have Failed to State a Claim for RICO Conspiracy Under Section 1962(d)……………………………………………………………………7

IV.  Plaintiffs Have Failed to State a Claim for a Declaratory Judgment that the Purchase Agreements are Void Ab Initio……………………………………………7

V.   Indigo Has Failed to State a Claim for a Declaratory Judgment that its Settlement Agreement with GFA is Void……………………………………………8

VI.  Plaintiffs Have Failed to State a Claim for Fraud……………………………….9

VII. Indigo Has Failed to State a Claim for Violation of Section 1983………………10

CONCLUSION………………………………………………………………………………...10

# TABLE OF AUTHORITIES

**Cases**

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
    37 N.Y.3d 320 (2021)……………………………………………………………………..2

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229, 242 (2d Cir. 1999)………………………………………………………….6

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
    252 F. Supp. 3d 274 (S.D.N.Y. 2017)…………………………………………………..2, 3

*Cont. Transp. Servs., Ipnc. v. New Era Lending LLC*,
    2018 U.S. Dist. LEXIS 241286 (S.D.N.Y. Oct. 6, 2018)…………………………2, 3, 6, 7

*D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*,
    405 U.S. 174, 187 (1972)……………………………………………………………....10

*Davis v. Richmond Capital Group,*
    150 N.Y.S.3d 2 (1st Dep't 2021)………………………………………………………….4

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162, 198–99 (S.D.N.Y. 2011)…………………………………………...9

*Hammelburger v. Foursome Inn Corp.*,
    54 N.Y.2d 580 (1981)……………………………………………………………………..8

*K9 Bytes, Inc. v. Arch Cap. Funding, LLC*
    57 N.Y.S.3d 625, 632–33 (N.Y. Sup. Ct. 2017)………………………………………..1, 4

*LG Funding, LLC v. United Senior Properties of Olathe, LLC*,
    122 N.Y.S.3d 309, 312 (2d Dep't 2020)………………………………………………….4

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
    37 N.Y.3d 591 (2021)……………………………………………………………………..2

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 F. App'x 57, 59 (2d Cir. 2011)……………………………………………………….9

*Principis Cap., LLC v. I Do, Inc.*,
    160 N.Y.S.3d 325, 327 (2d Dep't 2022)…………………………………………………..4

*Scantek Med., Inc. v. Sabella*,
    582 F. Supp. 2d 472, 472 (S.D.N.Y. 2008)……………………………………………….8

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
    2017 WL 1216925, at *11 (S.D.N.Y. Mar. 30, 2017)……………………………………….6

**Statutes**

Conn. Gen. Stat. Ann. § 52-278………………………………………………………………….10

This is a contract action between sophisticated, commercial entities in which Plaintiffs seek to avoid their contractual obligations by claiming that the parties' transactions were usurious loans and, therefore, everything that happened under those contracts was "fraud" and Defendants' legitimate business is an organized crime enterprise.[1]

These claims are not new. They have been litigated many times before and the law is well-developed and uniform. With respect to the dispositive issue of whether a merchant cash advance transaction constitutes a loan, New York courts – even those cited by Plaintiff – have distilled the relevant analysis into three factors, the most important of which is whether the parties' agreement contains a mandatory reconciliation provision. As the Court noted in *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, "[a] reconciliation provision[] allow[s] the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof)....to reach the specified percentage [of its purchased receivables]." 57 N.Y.S.3d 625, 632–33 (N.Y. Sup. Ct. 2017). The presence of a mandatory reconciliation provision is almost always dispositive. Indeed, Plaintiffs have not pointed to a single case where the parties' agreement contained a mandatory reconciliation provision and yet the Court found that the transaction was a loan.

In this case, the Purchase Agreements contain not only a mandatory reconciliation provision, but also a mandatory adjustment provision (permitting prospective, as opposed to retroactive, adjustment of Plaintiffs' daily payment to reflect the purchased percentage). But Plaintiffs never attempted to invoke these provisions (there is no allegation to that effect in the Complaint). Nevertheless, they have shamelessly represented to the Court that their daily payments were "fixed" and, thus, the parties' transactions were loans. Plaintiffs, who are

---

[1] Defined terms in this Reply have the same meaning as in Defendants' initial Memorandum of Law.

1

sophisticated commercial entities, apparently did not bother to read or enforce their contracts. Instead, they decided to run to courthouse and defame Defendants as operating an organized crime enterprise. This is unacceptable and, respectfully, Plaintiffs' Complaint should be dismissed as requested in Defendants' motion.

I. **Plaintiffs Have Failed to State a RICO Claim for Collection of Unlawful Debt.**

    A. **Plaintiffs' Simple Usury Allegations Are Insufficient to Invoke RICO Liability Intended to Combat Organized Crime.**

Plaintiffs argue that "RICO is not limited to the acts of mobsters…." (Doc. No. 72, Resp. at 9). No one is saying that; what Defendants are saying – and what Plaintiffs fail to refute – is that the RICO predicate of collection of unlawful debt was intended to combat organized crime loansharking, not disputes over whether a transaction constitutes a loan. That is the context within which courts in the Southern District have rejected RICO claims against merchant advance companies under nearly identical facts. *See Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y. 2017); *Cont. Transp. Servs., Ipnc. v. New Era Lending LLC*, 2018 U.S. Dist. LEXIS 241286 (S.D.N.Y. Oct. 6, 2018).

Plaintiffs note that the RICO claims in *Colonial* and *Cont. Transp.* were dismissed "because the complaints failed to allege sufficient facts establishing the underlying transaction were loans." (Doc. No. 72, Resp. at p. 10).[2] That is true, but not helpful to Plaintiffs; their Complaint alleges the same facts.

Plaintiffs note that *Colonial* and *Cont. Transp. Servs.* did not consider the subsequent cases of *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021), and *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 37 N.Y.3d 591 (2021). But those cases are irrelevant. *Adar Bays*

---

[2] In *Colonial*, the operative pleading was actually a Counterclaim. 252 F. Supp. 3d at 278.

addressed whether a certain type of "stock conversion option…should be treated as interest…." 37 N.Y.3d at 323.  *Plymouth* addressed tort damages for wrongful execution.  37 N.Y.3d at 594.[3]  Those opinions have no bearing on this case.

In opposition to the well-reasoned and directly analogous opinions of *Colonial* and *Cont. Transp. Servs.*, Plaintiffs cite several inapposite cases in which the court applied a different state's law, engaged in no meaningful analysis regarding the RICO claims, or premised its finding on the existence of a discretionary (as opposed to mandatory) reconciliation provision.[4]  These cases provide no support.

### B. Plaintiffs Have Failed to Plead Collection of Unlawful Debt Because the Parties' Transaction Was Not a Loan.

Plaintiffs claim that New York courts are "split" in analyzing whether merchant cash advance transactions constitute loans.  There is no "split."  New York courts – even those cited by Plaintiff – uniformly apply the same factors: (1) whether there is a reconciliation provision; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the

---

[3] Plaintiffs cite *Plymouth* as if it were the Magna Carta.  The section they quote, however, is from dicta in a footnote in a dissent.  *Plymouth* has no precedential value.

[4] *See Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.,* 374 F. Supp. 3d 361 (E.D. Pa. 2019) (applying Texas law in a case where the defendant failed "to offer any substantive defense" regarding the nature of the parties' agreement); *Fleetwood Servs., LLC v. Ram Cap. Funding LLC*, 2021 WL 1987320, (S.D.N.Y. May 18, 2021) (applying Texas law to sustain collection of unlawful debt claim supported by threats of physical violence); *NRO Bos., LLC v. Funding Metrics, LLC*, No. 17-CV-5008, 2018 WL 4328254 (E.D. Pa. May 24, 2018) (sustaining RICO claim with no meaningful analysis and no determination of the applicable law); *Davis v. Richmond Cap. Grp., LLC*, 150 N.Y.S.3d 2 (2021) (dismissing RICO claim predicated on a pattern of racketeering activity but sustaining RICO claim for collection of unlawful debt because the parties' agreement contained a discretionary reconciliation provision); *NRO Boston LLC v. Yellowstone Cap. LLC*, 2021 N.Y. Misc. LEXIS 1892 (N.Y. Sup. Ct. Apr. 9, 2021) (granting plaintiff leave to file an amended complaint after its RICO claim was dismissed); *NRO Boston LLC v. CapCall LLC*, 2020 N.Y. Misc. LEXIS 4064, *6-7 (N.Y. Sup. Ct. July 8, 2020) (declining to dismiss RICO claims without any meaningful analysis); *McNider Mar., LLC v Yellowstone Cap., LLC*, 2019 N.Y. Misc. LEXIS 6165 (N.Y. Sup. Ct. Nov. 19, 2019) (declining to dismiss RICO claim where the parties' agreement contained an illusory reconciliation provision).

3

merchant declare bankruptcy.  *See, e.g., LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (2d Dep't 2020) (case cited by Plaintiffs).

The dispositive factor is almost always whether there is a mandatory reconciliation provision.  If there is, the transaction is not a loan.  *See, e.g., Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 327 (2d Dep't 2022).  If there is not, the transaction is potentially a loan.  Indeed, the cases upon which Plaintiffs rely – in which courts found potential loans – are easily distinguishable because they involve discretionary reconciliation provisions.  *See LG Funding,* 122 N.Y.S.3d 309 (finding the transaction potentially a loan where the reconciliation provision was discretionary); *Davis v. Richmond Capital Group,* 150 N.Y.S.3d 2 (1st Dep't 2021) (same).

Plaintiffs do not dispute that a mandatory reconciliation provision – found in all of the Purchase Agreements (along with a mandatory prospective adjustment provision) – connotes a purchase.  Instead, without citing any authority, they claim that a reconciliation provision fails "if the daily payment does not correlate to the percentage of receivables it purportedly represents." (Doc. No. 72, Resp. at p. 13).  Respectfully, this claim makes no sense.  The whole point of a reconciliation provision is to adjust a daily payment if it does not correlate to the purchased percentage of receivables.  *See K9 Bytes*, 56 Misc. at 817 (explaining how a reconciliation provision works).

Plaintiffs argue that a reconciliation provision is a "sham" if "the daily payment is intentionally low." (Doc. No. 72, Resp. at 14).  This convoluted argument is both nonsensical and irrelevant.  Plaintiffs allege that their daily payments were <u>too high</u>, not too low. (*See* Doc. No. 22, Am. Compl. ¶ 170) (Defendant's [sic] knowingly and intentionally falsely inflated the fixed daily payment amount….")  Moreover, Plaintiffs fail to allege that they ever requested a

4

reconciliation. As such, they cannot be heard to complain that the reconciliation provision was a "sham."

Plaintiffs claim that the Purchase Agreements required a "fixed daily payment." (Doc. No. 72, Resp. at p. 12). This claim simply ignores the Purchase Agreement's reconciliation and adjustment provisions, pursuant to which the payments were subject to regular change.

Plaintiffs argue that the transactions were repayable absolutely because the obligations were "secured by UCC filings, a personal guaranty, a confession of judgment, and a prejudgment attachment device." (Doc. No. 72, Resp. at p. 13). Courts haver repeatedly rejected this argument.[5]

Haymount claims that text messages show that it was "absolutely liable" for the daily payment. (Doc. No. 72, Resp. at pp. 6-7).[6] These text messages, however, merely show Funding 123 asking for the daily payment, which Haymount was obligated to make unless it gave 24 hours advance notice that there would be insufficient funds. (*See* Doc. No. 69-5, Purchase Agrmt. § 3.1(d)). There is no allegation that it ever did so.

Haymount claims that a text message shows the parties' discussing a fixed daily payment. (Doc. No. 72, Resp. at p. 7). That should not be surprising. The Purchase Agreements fixed an

---

[5] *See, e.g.*, *Principis Capital LLC v. WTC Victor, LLC*, 2019 N.Y. Misc. Lexis 6745, at *5-7 (Sup. Ct. N.Y. Cty. Dec. 17, 2019) (rejecting the contention that a security agreement and guaranty turned a merchant cash advance transaction into a loan); *Womack v. Cap. Stack, LLC*, 2019 WL 4142740, at *6-7 (S.D.N.Y. Aug. 30, 2019) (same); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019) (same); *Merch. Cap. Access, LLC v. S. Shore Motorsports, LLC*, 2011 WL 3875565 (Sup. Ct. Nassau Cty. Aug. 19, 2011) (same); *Rapid Capital Fin., LLC v. Natures Mkt. Corp.*, 57 Misc. 3d 979, 984-85 (Sup. Ct. Westchester 2017) (same).

[6] Plaintiffs claim that these text messages may be considered on Defendants' motion to dismiss because they "form the basis of [] Paragraphs 162-65 of the Complaint." (Doc. No. 72, Resp. at 6 n.8). The text messages, however, appear to be unrelated to those Paragraphs.

initial daily payment as an estimate of the Purchased Percentage of receivables (which was then subject to change under the reconciliation and adjustment provisions). It would be surprising if the parties did not discuss this.

**II.     Plaintiffs Have Failed to Establish a Pattern of Racketeering Activity Through Wire Fraud.**

Plaintiffs claim that Defendants allegedly failed to apply contractual fees for their stated purpose and failed to properly account under the Purchase Agreements. (*See* Doc. No. 72, Resp. at p. 18). These breaches of contract do not constitute wire fraud. *See, e.g., Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, 2017 WL 1216925, at *11 (S.D.N.Y. Mar. 30, 2017) ("[A] breach of contract normally does not constitute the predicate act of [] wire fraud, or any predicate act for that matter") (citing numerous cases).

Plaintiffs claim open-ended continuity based upon "a threat of continuing criminal activity…." (Doc. No. 72, Resp. at 17) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). In support, however, they allege mere breaches of contract. (*See* Doc. No. 72 at pp. 17-18).[7] These do not establish "a threat of continuing criminal activity."

Plaintiffs attempt to distinguish *Cont. Transp.* – which is nearly identical to this case – by claiming that "the RICO claims were dismissed…not because the scheme of any individual defendant lacked continuity." (*See* Doc. No. 72 at p. 18 n.12). That is simply false. In *Cont. Transp.*, the court squarely held that:

> Plaintiffs make no allegations of a "threat of continuing criminal activity" and the complaint contains no facts to support a finding that the purported acts will be

---

[7] Plaintiffs also claim that GFA attempted to make an unauthorized debit. (Doc. No. 72, Resp. at 17). This alleged act was at most, a breach of the parties' "Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments." (*See* Doc. No. 69, Brezel Aff., Ex. F at p. 9). Moreover, there are no allegations from which one may plausibly conclude that this alleged act was anything other than an isolated incident. (*See* Doc. No. 22, Am. Compl. ¶ 186). This allegation does not support open-ended continuity.

repeated. As such, Plaintiffs have failed to allege that Defendants engaged in an open-ended "pattern of racketeering activity" under RICO.

2018 WL 11226077, at *5.

Plaintiffs fail to respond meaningfully to any of Defendants' particularity arguments. (*See id.*) Instead, they simply restate their general legal theory and cite a Pennsylvania case in which the court found the particularity requirement satisfied because, unlike in this case, the plaintiff actually identified the misrepresentations made by the RICO "persons."

Finally, Plaintiffs fail to address the particularity analysis in *Cont. Transp.*, which, Defendants respectfully submit, is directly on point.

### A. GFA, Funding 123, Merchant Capital, and Alpha Are Not Proper RICO Defendants Under Section 1962(c).

Plaintiffs concede that GFA, Funding 123, Merchant Capital, and Alpha are not alleged to be RICO "persons." (*See* Doc. No. 72, Resp. at 19). As such, they are not proper Defendants under Plaintiff's First Cause of Action for violation of Section 1962(c).

### III. Plaintiffs Have Failed to State a Claim for RICO Conspiracy Under Section 1962(d).

Plaintiffs RICO conspiracy claim fails because they have failed to plead an underlying violation.

### IV. Plaintiffs Have Failed to State a Claim for a Declaratory Judgment that the Purchase Agreements Are Void Ab Initio.

Plaintiffs fail to address the well-settled legal authority holding that a corporation may assert criminal usury only as an affirmative defense, not as a claim for affirmative relief.[8] Instead, Plaintiffs cite a case from Rhode Island regarding non-consensual sexual contact; a case from

---

[8] This rule applies to individual guarantors of a corporate obligation. *Pirs Cap., LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 129 N.Y.S.3d 734, 738 (N.Y. Sup. Ct.)

7

Massachusetts regarding trade name infringement, and a Montana case applying Montana law. (Doc. No. 72, Resp. at 20). Obviously, these cases are irrelevant.

Plaintiffs suggest that *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580 (1981), is somehow relevant. In *Hammelburger*, however, the defendant sought "to assert the affirmative defense of criminal usury." *Id*. at 585. That case is irrelevant.

The precise issue presented – whether a party may seek a declaratory judgment based upon criminal usury – has been decided many times and is well settled. *See, e.g., Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472, 472 (S.D.N.Y. 2008). Plaintiffs' declaratory judgment claim fails as a matter of law.

## V. Indigo Has Failed to State a Claim for a Declaratory Judgment that its Settlement Agreement with GFA is Void.

Indigo claims that the enforceability of the Settlement Agreement "is [] an issue of fact." (Doc. No. 72, Resp. at 20). In fact, this claim is frivolous. Indigo settled a $31,000 claim for $4,000 after consulting with its attorney and negotiating with GFA. (*See* Doc. No. 22-9, Lien Notice; Doc. No. 69-9, Settlement Agrmt.; Brezel Aff., Ex. J).[9] It affirmatively represented that "no one ha[d] forced [it] to sign th[e] Agreement" and that it "had the ability to adequately consult with [its] legal counsel." (*Id*. §§ 3, 9). It accepted the benefit of the Settlement Agreement (namely, a release of all liens and a significantly discounted payment obligation). (*See id*.) Now, having gotten what it wanted, it seeks to deprive GFA of the benefit of its bargain. This conduct is unacceptable and should not be condoned.

---

[9] Exhibit J to the March 31, 2022, Affidavit of Yosef Brezel was referenced in Mr. Brezel's Affidavit and Defendants' Memorandum of Law but was inadvertently not attached. It is now being filed. (*See* Notice of Filing).

Plaintiffs claim that GFA's Connecticut counsel committed an ethical violation. This claim is frivolous and purely for harassment. Rule 4.2(b) of the Connecticut Rules of Professional Conduct provides that "a lawyer shall not communicate…with a party the lawyer knows to be represented…." There is no allegation that GFA's Connecticut counsel <u>ever</u> communicated with a party (the allegation is that the parties' communicated between themselves). Plaintiffs' false claim of an ethical violation is not well-taken.

### VI.     Plaintiffs Have Failed to State a Claim for Fraud.

Plaintiffs claim that the Purchase Agreements' fee schedule contains misrepresentations collateral or extraneous to the contract. (Doc. No. 72, Resp. at 24). The fee schedule, however, is literally part of the contract; it cannot be collateral or extraneous thereto. In fact, Plaintiffs' fraud claim simply alleges a breach of contract. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 198–99 (S.D.N.Y. 2011) ("The [fraud] claim thus merely recasts [defendant's] alleged violations of these contractual provisions as fraudulent acts and misrepresentations").

Plaintiffs cite cases involving fraudulent invoices for the proposition that "[f]alse billing fact patterns sound in fraud." (Doc. No. 72, Resp. at 22). But there are no fraudulent invoices in this case. Rather, Plaintiffs simply allege that Defendants failed to apply certain fees according to the contract. That is an alleged breach of contract, not fraud. *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("[W]hen a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud…are generally precluded….")

In a footnote, Plaintiffs claim that all of the ACH transactions were "fraudulent" because "no valid contract existed…as the agreements were disguised usurious loans." (Doc. No. 72, Resp.

9

at 24 n.14). Initially, this claim fails as an impermissible attempt to seek affirmative relief based upon usury. Regardless, even if affirmative relief were available, it would sound in unjust enrichment, not fraud.

### VII. Indigo Has Failed to State a Claim for Violation of Section 1983.

Indigo's Section 1983 claim is simply that GFA failed to comply with Conn. Gen. Stat. Ann. § 52-278f in obtaining a writ of prejudgment attachment. (Doc. No. 22, Am. Compl. ¶¶ 328-29). Connecticut law, however, provides a remedy for that: Indigo could simply have moved to vacate the attachment. Indeed, Conn. Gen. Stat. Ann. § 52-278k provides that "[t]he court may, upon motion and after hearing, at any time…vacate any prejudgment remedy…issued." Indigo did not do this. Instead, it negotiated a settlement in which it released all of its claims – including its Section 1983 claim – against GFA and its agents. (Doc. No. 69-9, Settlement Agrmt. § 11). Indigo failed to avail itself of the due process rights afforded by Connecticut law and then advantageously settled all of its claims. Its Section 1983 claim fails.

In addition, Indigo ignores the fact that, irrespective of any prejudgment attachment, GFA had the right to "freeze" its bank account pursuant to the parties' Security Agreement and that it validly waived any right to prejudgment notice and hearing in the Purchase Agreement. *See D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 187 (1972) ("We therefore hold that [the plaintiff]…voluntarily, intelligently, and knowingly waived the rights…to prejudgment notice and hearing").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the causes of action in Plaintiffs' Complaint as requested herein.

11

        Respectfully submitted,

        /s John A. Mueller
        John A. Mueller
        LIPPES MATHIAS LLP
        50 Fountain Plaza, Suite 1700
        Buffalo, NY 14202-2216
        716.853.5100
        jmueller@lippes.com

        *Attorneys for Defendants*