UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAYMOUNT URGENT CARE PC et al.,

    Plaintiffs,

  -v-

GOFUND ADVANCE, LLC et al.,

    Defendants.

22-cv-1245 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

All defendants move collectively for an order certifying this Court's June 27, 2022 opinion and order denying their motion to dismiss (Dkt. 86) ("Opinion")[1] for interlocutory appeal and staying discovery pending the results of any certification. (Def. Mem. Supp. Mot. ("Def. Mem."), Dkt. 106, at 1.) Because defendants do not identify any "controlling question of law" as to which "an immediate appeal . . . may materially advance the termination of the litigation," 28 U.S.C. § 1292(b), they fail to demonstrate "exceptional circumstances" that would "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Klinghofer v. S.N.C. Achille Lauro Ed Altri-Getione Motonave Achille Lauro In Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990).

---

[1] All capitalized terms here used refer to the definitions set forth in this order, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

1

Additionally, this case is set to be ready for trial by November 11, 2022, meaning that an interlocutory appeal at this point would delay rather than expedite resolution of this action. As such, defendants' motion is denied.

I. **Legal Standard**

A district judge may certify an otherwise unappealable order for immediate appeal prior to the entry of final judgment where the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The relevant appellate court then has discretion (but no obligation) to hear an interlocutory appeal from that order. Id.

While Section 1292(b) allows for interlocutory appeals in exceptional circumstances, it does not disrupt the "basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). Rather, it creates "a rare exception to the final judgment rule that . . . is reserved for those cases where an intermediate appeal may avoid protracted litigation." Id. at 865-66.

II. **Analysis**

The Court assumes familiarity with the basic facts of this case as laid out in its June 26th order and opinion. As relevant here, the Opinion reasoned that plaintiffs had plausibly alleged, among other theories of liability, a RICO claim based on defendants' making and

2

collecting on usurious loans, because the agreements for merchant cash advances ("MCAs") that defendants issue plausibly constitute usurious loans under New York law. Opinion at 10-20. Defendants argue that this question--whether their MCA agreements are actually loans under New York law--is a "controlling question of law," as relevant here. Def. Mem. 3-6. But it is not, for at least two reasons.

*First*, even were defendants' correct that their MCA agreements are not loans, it is not clear why that issue is "controlling" in any sense here relevant, as it would not conclusively resolve even plaintiffs' RICO claims (let alone their non-RICO claims, including plaintiffs' fraud and declaratory judgment claims against GoFund Advance and plaintiffs' Section 1983 claims). Opinion at 37. Defendants emphasize that because RICO liability carries the potential for treble damages, resolution of plaintiffs' RICO claims would significantly impact the litigation. Def. Mem. 3-4. But, as laid out in this Court's opinion denying defendants' motion to dismiss, plaintiffs have plausibly alleged *two* viable theories of RICO liability, only one of which hinges on whether the MCA agreements qualify as loans under New York law. Opinion at 10-23. Specifically, this Court held that plaintiffs have plausibly pled "a RICO claim predicated on a pattern of racketeering activity, to wit, wire fraud," wholly separate from their allegations that defendants were engaged in collecting unlawful debts. Id. at 20. This claim rests on plaintiffs' allegations that GoFund Advance made ACH withdrawals from Haymount's account, after Haymount attempted to block such withdrawals, by using fraudulently

3

misleading names to evade the blocks. Id. at 21; First Amended Complaint ("FAC") ¶¶ 180-86 (Dkt. 28). Defendants note that this Court referred to plaintiffs' first RICO theory, related to the collection of unlawful debts, as their "principal theory of RICO liability" and as their "core claim," Opinion at 9, 10, but neither statement changes the fact that resolution in defendants' favor of one of plaintiffs' RICO theories would still leave plaintiffs with a viable RICO claim, plus the other non-RICO claims referred to above.

To be sure, the Second Circuit has stated that "the resolution of an issue need not **necessarily** terminate an action in order to be 'controlling.'" Klinghoffer, 921 F.2d at 24 (emphasis added). But the likelihood that resolution of an issue would terminate an action is, at least, one important factor in assessing whether a legal question may be "controlling," a factor that is clearly not met here. Id. Further, defendants appear to concede that whether a question is controlling turns, at least to some degree, on whether "its incorrect disposition would require reversal of a final judgment." Def. Mem. at 3; see 16 Charles A. Wright et al., Federal Practice & Procedure § 3930 (2d ed. 1986 & updated 2022) ("Rejection of one theory may not be controlling when another theory remains available that may support the same result."). And, as just noted, plaintiffs have a viable RICO theory (plus other claims), regardless of whether the MCA agreements constitute unlawful debts or not.[2]

---

[2] While plaintiffs cite language in several district court cases suggesting that a question may be controlling even if its resolution

***Second***, even if defendants could show that resolution of one of plaintiffs' two RICO theories (and none of plaintiffs' other claims) were somehow "controlling," whether defendants' MCA agreements constitute loans under New York law hinges on a number of as yet undetermined factual questions and is therefore not a pure question of law. See Koehler, 101 F.3d at 864 (noting that Section 1292(b) should not be used to answer "an ephemeral question of law that may disappear in the light of a complete and final record"); Weber v. United States, 484 F.3d 154, 158 (2d Cir. 2007) (noting that interlocutory appeals under 28 U.S.C. § 158(d)(2)(A), which sets out a similar standard to Section 1292(b) for interlocutory appeals from bankruptcy courts, are inappropriate where the ultimate legal question is "heavily dependent on the particular facts of a case"). As this Court previously held, "[w]hile there have been several [New York] Appellate Division decisions and numerous trial court cases on the

---

does not terminate the case, Def. Mem. 3-4, the questions in two of those cases were in fact "controlling" in the conventional sense. See Tantaros v. Fox News Network, LLC, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (treating as controlling whether the court had subject matter jurisdiction); Shipping Corp. of India, Ltd. v. Jaldhi Corp. of India, Ltd., No. 08 Civ. 4328 (JSR), 2008 WL 2596229, at *1 (S.D.N.Y. June 27, 2008) (determining that whether or not an order vacating a maritime attachment involved a "controlling" issue). In the third, the "controlling question" would have at least fully resolved many of the claims at issue in the case. Capitol Records, LLC v. Vimewo, LLC, 927 F. Supp. 3d 537, 552 (S.D.N.Y. 2013) (treating as controlling a statutory interpretation question that would "exclusively" determine "which party prevails on the copyright claims associated with each of" several recordings).

issue [of when MCA agreements qualify as loans], the outcomes are strongly fact-bound and vary considerably." Opinion at 14. In this case, whether the MCA agreements are loans may turn in part on whether the MCA agreements' reconciliation provisions actually provide the merchants a real chance to apply for and receive reconciliation, whether the MCA agreements actually transfer the risks associated with shortfalls in the merchants' receivables, whether the daily remittance amounts set out in the agreements are good faith estimates of the merchant's receivables, and whether defendants in fact had "usurious intent," Opinion at 16-19—all at least partially factual questions that remain unresolved. Defendants' argument that the question here merely involves interpretation of New York's usury law is therefore misplaced. Def. Mem. 5.

Because these antecedent factual questions have yet to be resolved, this case differs significantly from AIG, Inc. v. United States, No. 09-cv-1871, 2013 WL 7121184 (S.D.N.Y. Nov. 5, 2013), a case that defendants argue is on all fours with this one. Def. Mem. 5-6. There, after the completion of discovery and the resolution of AIG's motion for partial summary judgment, Judge Stanton determined that the application of the "economic substance" doctrine (which requires that transactions be undertaken for some legitimate purpose beyond tax advantages) constituted a controlling question of law. Id. at *2. But because the antecedent factual questions had already been resolved, all that remained there was a legal question about how far the doctrine reached. Id. at *2. That is not the case here.

6

Beyond all this, even if defendants had identified a controlling question of law, they would also need to show that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b)--which they have failed to do. As explained above with respect to why defendants have failed to identify any controlling question of law, resolution of whether the MCA agreements are loans--even if that were possible without further factual development--would not even terminate plaintiffs' alternative RICO claim, let alone materially advance the termination of the litigation.[3] Furthermore, discovery in this case is currently set to be completed by September 28, 2022, and the case is set to be ready for trial by November 11, 2022. See Case Management Plan at 1-2 (Dkt. 100). As such, any interlocutory appeal would only cause delay, and would therefore not "materially advance the ultimate termination of the litigation."

Because defendants identify no controlling question of law the resolution of which would materially advance this litigation, this Court need not reach defendants' arguments about whether "there is a substantial ground for difference of opinion" as to whether plaintiffs have sufficiently alleged that the MCA agreements operate as loans. See 28 U.S.C. § 1292(b).

---

[3] Nor would immediate appeal provide much legal clarity in other cases because the legal question defendants advance turns on New York state law and so can only be conclusively resolved by the New York Court of Appeals, not the Second Circuit.

7

For the reasons stated above, defendants' motion for certification pursuant to 28 U.S.C. § 1292(b) is denied.

SO ORDERED.

New York, NY
August 25, 2022

JED S. RAKOFF, U.S.D.J.