UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAYMOUNT URGENT CARE PC, ROBERT A. CLINTON, JR., INDIGO INSTALLATIONS, INC., AND CHRISTOPHER A. TURRENTINE, *individually and on behalf of all those similarly situated*,<br><br>                    Plaintiffs,<br>     v.<br><br>GOFUND ADVANCE, LLC, FUNDING 123, LLC, MERCHANT CAPITAL LLC, ALPHA RECOVERY PARTNERS, LLC, YITZCHOK ("ISAAC") WOLF, JOSEF BREZEL, JOSEPH KROEN, AND YISROEL C. GETTER,<br><br>                    Defendants. | Case No. 1:22-cv-01245-JSR |

## DECLARATION OF CHRISTOPHER A. TURRENTINE

I, Christopher A. Turrentine, declare as follows:

1. I am over the age of 18 years old, of sound mind, and am fully competent to make this declaration. I have personal knowledge of the matters set forth in this declaration and, if called upon, could testify competently to them.

2. I am a named plaintiff in the class action lawsuit captioned *Haymount Urgent Care PC, et al. v. Gofund Advance, LLC, et al.,* currently pending before the United States District Court of the Southern District of New York and assigned Case No. 1:22-cv-01245-JSR (the "Lawsuit").

3. Based in Plano, Texas, representative Plaintiff Indigo Installations, Inc. is a restaurant equipment installer.

4. I am the Owner and Operator of Indigo, having formed the company on September 23, 2020.

29477385v.1

5. Indigo's clients are restaurants, hotels and corporations nationwide that pay it to perform various services, including, but not limited to, installing and replacing kitchen equipment, walk-in coolers and hoods.

6. Prior to February 1, 2022, Indigo's average monthly revenue was approximately $55,000 per month.  My revenue in January 2022 was less than $50,000.

7. On or about January 28 or 29, 2022, I personally responded to a call from a person claiming to be named Ashley, offering to provide immediate financing.  Although I was not looking for a loan, I had a project to fund that would require Indigo to outlay $40,000 so I was receptive to what she had to offer.

8. During that discussion, Ashley represented that Indigo would receive $40,000 to assist with the project and sent me a contract on or about February 1, 2022, reflecting approval for financing in the amount of $40,000.  I executed the agreement via DocuSign.  A true and correct copy of the original document that I had signed was produced by Defendants in this action and is attached as Exhibit 1.

9. Shortly after executing the original contract, Ashley called me and told me that I had to sign new documents because the funding had to be split up in two.  I was told that I would receive $20,000 initially, and then $20,000 after ten successful repayments.  I again executed the documents via DocuSign.  A true and correct copy of these agreements are attached as Exhibits 2 and 3.

10. At no point did Ashley ask me for an estimate of my monthly receivables, nor did she ask me for a list of my outstanding receivables.

11. Rather, Ashley simply told me the amount that I would receive, the amount that I would have to repay, and the amount of the fixed daily payment required.

12.     Further, Ashley made it clear that I could not miss a payment and that, if any payments were missed, I would not receive the balance of the loan.

13.     On February 2, 2022, I received a deposit of only $14,000 into Indigo's bank account. I immediately called Ashley and asked her why Indigo had only received $14,000 when she had promised me that Indigo would receive a deposit of $20,000. She told me not to worry and that as long as I made ten timely payments, the remaining $6,000 would be paid. She specifically told me that the $6,000 was just a temporary hold to ensure timely payments. Although I was not happy with the situation, I had no choice but to continue with the payments in order to obtain the remaining funding and not lose the $6,000 that was placed on hold.

14.     After making ten timely payments, no deposit was received. After making at least twelve timely payments, I tried looking for Ashley's contact information. There was no contact information on the face of the contract, and I could not recall the number she had used. As a result, I had to go on my AT&T app to obtain my call log to look for a New York number on or around the day of funding.

15.     After finding Ashley's number through my AT&T call log, I called her on or around February 17, 2022, and asked what happened to the remaining funding. I then received a phone call by someone claiming to be named Jason Black. He informed me that I would receive $20,000 the next day and that the $6,000 hold would be repaid to me as a rebate after I had completed all payments due under the contract.

16.     On February 18, 2022, Indigo received a deposit of only $14,000. I again called Ashely and Jason to inquire about the shorting of funds. I then received a phone call back by someone claiming to be Clint Brown. He told me that the $6,000 was for fees and that he would see what could be done to reduce the fees.

29477385v.1

17. At that point, I consulted with my local attorney and explained what had happened. After consulting with my local attorney, I place a block on the payments due to being defrauded.

18. On or around February 26, 2002, I was on vacation in Mexico with my wife. We were supposed to stay until March 2, 2022. On or around March 1, 2022, I went to go pay my tab at the hotel restaurant and my debit card was declined. I had no idea why my card was declined and had no other means of payment. I then called PNC Bank asking what caused my bank account to be in the negative and frozen, they referred me to an attorney named Jared Alfin. I called Mr. Alfin, and he made out like he knew nothing of the situation but said that he represented GoFund and that the only way to get the bank cleared was to offer GoFund a settlement offer. I offered to give them what I had paid in already, $28,600 and they can clear my bank account. Mr. Alfin stated he would check with GoFund and he never called me back.

19. As a result, I had to have my sister-in-law, Michelle Meeker, send me money so that I could pay my hotel bill and have money for a cab back to the airport. I was thus stuck in Mexico until March 3, 2022. During that time, we had to ration our spending to $300 from my wife's gift card.

20. Upon my return, I immediately called Ashley to inquire about the bank freeze. I also called Jared Alfin's office of Hassett & George to inquire about the bank freeze. Shortly after to speaking with Ashley, she sent me a letter purporting to be signed by Jared Alfin claiming that a settlement had been reached and that I was agreeing to release all remaining funds in my PNC Bank account to Hassett & George according to a non-existent settlement agreement. A true and correct copy of the letter is annexed hereto as Exhibit 4.

21. At or around the same time, GoFund, through Alpha Recovery, sent a UCC lien letter to all of Indigo's customers, demanding immediate payment of $33,360. A true and correct copy of the UCC lien letter is attached hereto as Exhibit 5.

22. On March 3, 2022, I also contacted White and Williams LLP. I found White and Williams LLP by performing an internet search for GoFund and found a copy of the Complaint in this action. I immediately asked to be a part of the class action, and White and Williams LLP agreed to include me in the class action. I was sent a draft Amended Complaint including my claims that same day.

23. After retaining White and Williams LLP, my PNC bank account remained frozen. I was then contacted by a person with the phone number (845) 538-1753. He claimed to be with GoFund. I exchanged text messages with him and spoke with him on the phone. He told me that if I did not resolve things with him that matters would only get worse. He then sent me a proposed settlement agreement. I expressly told him that I had not informed White and Williams LLP about the proposed settlement but would run it by my local attorney. My local attorney would not provide me any legal advice because he was not familiar with New York law. As a result, I felt like I had no choice but to agree to GoFund's demands in order to release my bank account and save my business from certain disaster. In addition to the bank accounts being frozen, I was also aware that GoFund had sent UCC Lien Letters to my customers. Thus, I felt that the only way to save my business was to agree to GoFund's demands. I therefore executed the settlement agreement on or around March 8, 2022 due to the financial pressure placed on me.

24. After executing the agreement, I immediately informed White and Williams LLP.

25. I have since become aware that GoFund has challenged my participation in this class action based on a purported class action waiver that was included in the GoFund agreements I had signed on February 1, 2020.

26. At the time of signing those documents, I was not aware that the GoFund Agreements included a class action waiver clause, a jury trial waiver clause or a prejudgment writ of attachment, among other things. Nor do I reasonably understand what those things are.

27. I understood at all relevant times that the transaction completed by the GoFund Agreements was a loan for $40,000 and that I would have to repay $63,960 through fixed daily payments of $2,200 per business day.

28. I did not negotiate any of the contract provisions with GoFund before entering into the GoFund Agreements on behalf of Indigo.

29. I did not know that the GoFund Agreements resulted in GoFund having liens on Indigo's assets, prohibited Indigo from obtaining financing from other sources and allowed for GoFund's attorneys to freeze my bank accounts without notice.

30. I am a guarantor who was damaged by Defendants' "Merchant Cash Advance Program" during the class period.

31. I have actively participated in the prosecution of this Lawsuit since its inception.

32. Specifically, I have reviewed the various draft complaints, providing information to my attorneys, as well as actively participated in the discovery process and done everything I can to assist our lawyers and the putative class members, including participating in a deposition scheduled for September 15, 2022.

33. If the Court decides to certify a class and appoint Indigo and/or me as a class representative, I am ready, willing, and able to discharge the obligations as a class representative in this Lawsuit.

I declare under penalty and perjury that the foregoing is true and correct.

Executed on September 12, 2022.

_____
CHRISTOPHER A. TURRENTINE

29477385v.1