UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAYMOUNT URGENT CARE PC et al., <br><br> Plaintiffs, <br><br> -v- <br><br> GOFUND ADVANCE, LLC et al., <br><br> Defendants. | 22-cv-1245 (JSR) <br><br> OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

Defendants collectively move to strike the class allegations from plaintiffs' First Amended Complaint (Dkt. 28) ("FAC")[1], pointing to a class action waiver provision included in various merchant cash advance ("MCA") agreements that plaintiffs allege are unlawfully usurious loans. See Mem. Supp. Defs. Mot. Strike Class Allegations ("Defs. Mem."), Dkt. 104. The Court denies defendants' motion. As explained in greater detail below, plaintiffs have plausibly alleged that the MCA agreements are entirely void under New York law, which would mean that none of their provisions -- including the class action waivers -- can be enforced. As such, defendants cannot enforce the MCA agreements' class action waivers against plaintiffs at this preliminary stage based solely on the pleadings.

---

[1] All capitalized terms here used refer to the definitions set forth in this order, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

## I.   Legal Standard

Courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Invoking this authority, defendants named in putative class action complaints will sometimes seek to strike class allegations early in a case where there is some barrier to plaintiffs' ability to successfully certify a class. Cf. Rule 23(c)(1)(A) (stating that courts should decide whether to certify a class "[a]t an early practicable time after a person sues. . . .").

Besides general statements that motions to strike class allegations are "disfavored," Kassman v. KPMG, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013), there is surprisingly little authority that describes the actual standard courts should apply in deciding such motions. As such motions are decided on the basis of the pleadings and without the benefit of any factual record, the standard that makes the most sense is something akin to the plausibility standard applied in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim: has a plaintiff plausibly alleged sufficient facts to support a reasonable inference that she could meet the requirements of Rule 23, should her claim proceed to discovery? Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (discussing the plausibility standard in the motion-to-dismiss context). And, although they have not always put it in precisely those terms, courts have generally applied this plausibility standard in deciding motions to strike. See Kassman, 925 F. Supp. 2d at 463-64 (S.D.N.Y. 2013) (stating that "the relevant

question" in deciding a motion to strike class allegations "is whether, based on the allegations in the [complaint,] it is plausible that plaintiffs will come forth with sufficient evidence at the class certification stage" to meet Rule 23's class certification requirements); Calibuso v. Bank of America Corp., 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (similar). As such, the Court's inquiry here is whether plaintiffs have plausibly alleged that they can certify a class.

In evaluating the plausibility of class allegations at the pleading stage, courts must bear in mind that granting such a motion would "preemptively terminate the class aspects of litigation solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Chen-Oster v. Goldman & Sachs Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). But one circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis. See, e.g., Camilo v. Uber Techs., Inc., No. 17-cv-9508, 2018 WL 246507, at *3 (S.D.N.Y. May 31, 2018). Defendants contend this is the case here.

## II.  Analysis

### A. Plaintiffs have plausibly alleged that the MCA Agreements -- including their class action waiver provisions -- are void under New York law.

It is undisputed that the MCA agreements at issue in this case contain broadly worded class action waiver provisions purporting to "waive any right to assert any claims against the other party as a representative or member in any class representative action. . . ." See Brezel Aff. Ex. 1, Revenue Purchase Agreement § 4.11, Dkt. 69-1. Defendants contend that these provisions require striking plaintiffs' class allegations before plaintiffs move for class certification. Plaintiffs respond that, at least at the pleading stage, they have plausibly alleged that the MCA agreements are void in their entirety, meaning that their class action waivers cannot be enforced against them.

Unpacking this dispute requires some discussion of plaintiffs' claims. As explained in this Court's prior opinion and order denying in significant part defendants' motion to dismiss, plaintiffs' principal theory of liability alleges that defendants collectively participate in an enterprise that makes and collects usurious loans. Opinion and Order ("Opinion") at 10, Dkt. 86. The cause of action underlying this claim comes from the federal RICO statute, which makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . collection of unlawful debt." 18

U.S.C. § 1962(c). "[U]nlawful debt" is defined in relevant part as any "debt (A) . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

Since RICO's definition of unlawful debt, as applied to this case, turns in part on state laws regulating usury, this theory of RICO liability requires demonstrating, among other things, that the MCA agreements are "unenforceable . . . in whole or in part" under New York's usury laws (at least assuming New York's law is the applicable state law, an assumption discussed further below). Opinion at 12. Under New York law, "criminal usury" involves making and collecting on loans at a greater than 25% interest rate, N.Y. Penal L. § 190.40, and plaintiffs here allege that the effective interest rates charged by the MCA agreements were more than twice that, Opinion at 12. As such, as this Court has already held, plaintiffs have adequately alleged that the MCA agreements, although styled as purchases of accounts receivable, in fact operate as and would be considered usurious loans under New York law. Opinion at 13-20.

If the MCA agreements *are* usurious loans under New York law, then New York law would also consider them void. N.Y. Gen. Oblig. § 5-511 (stating that all loans that exceed the statutorily prescribed interest rates "shall be void"); Adar Bays, LLC v. GeneSYS ID, Inc., 179 N.E.3d

612, 621 (N.Y. 2021) ("[L]oans proven to violate the criminal usury statute are subject to the same consequences as to any other usurious loans: complete invalidity of the loan instrument.") And this is just as true of loans made to corporations as to loans made to individuals. Id. ("The statutory authority, coupled with the legislative intent . . . [behind the relevant usury laws] requires the conclusion that the legislature intended for criminally usurious loans made to corporate borrowers to be void when a successful usury defense, based on the criminal usury rate, is raised."). As such, if the MCA agreements are in fact usurious loans under New York law as plaintiffs have alleged, then the class action waiver provisions contained therein -- like all aspects of the agreements -- are and were void from the outset. Id.

Defendants concede that "New York law regards usurious loan contracts as void in certain circumstances," but they contend that "those circumstances don't apply to this case where the alleged 'borrower' is a **corporation** and is **not** defending a claim to recover a note." Def. Mem. 5 (emphasis in original). As a result, defendants contend that "corporate entities -- like Plaintiffs -- can raise usury only as an affirmative defense to an action to collect on a debt," and that, as a result, plaintiffs cannot here contend that the class action waivers, along with the remainder of the MCA agreements, are void from the outset. Reply Mem. Supp. Defs. Mot. Strike Class Allegations ("Defs. Reply") at 2, Dkt. 109.

As an initial matter, it is not clear that the distinction defendants draw between corporate and individual borrowers bears the

weight they urge. As the New York Court of Appeals made clear in Adar, New York's usury laws "treat[] corporate borrowers differently [from non-corporate borrowers] only to the extent that corporate borrowers may raise criminal usury [defined by N.Y. Penal L. § 190.40 as loans with in interest rate over 25%], but not civil usury [defined as loans with an interest rate over 16%], as a defense." 179 N.E.3d at 620-21. Per Adar, there is no distinction between corporate and individual borrowers in terms of whether or not loan agreements "charging an interest rate greater than that permitted . . . shall be void." Id. at 620.

To be sure, at least prior to Adar, lower New York courts had generally held that New York's usury laws permit corporations to raise criminal usury only as "an affirmative defense to an action seeking repayment of a loan . . . [and not] as a means to effect recovery by the corporate borrower" in an affirmative suit. Intima-Eighteen, Inc. v. Schreiber Co., 172 A.D. 2d 456, 457-58 (N.Y. App. Div. 1991); see also Paycation Travel, Inc. v. Global Merchant Cash, Inc., 192 A.D. 3d 1040, 1041 (N.Y. App. Div. 2021) (same). And Adar itself spoke of the statutes governing usury as giving rise, at least "typically," to "a defense raised by a borrower in a civil case to avoid enforcement of a loan." Adar, 179 N.E.3d at 616 n.2. Indeed, the way in which the New York usury laws limit corporations to the criminal usury definition (for loans with interest rates above 25%, rather than the lower civil limit of 16%) is by prohibiting corporations from "interpos[ing] *the defense* of usury in any action" generally, but stating that this

prohibition "shall not apply to any action in which a corporation interposes a *defense* of criminal usury. . . ." N.Y. Gen. Oblig. § 5-521(1), (3) (emphasis added); see Adar, 179 N.E.3d at 616-21 (explaining the history of New York's usury laws as applied to corporations); Intima, 172 A.D. 2d at 457-58 (arguing that the prohibition on corporation's raising the defense of usury generally should be read to prohibit them from affirmatively asserting usury as anything other than as a defense). For these reasons, the Court dismissed plaintiffs' claim for an affirmative declaration that the MCA agreements were void ab initio, reasoning that New York law does not authorize corporations to bring affirmative claims alleging criminal usury. Opinion at 29.

Defendants therefore argue that because plaintiffs cannot sue affirmatively for a declaration that the MCA agreements were void from the outset, *defendants* should be allowed to enforce the MCA agreements' class action waiver provisions at the pleading stage. To hold otherwise would, according to defendants, "frustrate[] New York's limits on the use of usury [by] . . . permit[ting] a corporate plaintiff to sue on allegedly usurious debt and use usury as a sword." Def. Reply at 4.

It is hard to see how this argument, if true, would be limited to the issue of the MCA agreements' class action waivers. Plaintiffs' entire RICO claim, at least to the extent it is predicated on showing the MCA agreements are usurious under New York law, involves in some sense "us[ing] usury as a sword" in a way that *New York's* usury laws by themselves might not authorize plaintiffs to do. Rather, Congress

has chosen to provide a federal cause of action that amplifies certain state-law rights by allowing plaintiffs to bring RICO claims against enterprises engaged in the collection of debts rendered unlawful by state law. 18 U.S.C. § 1962(c). Plaintiffs sue under that federal cause of action, not under New York's usury laws.

With that understanding, the flaw in defendant's argument becomes clear. Plaintiffs are not (except through their previously dismissed declaratory action claim) bringing an affirmative claim to invalidate the MCA agreements, or the class action waivers contained therein. Rather, they are bringing federal RICO claims. It is now *defendants* who are seeking to enforce the MCA agreements in part with respect to their class waiver provisions. And against that affirmative attempt to enforce these agreements, plaintiffs have "interpose[d] the defense of criminal usury," contending that the MCA agreements are and have always been void and that therefore the class-action waiver provisions in them cannot be enforced. N.Y. Gen. Oblig. § 5-521(3). That is the exact situation the court in the Eastern District of New York faced in Moss v. First Premier Bank, No. 13-cv-05438, 2020 WL 5231320 (E.D.N.Y. Sept. 2, 2020), when it denied a motion to stay class discovery at the pleading stage where the plaintiff brought a RICO claim based on the allegedly usurious nature of certain loans under New York law and the Court reasoned that "under New York law, the class action waiver [contained in the contract] is invalid along with the rest of the contract." Id. at *4.

Defendants make two further arguments as to why they should be allowed to affirmatively enforce a provision in an allegedly void agreement. *First*, they argue that even if plaintiffs are not affirmatively bringing a claim under New York's usury laws (which, as explained above, they are not) and are instead relying on those laws as a defense against defendants' attempt to enforce the class action waiver provisions of the MCA agreements, that defense fails because it is not raised as "a defense to 'an action to recover repayment for a loan.'" Defs. Reply at 4 (quoting Paycation, 192 A.D.3d. at 1041). But while it is true that New York courts have often spoken of corporations raising a defense of usury "as a defense to an action to recover repayment of a loan," the point of these discussions has been to explain that corporations may "not" raise usury "as the basis for a cause of action asserted by the corporation for affirmative relief." Paycation, 192 A.D. 3d at 1041. Defendants cite no case, nor is this Court aware of any, where New York courts have disallowed corporations from relying on usury as a defense to attempts to enforce features of an allegedly usurious contract against them, as plaintiffs seek to do here. And New York's usury statute contains no language along the lines defendants suggest, limiting the usury defense to actions where the lender sues to collect on a debt. Instead, the statute provides that corporations may "interpose a defense of criminal usury" in "*any* action. . . ." N.Y. Gen. Oblig. § 5-521(3) (emphasis added).

*Second*, defendants contend that that this Court, in its opinion and order on their motion to dismiss, already decided that the MCA

agreements could not be totally void because it decided that New York law applied in accordance with the MCA agreements' choice of law provision. Defs. Mem. 7. It is true that, in deciding defendants' motion to dismiss plaintiffs' RICO claims, the Court stated that "there is no apparent reason why [the MCA agreements'] choice of law provisions would be held unenforceable under" the potentially applicable laws of the several states, and that, as a result, "New York law governs the issues of whether the contracts amount to loans. . . ." Opinion at 11-12.

But defendants ignore that both they and plaintiffs consistently assumed, throughout their motion-to-dismiss papers, that New York law governed. Only after this Court sua sponte ordered supplemental briefing on the choice-of-law issue did either party even raise the possibility that New York law might not govern. And, at that time, *defendants* took the position "that, under applicable choice of law rules, New York law governs Plaintiffs' RICO claims for collection of unlawful debt." Defs. Supp. Mem. Supp. Mot. Dismiss at 2, Dkt. 82.

The Second Circuit has previously held that "implied consent is sufficient to establish choice of law." Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000). And there is at least some basis to think, even putting aside the parties' apparent consent to the application of New York law *and* the effect of the MCA agreements' choice-of-law provisions, that New York law governs whether the MCA agreements constitute usurious loans, since defendants allegedly operate their enterprise from New York. FAC ¶¶ 6, 9, 14, 47-51, 52,

11

255, 317; see United States v. Moseley, 980 F.3d 9, 23-24 (2d Cir. 2020) (deciding that New York law applied to similar questions based on New York's "center of gravity test," and giving significant weight to "[t]he loan proceeds [being] received in New York," and apparent ties between the lender and New York). As such, between the parties' apparent consent to the application of New York law and their connections to New York, it seems likely that New York law would govern this action even if the MCA agreements were void.[2]

One final point bears mentioning, although defendants do not explicitly raise it. The Supreme Court has previously held that where a contract contains an arbitration provision, allegations that the contract as a whole is void ab initio must be resolved in the first instance by the arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006) (reversing the Florida Supreme Court's determination that arbitration should not be compelled where the agreement containing the arbitration agreement was alleged to be void under Florida's usury laws). Defendants do not cite Buckeye, although, in arguing that the class action waiver provisions are not unconscionable, they do cite cases where the class action waivers were contained in arbitration agreements. E.g., Defs. Mem. 1 (citing Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009)). Notwithstanding the parties' failure to raise it, the Court

---

[2] Of course, assuming away issues of consent and waiver, either party could seek to argue that a different state's laws apply at the class certification or summary judgment stage.

briefly explains why <u>Buckeye</u> does not require enforcing the class action waivers at this stage.

The Supreme Court's decision in <u>Buckeye</u> was based on the express language of the Federal Arbitration Act, which (as interpreted by the Supreme Court) requires that "the issue of the contract's validity [be] considered by the arbitrator in the first instance," at least where, as there, the challenge was to the contract generally, and "not specifically [to] its arbitration provisions." <u>Buckeye</u>, 546 U.S. at 446. Here, of course, there is no federal statute requiring that class action waivers contained in allegedly void contracts be enforced preliminarily, prior to the resolution of the challenge to the contract's validity.

And that is for good reason. Reserving for the arbitrator the initial determination as to whether an allegedly void agreement is in fact void makes sense, because the whole point of the arbitration provision is to decide in which forum claims should be made and arguments decided. <u>Buckeye</u>, 546 U.S. at 448-49. Allowing such a claim to proceed in court would therefore frustrate the arbitration agreement. By contrast, the class action waiver provisions at issue here do not require this case to proceed in a different forum, but rather relate to whether plaintiffs may assert their claims on a class-wide basis. And, unless and until any class is actually certified, the class waiver has not in fact been rendered ineffective. By contrast, if the Court were to grant defendants the relief they request and strike plaintiffs' class allegations on the pleadings, it would

necessarily have to enforce against plaintiffs a provision in an allegedly void contract before any determination as to the validity of that contract has been made.[3]

Because defendants seek to enforce a provision of a contract that plaintiffs have plausibly alleged is void in its entirety, the Court declines to strike plaintiffs' class allegations at this stage.[4]

**B. The Class Action Waiver Provisions are not Unconscionable**

For the reasons described above, the Court will not strike plaintiffs' class allegations at this stage. However, for the sake of clarity as this case proceeds to the certification stage, the Court addresses another of plaintiff's arguments against enforcement of the class action waivers: that they are unconscionable. See Pls. Mem. Opp. Mot. Strike Class Allegations ("Pls. Opp.") at 14-23. The Court concludes that the class action waiver provisions, at least to the

---

[3] In denying this relief, the Court merely allows plaintiffs the opportunity to seek to certify a class. To do so, plaintiffs will of course need to make a number of showings -- almost certainly including a showing that the questions of whether or not the MCA agreements are void or whether the MCA agreements' class action waiver provisions can be enforced against them are capable of class-wide resolution.

[4] Plaintiffs' complaint also included class allegations brought by plaintiff Indigo Installations, Inc. relating to defendants' use of Connecticut's pre-judgment attachment statute in alleged violation of 42 U.S.C. § 1983. FAC ¶ 219; see Opinion at 23-28. The Court doubts that these claims for alleged constitutional violations would fall under the MCA agreements' class action waiver provisions, or could be governed by those agreements' terms. However, the Court need not decide this issue since plaintiff Indigo has since dismissed its claims. See Joint Stipulation of Voluntary Dismissal, Dkt. 135.

extent defendants seek to enforce them as to claims clearly arising under the MCA agreements,[5] are not unconscionable.

As defendants point out, "[c]ourts applying New York law . . . have uniformly held that class action waivers are not unconscionable." Nayal v. HIP Network Svcs. IPA, Inc., 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009); Ranieri v. Bell Atlantic Mobile, 304 A.D.2d 353, 354 (N.Y. App. Div. 2003) ("[W]e are in accord with authorities holding that a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy."). Plaintiffs engage with essentially none of this authority, nor do they even attempt to explain why the class action waivers specifically meet the demanding standard for substantive or procedural unconscionability. Instead, they largely point to *other* features of the MCA agreements that supposedly render those agreements unconscionable. E.g., Opp. 16 (discussing "at least fifteen substantively unfair and one-sided

---

[5] The MCA agreements' class action wavier provisions are phrased extremely broadly and might appear to waive the parties' rights to join in class actions totally unrelated to the contracts themselves. See Brezel Aff. Ex. 1, Revenue Purchase Agreement § 4.11 (Dkt. 69-1) ("The Parties hereto waive *any* right to asset *any* claims against the other party as representative or member in any class or representative action. . . .") (emphasis added). To the extent defendants sought to enforce the waiver against claims not arising directly out of the MCA agreements -- as might be the case if plaintiffs' Section 1983 claims were still in the case -- there would be a much stronger argument that enforcement of the class action waiver would be unconscionable. See McFarlane v. Altice USA, Inc., 524 F. Supp. 3d 264, 276-77 (S.D.N.Y. 2021) (deciding that an agreement purporting to provide that all disputes between the parties be arbitrated was unconscionable to the extent it was used to compel arbitration of claims between the parties totally unrelated to the contract itself).

provisions," including allegedly arbitrary fee and unusable reconciliation provisions).

Without deciding whether these allegations as to other aspects of the MCA agreements have any merit, the Court does not see why the proper remedy for any problems with these other allegedly unconscionable provisions would be to invalidate the class action waiver provision. When faced with an unconscionable contract, courts have discretion whether to decline to enforce the contract as a whole or just the specific unconscionable term. Super Glue Corp. v. Avis Rent A Car Sys., Inc., 132 A.D.2d 604, 606 (N.Y. App. Div. 1987). Where it is practicable to distinguish between specific terms, declining to enforce only the unconscionable terms is preferred. Restatement (Second) of Contracts § 208 cmt. g (Am. Law Inst. 1981, updated October 2022).

As defendants point out, plaintiffs are all commercial entities that stand to recover substantial amounts on their individual claims should they prevail. Def. Mem. 9. Under these circumstances, and in light of New York courts' routine enforcement of class action waivers, plaintiffs' complaints about other provisions of the MCA agreements would not warrant declining to enforce their class action waiver provisions.

### III. Conclusion

For the reasons stated above, the Court denies defendants' motion to strike plaintiffs' class allegations. The Clerk is directed to close the motion (103) on the docket.

SO ORDERED.

New York, NY
October _12_, 2022

JED S. RAKOFF, U.S.D.J.