## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAYMOUNT URGENT CARE PC, ROBERT A. CLINTON, JR., *individually and on behalf of all those similarly situated*, | Case No. 1:22-cv-01245-JSR |
| Plaintiffs, | |
| v. | |
| GOFUND ADVANCE, LLC, FUNDING 123, LLC, MERCHANT CAPITAL LLC, ALPHA RECOVERY PARTNERS, LLC, YITZCHOK ("ISAAC") WOLF, JOSEF BREZEL, JOSEPH KROEN, AND YISROEL C. GETTER, | |
| Defendants. | |

## <u>DECLARATION OF SHANE R. HESKIN</u>

I, Shane R. Heskin, Esq., an attorney duly licensed to practice law before the courts of the State of New York, hereby states, affirms and declares the truth of the following under penalty of perjury:

1.      I am a Partner of White and Williams LLP, attorneys for Plaintiffs Haymount Urgent Care PC ("Haymount"), Robert A. Clinton, Jr. ("Dr. Clinton"), as well as those similarly situated (collectively, "Plaintiffs").

2.      I am fully familiar with the facts and circumstances of this action and all prior pleadings and proceedings heretofore had herein.  I make this declaration in further support of Plaintiffs' motion for class certification.

3.      Attached as **<u>Exhibit 1</u>** are excerpts from the deposition transcript of Moishe Katz, dated September 29, 2022, specifically testimony at 149:16-167:22, discussing allegations of overlapping class actions.

4.      Attached as **<u>Exhibit 2</u>** is a true and correct copy of the Notice of Dismissal, dated August 12, 2022, filed in the action *Advantgarde Senior Living et al. v. Jonathan Braun et al.*,

Case No. 22-cv-04313-JMF ("*Advantgarde* Action") (dismissing GoFund based on representation of counsel that GoFund did not exist on the date of the MCA agreement at issue).

5.     Attached as **Exhibit 3** is a true and correct copy of the Amended Complaint, dated September 30, 2022, in the *Advantgarde* Action (naming Brezel as a conspirator for a different Enterprise, which alleges John Braun as the mastermind and culpable person of the Enterprise).

6.     Attached as **Exhibit 4** is a true and correct copy of an email from Penn Capital to Brezel, dated December 14, 2018.

7.     Attached as **Exhibit 5** is a true and correct copy of the Penn Capital Agreement at issue in *Avantgarde*, dated July 23, 2020.

8.     I have searched Defendants' document production in this case and have found no Penn Capital agreements produced by Defendants in this action.  *See also* Katz. Tr., at 154:22-155:4 ("Q.  So I guess – I guess – this agreement and Penn Capital aren't really related to the current litigation since it's not the same agreement and your lawyers chose not to produce any Penn Capital agreements in this case, I guess, right?  Ms. Haviv:  Objection").

9.     As detailed in Plaintiffs' opening memorandum in support of class certification, DE 127, knowing which entity is actually behind an MCA agreement is complicated by the fact that MCA companies routinely use fake names on the agreements and set up fake companies located in foreign jurisdictions.  *See* Katz Tr. at 157:1-160:24.

10.     Attached as **Exhibit 6** is a true and correct copy of the deposition transcript of Defendant Joseph Kroen, taken on September 13, 2022, with relevant testimony at 24:5-26:9; 45:19-52:25 (member of Enterprise testifying as to his own limited knowledge of all of the DBAs used).

11.     Attached as **<u>Exhibit 7</u>** is a true and correct copy of the deposition transcript of Defendant Yosef Brezel, taken on September 2, 2022, with relevant testimony at 18:14-20:13; 26:15-28:3; 34:13-35:12; 38:2-43:6; 160:12-163:18 (testifying as to his own limited knowledge of all of the DBAs used by Defendants).

12.     Attached as **<u>Exhibit 8</u>** is a true and correct copy of the deposition transcript of Defendant Yisroel Getter, taken on September 21, 2022, with relevant testimony at 39:11-40:9 and 62:18-68:24.

13.     Attached as **<u>Exhibit 9</u>** is a true and correct copy of the deposition transcript of Defendant Yitzchok ("Isaac") Wolf, taken on September 6, 2022, with relevant testimony at 130:7-131:15 (admitting he cannot remember all the DBAs he uses to fund MCA agreements)

14.     Attached as **<u>Exhibit 10</u>** is a true and correct copy of Exhibit 11 to the Amended Complaint attaching an email between White and Williams LLP and Mr. Alfin regarding the settlement that was entered into with Indigo.

15.     Attached as **<u>Exhibit 11</u>** is a true and correct copy of the deposition transcript of Dr. Robert Clinton, taken on September 14, 2022, with relevant testimony at 31:16-22 testifying that he was provided multiple referrals for counsel and that he personally chose White and Williams LLP; *see also* Clinton Tr. at 48:15-49:2 (testimony regarding his decision to bring suit as a class action)

16.     Each of the Haymount MCA Agreements identify a particular email that merchants are to use to make reconciliation requests or to request a change to the daily remittance, which are: (1)   "eric@gofundadvance.com";   (2)   "admin@merchantcapitalpro.com";   and   (3) "admin@fundyou123.com".  [DE 122-9] §§ 1.4 and 1.5.

17.     Counsel for Plaintiffs have electronically searched through Defendants' entire production for emails to or from these accounts and in total only sixty-one (61) documents hit for any one of these three email accounts.

18.     59 of the 61 documents that hit for any of these emails have nothing to do with reconciliation, but were rather emails concerning DocuSign reminders.  Examples are attached hereto as **Exhibit 12**.

19.     Only two of the 61 emails that hit for any of the three reconciliation request email accounts concerned a request for reconciliation, and these were (i) a December 23, 2021 email from a merchant to "eric@gofundadvance.com" informing Defendants that they owe the merchant $24,000, produced at GOFUND_000066055-56; and (ii) March 5, 2022 email from merchant to "eric@gofundadvance.com" complaining that a fraudster MCA company sold the contract to GoFund Advance under false pretenses, produced at GOFUND_000066515, which are attached hereto as **Group Exhibit 13**.

20.     Plaintiffs have not received any documentation evidencing that GoFund Advance ever responded to either merchant's email.

26.     Attached hereto as **Group Exhibit 14** is: (i) a January 14, 2020 email from Isaac Wolf entitling an MCA agreement as a "Loan Agreement," produced by Defendants at GOFUND_000024715-16; (ii) text messages from Enterprise members introducing themselves as "direct lenders" and offering $40,000 as an immediate advance without  even discussing merchant's receivables; (iii) a January 10, 2022 email from "ashley@altcapitalsource.com" to a merchant in which she introduces herself as a "direct lender" and offers $100,000 with no mention of receivables; (iv) December 3, 2018 email chain between Brezel and "Direct Lender" Barry Gold of Kingsman Capital regarding soliciting a merchant to enter into an MCA agreement, produced

by Defendants at GOFUND_000021980-84; (v) March 14, 2019 email chain between Brezel and "Direct Lender" Edward Stone of WG Capital to discuss terms of an MCA agreement, which were set by Brezel unilaterally without reference to merchant's receivables, produced by Defendants at GOFUND_000022350-51; (vi) December 20, 2018 email chain between Brezel and "Direct Lender" Barry Gold discussing amongst themselves what the terms should be for a particular MCA Agreement, with Brezel agreeing to change the daily payments to $199/day so it "sounds better," produced by Defendants at GOFUND_000022877-78; and (vii) June 3, 2019 email from "Direct Lender" Jack Snyder of Merk Funding to Wolf attaching an executed MCA agreement, produced by Defendants at GOFUND_000053651.

27.    Defendants routinely entered into MCA Agreements with merchants whose receivables were already purchased by other MCA companies.  Examples of this conduct are attached hereto as **Group Exhibit 15** and includes (i) an October 2020 email chain in which the Enterprise approves an MCA agreement for a merchant with six other MCA positions, which Defendant nevertheless approved, despite noting that "this deal has a ridiculous amount of advances – it was funded twice today – has rec'd a total of 8 funding wires this month between two accounts – I can't keep track of all the advances," produced by Defendants at GOFUND_000022432-435; (ii) August 14, 2019 email chain between Wolf and "Direct Lender" Barry Gold in which they prepare an MCA for a merchant with 6 other MCA positions, produced by Defendants at GOFUND_000053256-58; (iii) a November 27, 2019 email chain in which the Enterprise approves an MCA agreement for a merchant with three concurrent MCA positions with the Enterprise admittedly double-debiting the merchant upon funding, produced by Defendants at GOFUND_000025376-77; (iv) a May 26, 2021 email between Defendants reflecting approved terms for an MCA Agreement for a merchant Defendants knew "currently have 3 advances

debiting $2,883 daily & 2 debiting $6,186 weekly," produced by Defendants at GOFUND_000026165; (v) a November 5, 2021 email between Defendants reflecting approved terms for an MCA Agreement for a merchant Defendants knew already had "6 advance debits for $1,203 daily," produced by Defendants at GOFUND_000026357-58; and (vi) a November 12, 2021 email from Wolf to the Enterprise reflecting an approved MCA Agreement for merchants that Defendants knew "currently have 8 advance debits for $37,082 daily & 3 advances debiting $29,437 weekly," produced by Defendants at GOFUND_000026504-515.

28.     Evidence of Defendants' engaging in "refinancing" MCA agreements is collectively attached hereto as **Group Exhibit 16** and includes: (i) November 10-11, 2021 email chain between Enterprise members creating a refinanced MCA agreement for a merchant who was unable to make payments on the prior MCA agreement, produced by Defendants at GOFUND_000021496-99; (ii) June 23, 2022 email from Katz to Brezel containing list of MCA agreements, several of which are identified as "REFINANCE", produced by Defendants at GOFUND_000025605-607;  (iii) November 2018 through January 2019 email chain between Brezel and other Enterprise members discussing a refinancing of a Merchant's MCA agreement shortly after first contract was executed, produced by Defendants at GOFUND_000023674-684; (iv) Answer with Counterclaims filed in *Fundura Capital Group v. Bat, Inc et al.*, Index No. 613192/2021 (Sup. Ct. Nassau Cnty.) at ¶ 148 (quoting text from Kroen to merchant: "Here's what we need to do to close out this open deal . . . We don't need you to pay it completely now I just need 231K and the rest I'll put in as a refi to my other platform on a weekly payment arrangement."); (v) December 14, 2018 email from Mimi Deutsch of Penn Capital to Brezel attaching a refinanced MCA agreement, produced by Defendants at GOFUND_000022918.

42.     Attached hereto as **Group Exhibit 17** are text messages evidencing that the Enterprise understood it was issuing fixed-term funding: (i) Enterprise text messages from a funder entitled "River Advance" revealing that the maximum and minimum loan terms they offer are "max 8 months min can be as low as 30 payments on very high risk deals," produced by Defendants at GOFUND_000057803; (ii) October 22, 2021, December 20, 2021 and February 3, 2022 text messages between Dr. Clinton and Defendants negotiating the MCA agreement based on payout amount and the daily remittance Haymount could afford, with no discussion of receivables; and (iii) and text messages between Enterprise member Sarah Beityakov and a merchant, reflecting negotiation of a fixed term MCA agreement; (iv) text messages between Josef Brezel of Merchant Capital and merchant Amandeep Singh, reflecting similar negotiations, produced by Plaintiffs at HAY-0013103-129.

43.     Defendants would also include special addendums in MCA Agreements that explicitly required that the merchant "will pay back the entirety of the remaining funded balance in a lump sum within 9 weeks of funding." *See* (i) Merchant Capital MCA Agreement, dated June 4, 2021, produced by Defendants at GOFUND_000013984-00001400; *see also* (ii) a January 6, 2022 Business Funding Source MCA Agreement addendum providing for early pay discount but also requiring "no missed payments"; and (iii) an affidavit of Yosef Brezel, dated July 8, 2019, in the matter *Business Funding Source v. Taylor Enterprises LLC et al*. Index No. 514896/2019, confirming Business Funding Source is part of Defendants' Enterprise, collectively attached hereto as **Group Exhibit 18**.

44.     The Enterprise also entered into numerous agreements with Independent Sales Organizations ("ISO Agreements") whereby the Enterprise discloses its intent to recover the entire Purchased Amount even in the event the merchant's receivables slow.  Evidence of this conduct

is collectively attached hereto as **Group Exhibit 19**, produced by Defendants at
GOFUND_000057019-034 and GOFUND_000056963-990, and includes the following
"Clawback Policies":

CLAWBACK POLICY:

If the Merchant blocks payments before SECOND CHANCE FUNDING Receives 20 cleared payments the
deal is considered a complete default and the commission will be returned, even if the Merchant
unblocks payments.
(Unless there was a reasonable story and the deal immediately continues to be in good standing).

If the Merchant bounces more than 4 payments within the first 30 days, or more than 2 payments in a
row, the deal will be considered a Default, unless the Merchant agrees to "catch up" with the payments
and the deal continues to be in good standing.

If the Merchant lowers payments within the first 30 days, the deal is considered a default, unless the
Merchant agrees to go up again after 1 or 2 weeks (and continues so for at least 2 weeks).

In general; if we claw back commissions when a deal goes bad, and we end up collecting more than the
funded amount, we will consider giving back the commissions, despite the default status, especially if
the ISO helps with the collection efforts. This is done on a deal by deal basis, depending on the
circumstances.

If we don't claw back commissions immediately after 30 days, it does not mean that the commissions
will not be charged back, if the deal actually went bad within 30 days – sometimes we will try to work
with the Merchant to resolve the problem and if the Merchant works with us we will hold off from
clawing back the commissions, unless the Merchant refuses to work with us, which at that point we will
go back and enforce the claw back policy.

The commissions get clawed back by request; we will request the ISO to send us back the money. If the
ISO does not send back the money within 2 days, we will debit the ISOs account for the amount paid.

CLAWBACK POLICY:

If the Merchant blocks payments before BFC Receives 20 cleared payments, the deal is considered a complete default and the commission will be returned, underlined even if the Merchant unblocks payments. (Unless there was a reasonable story and the deal immediately continues to be in good standing).

If the Merchant bounces more than 4 payments within the first 30 days, or more than 2 payments in a row, the deal will be considered a Default, unless the Merchant agrees to "catch up" with the payments and the deal continues to be in good standing.

If the Merchant lowers payments within the first 30 days, the deal is considered a default, unless the Merchant agrees to go up again after 1 or 2 weeks (and continues so for at least 2 weeks).

In general; if we claw back commissions when a deal goes bad, and we end up collecting more than the funded amount, we will consider giving back the commissions, despite the default status, especially if the ISO helps with the collection efforts. This is done on a deal by deal basis, depending on the circumstances.

If we don't claw back commissions immediately after 30 days, it does not mean that the commissions will not be charged back, if the deal actually went bad within 30 days – sometimes we will try to work with the Merchant to resolve the problem and if the Merchant works with us we will hold off from clawing back the commissions, unless the Merchant refuses to work with us, which at that point we will go back and enforce the claw back policy.

The commissions get clawed back by request; we will request the ISO to send us back the money. If the ISO does not send back the money within 2 days, we will debit the ISOs account for the amount paid.

See Exhibit 19 at GOFUND_000057033 and GOFUND_000056989

45.     Attached hereto as **Exhibit 20** is a true and correct copy of the deposition transcript of Sarah Beityakov, taken on September 20, 2022.

46.     Attached hereto as **Exhibit 21** are true and correct copies of forged Notices of *Ex Parte* Pre-Judgment Remedy that were submitted by Defendants to State Courts.

47.     Examples of MCA Agreements with early repayment discounts are collectively attached hereto as **Group Exhibit 22** and include: (i) a January 25, 2022 GoFund Advance MCA Agreement, produced by Defendants at GOFUND_000005244-255; (ii) a July 5, 2022 GoFund Advance MCA Agreement, produced by Defendants at GOFUND_000005832-844; (iii) a December 1, 2021 GoFund Advance MCA Agreement, produced by Defendants at GOFUND_000006862-873; (iv) a March 4, 2022 GoFund Advance MCA Agreement, produced by Defendants at GOFUND_000006929-941; (v) a February 15, 2022 GoFund Advance MCA

Agreement, produced by Defendants at GOFUND_000008188-199; (vi) a November 11, 2021 GoFund Advance MCA Agreement, produced by Defendants at GOFUND_000008677-8689; (vii) a June 4, 2021 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000013984-14000; (viii) an October 18, 2021 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000014393-403; (ix) a November 3, 2021 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000014485-495; (x) a January 24, 2022 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000015141-151; (xi) a January 24, 2022 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000016512-522; (xii) an August 11, 2021 Merchant Capital MCA Agreement, produced by Defendants at GOFUND_000017257-267; (xiii) an August 1, 2019 Business Funding Source MCA Agreement, produced by Defendants at GOFUND_000023600-610; (xiv) January 29, 2019 email chain between Brezel and Enterprise members directing adding an early payoff provision to an MCA Agreement, produced by Defendants at GOFUND_000024015; (xv) May 19, 2021 email from merchant to Kroen angry about Defendants' over debiting the designated account and noting Kroen "agreed to an early payoff of $20,000," produced by Defendants at GOFUND_000026326; (xvi) an MCA Agreement addendum providing for a "15% discount . . . to the payoff if paid within 3 weeks of funding," produced by Defendants at GOFUND_000034996; (xvii) an August 17, 2021 email between Enterprise members writing "Merchant had problems with Kash Kapital due to them debiting more than the agreed purchased amount in the past and then not honor Early Payoff discount," produced by Defendants at GOFUND_000046359; (xviii) a November 1, 2021 payoff letter to merchant from "Bitty Advance" notifying merchant of an early pay discount, produced by Defendants at GOFUND_000047526; (xix) a December 22, 2020 MCA Agreement addendum providing for a

10% discount if paid off by December 22, 2022, produced by Defendants at GOFUND_000050782; (xx) a November 5-6, 2020 email chain indicating a merchant was given an early payoff discount, produced by Defendants at GOFUND_000052456-57; (xxi) and text messages between Enterprise and ISO partner indicating that the Enterprise offers "early payment discount," produced by Defendants at 000057803.

48.     Attached hereto as **<u>Exhibit 23</u>** is a true and correct copy of February 7, 2022 text messages exchanged between Dr. Clinton and the Enterprise, produced by Plaintiffs as HAY-0011941-942.

49.     Attached hereto as **<u>Exhibit 24</u>** is a true and correct copy of a December 28, 2021 email from Defendant Isaac Wolf, produced by Defendants at GOFUND_000010553-54.

50.     Attached hereto as **<u>Exhibit 25</u>** is a true and correct copy of an accounting spreadsheet for the Haymount deals produced by Defendants at GOFUND_000065964.

51.     Attached hereto as **<u>Exhibit 26</u>** is a true and correct copy of the deposition transcript of former Plaintiff Indigo Installations, taken on September 15, 2022.

52.     Attached hereto as **<u>Exhibit 27</u>** are true and correct copies of pleadings filed by Defendants indicating their residence in New York, which includes: (i) Verified Complaint in *GoFund Advance v. Clemmers Landscape, Inc. et al.*, Index No. 505723/2022 (Sup. Ct. Kings. Cnty), at ¶ 1 ("At all relevant times, Plaintiff was and is a Limited Liability Company organized and existing under the laws of the State of New York"); and (ii) Petition in *Bridge Funding Cap LLC DBA Merchant Capital v. Scripts Wholesale Inc. et al.*, Index No. 532902/2021 (Sup. Ct. Kings. Cnty) at ¶ 3 ("Plaintiff is a Company organized under the laws of the United States of America with its principal office at 5308 13th Ave., Brooklyn New York 11219").

53.     Attached hereto as **Exhibit 28** are copies of Defendants' banking records indicating they use banks in New York for business.

54.     Attached hereto as **Exhibit 29** are business registrant reports from the Connecticut Secretary of State for Defendants GoFund Advance, Merchant Capital, and Funding 123.

55.     Attached hereto as **Exhibit 30** is a true and correct copy of the deposition transcript of Plaintiffs' expert Charles C. Lunden, taken on September 22, 2022.

56.     Attached hereto as **Exhibit 31** is a true and correct copy of the Criminal Information, dated August 26, 2022, filed by the United States Attorney for the Eastern District of Pennsylvania against Gino Gioe, an associate of Defendants.

57.     Attached hereto as **Exhibit 32** is a true and correct copy of the article: Tatiana Walk-Morris, *Amazon launches cash advance program for merchants*, RETAIL DIVE (Nov. 2, 2022).

58.     Finally, I am not aware of any other active class cases on the same issues here, let alone any that have progressed through discovery.

Dated: November 7, 2022

WHITE AND WILLIAMS LLP

By: _____
Shane R. Heskin
7 Times Square, STE 29
New York, NY 10036
(215) 864-6329
heskins@whiteandwilliams.com

-12-

29877347v.1