# EXHIBIT 21
# (Part 3 of 3)

## APPENDIX A - THE FEE STRUCTURE:

A.   **Underwriting Fee** Minimum of $1,000.00 or up to 15% of the purchase price for underwriting fees, broker fees and related expenses. These upfront fees shall be deducted from the Purchase Price stated above with the remaining net being disbursed to Merchant.

B.   **Origination Fee** Minimum of $1,000.00 or up to 17% of the purchase price to cover cost of Origination and ACH setup. These upfront fees shall be deducted from the Purchase Price stated above, with the remaining net being disbursed to Merchant.

C.   **NSF Fee (Standard)** $35.00 (each). Each returned payment without notice is a default.

D.   **Rejected ACH / Blocked ACH / Default Fee** $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E.   **Bank Change Fee** $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F.   **Inaccessible Login Fee: $50.00** per day – When Merchant changes bank account login during duration of the Merchant Agreement. If login will not be provided it will be considered a default.

G.   **Wire Fee** - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

H.   **Attorney's Fee:** MC shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal. MC shall also be permitted to collect its reasonably attorney's fees if MC refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor.

I.   **Unauthorized Account Fee:** $5,000.00 (if a merchant blocks MC'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit-card processors to process its receipts).

J.   **Default Fee:** $5,000.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another credit card processor without MC' consent, or commits another default pursuant to the Agreement) or bounces a debit without notification.

K.   **Stacking Fee: If the** Merchant takes any further financing from any other finance / factoring company a minimum fee of $10,000.00 or 10% of the purchased amount will be added to the Merchants current balance.

L.   **Risk Assessment Fee:** $249.00

M.   **UCC Fee:** $195.00

N.   **Management Fee:** Commencing at date funded (the "Start Date"), merchant shall pay a fee of $499.00 per month (the "Monthly Fee"), at a minimum of three months.

Net Funding Amount: $_____

FOR THE MERCHANT (#1) By: REDACTED_____          REDACTED

                              (Print Name and Title)                    (Signature)

FOR THE MERCHANT (#2) By: _____          _____

                              (Print Name and Title)                    (Signature)

Initials REDACTED

Doc ID: 9a9705c8cb66c88b8af07dfa8fb5e6b79a7b723d

HASSETT_003380

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS**

Merchant: **REDACTED**                                                Tax ID: ██████████
(Merchant's Legal Name)

Merchant Agreement: Merchant Agreement between MC, and Merchant, dated as of: 04/07/2022

Designated Checking Account:

| Bank Name: **REDACTED** | Routing: ██████████ | Account: ██████████ |
|---|---|---|
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), and Check Debit is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes MC, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes MC to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**
to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes Merchant Capital to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $ 385.00                  (Or) Percentage of each Banking Deposit: 45         %

On the Following Days: MONDAY - FRIDAY

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that MC may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes MC to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** MC is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until MC has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford MC a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **REDACTED**                                      Date: 04 / 26 / 2022
(Merchant's Legal Name)                                            (Month) (Day) (Year)

Title: **REDACTED**

X **REDACTED**
(Signature)

Print Name: **REDACTED**

Initial **REDACTED**

**Bank Login Information**

Dear Merchant,

Thank you for accepting this offer from Merchant Capital. We look forward to being your funding partner for as long as you need.

**Daily ACH Program:**

MC, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

MC will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank:      REDACTED

Bank portal websi      REDACTED

Username: Password:

Security Question / Answer 1:      REDACTED

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:      REDACTED

REDACTED

Merchant / Owner Signature                                      Dated      04 / 26 / 2022

Initial      REDACTED

Doc ID: 9a9705c8cb66c88b8af07dfa8fb5e6b79a7b723d

HASSETT_003382

**Emergency Contacts**

Four valid emergency contacts are required to receive funding. Contacts will be verified.

Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____

Initials: _____

Doc ID: 9a9705c8cb66c88b8af07dfa8fb5e6b79a7b723d

HASSETT_003383

## BALANCE TRANSFER FORM

**Merchant Owner Legal Name ("Merchant"):** REDACTED
**Business Legal Name('Business"):** REDACTED
**DBA:** REDACTED
**Physical Address:** REDACTED

Merchant Capital
5308 13th Avenue, Suite #324,
Brooklyn, NY 11219

**Date of new secured agreement:** 04/26/2022

**Date of previous secured agreement:**

**Remaining RTR balance:** $3,645.00

To whom it may concern:

I, merchant, on behalf of business, hereby authorize Merchant Capital to debit the remaining RTR balance which is currently due and owing to Merchant Capital pursuant to the previous secured merchant agreement, entered into by and between Merchant Capital and business.

I acknowledge that as a result of the above-referenced debit, the amount paid to business by Merchant Capital pursuant to the new agreement will be reduced by the amount of the remaining RTR.

By: _____   REDACTED

Merchants Legal Name: _____

HASSETT_003384

# ▼ HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | REDACTED |
| **FILE NAME** | REDACTED .pdf and 1 other |
| **DOCUMENT ID** | 9a9705c8cb66c88b8af07dfa8fb5e6b79a7b723d |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

## Document History

| | | |
|---|---|---|
| ◯ SENT | **04 / 26 / 2022** 18:51:34 UTC | Sent for signature to REDACTED from admin@merchantcapitalpro.com IP: |
| ◉ VIEWED | **04 / 26 / 2022** 18:52:52 UTC | Viewed by REDACTED IP: |
| ⦤ SIGNED | **04 / 26 / 2022** 19:40:41 UTC | Signed by REDACTED IP: |
| ◯ COMPLETED | **04 / 26 / 2022** 19:40:41 UTC | The document has been completed. |

Powered by ▼ HELLOSIGN

HASSETT_003385

**NOTICE OF EX PARTE PRE-
JUDGMENT REMEDY/CLAIM FOR
HEARING TO DISSOLVE OR MODIFY**

JD-CV-55 Rev. 3-03
C.G.S. §§ 52-278e, 52-278f

**STATE OF CONNECTICUT
SUPERIOR COURT**

| COURT USE ONLY |
| --- |
| CLPJRX
Ex Parte Application |
| CLPJRXP
Contest Ex Parte
PJR Application |

**INSTRUCTIONS TO PLAINTIFF/APPLICANT**

*1. This form MUST be used in connection with ex parte prejudgment remedies issued
pursuant to Gen. Stat. § 52-278e, and MAY be used in connection with prejudgment
remedies issued in an action upon a commercial transaction pursuant to Gen. Stat. § 52-278f.*
*2. Complete Section I below and submit to the Clerk along with, and immediately followed by your
application and the other required documents for ex parte prejudgment remedy.*
*3. If prejudgment remedy issued, include this form in the process served on the defendant.*

## SECTION I - CASE INFORMATION *(To be completed by Plaintiff/Applicant)*

| ☒ Judicial District | ☐ Housing Session | ☐ G.A. No. | COURT ADDRESS
**95 Washington Street, Hartford, CT 06106** |
| --- | --- | --- | --- |

Has a temporary restraining order been requested?   ☐ YES   ☒ NO

NAME OF CASE *(First-named plaintiff vs. First-named defendant)*
**GoFund Advance, LLC v. REDACTED**
**REDACTED**

AMOUNT, LEGAL INTEREST, OR PROPERTY IN DEMAND, EXCLUSIVE
OF INTEREST AND COSTS IS ("X" one of the following)
☐ LESS THAN $2500
☐ $2500 THROUGH $14,999.99
☒ $15,000 OR MORE

C L P J R X

| ☒ SEE ATTACHED FORM JD-CV-67 FOR CONTINUATION PARTIES | CASE TYPE *(From Judicial Branch code list)*
MAJOR: **C**   MINOR: **40** | NO. COUNTS
**2** |
| --- | --- | --- |

("X" if applicable)
☐ CLAIMING OTHER RELIEF IN ADDITION TO
OR IN LIEU OF MONEY DAMAGES

NAME AND ADDRESS OF PLAINTIFF/APPLICANT (Person making application for Prejudgment Remedy) (No., street, town and zip code)
**GoFund Advance, LLC - 304 West Main Street, Suite 2, Avon, CT 06001**

NAME AND ADDRESS OF DEFENDANT (Person against whom Prejudgment Remedy is sought) (No., street, town and zip code)
**REDACTED**

NAME AND ADDRESS OF ANY THIRD PERSON HOLDING PROPERTY OF DEFENDANT WHO IS SUBJECT TO GARNISHEE PROCESS PREVENTING DISSIPATION OF
SUCH PROPERTY   **Bank of America, N.A.**

| FOR THE PLAINTIFF(S) ENTER THE APPEARANCE OF: | NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code)
**Hassett & George, P.C. - 945 Hopmeadow Street, Simsbury, CT 06070** | | |
| --- | --- | --- | --- |
| | TELEPHONE NO.
**(860) 651-1333** | JURIS NO. (If atty. or law firm)
**407894** | SIGNED | DATE SIGNED
12/7/21 |

## SECTION II - NOTICE TO DEFENDANT

You have rights specified in the Connecticut General Statutes, including Chapter 903a, that you may wish to exercise concerning this
prejudgment remedy. These rights include the right to a hearing:
(1)  to object to the prejudgment remedy because you have a defense to or set-off against the action or a counterclaim against
the plaintiff or because the amount of the prejudgment remedy allowed by the court is unreasonably high or because payment of
any judgment that may be rendered against you is adequately secured by any insurance that you may have;
(2)  to request that the plaintiff post a bond in accordance with section 52-278d of the General Statutes to secure you against any
damages that may result from the prejudgment remedy;
(3)  to request that the prejudgment remedy be dissolved or modified or that you be allowed to substitute a bond for the prejudgment
remedy; and
(4)  to show that the property subject to the prejudgment remedy is exempt from such prejudgment remedy.

You may request a hearing to move to dissolve or modify the prejudgment remedy. **The hearing may be requested by any proper
motion or by completing section III below and returning this form to the superior court at the Court Address listed above.**

## SECTION III - DEFENDANT'S CLAIM AND REQUEST FOR HEARING *(To be completed by Defendant)*

I, the defendant, request a hearing to dissolve or modify the prejudgment remedy, and claim:

C L P J R X P

FOR COURT USE ONLY

☐  a defense, counterclaim, set-off, or exemption.
☐  that any judgment that may be rendered is adequately secured by insurance.
☐  that the amount of the prejudgment remedy is unreasonably high.
☐  that the plaintiff be required to post a bond to secure me against any damages
which may result from the prejudgment remedy.
☐  that I be allowed to substitute a bond for the prejudgment remedy.
I certify that a copy of the above claim was mailed/delivered to the Plaintiff or the
Plaintiff's attorney on the Date Mailed or Delivered shown below.

| DATE MAILED OR DELIVERED | SIGNED *(Defendant)* | DATE SIGNED |
| --- | --- | --- |

| TYPE OR PRINT NAME AND ADDRESS OF DEFENDANT | DOCKET NO.
**PJR CV** |
| --- | --- |

| NAME OF EACH PARTY SERVED* | ADDRESS AT WHICH SERVICE WAS MADE* |
| --- | --- |

| EXHIBIT
**16**
Getter 9/21/2022 M.B. |
| --- |

*If necessary, attach additional sheet with names of each party served and the address at which service was made.

**CONTINUATION OF PARTIES**
JD-CV-67  Rev. 5-21

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



First named plaintiff *(Last, first, middle initial)*
**GoFund Advance, LLC**

First named defendant *(Last, first, middle initial)*
REDACTED

## Additional Plaintiffs

| Name *(Last, first, middle initial, if individual)* | Address *(Number, street, town and zip code)* |
|---|---|
| | |

## Additional Defendants

| Name *(Last, first, middle initial, if individual)* | Address *(Number, street, town and zip code)* |
|---|---|
| REDACTED | |

| | **For Court Use Only** |
|---|---|
| | |
| | Docket number |

**CONTINUATION OF PARTIES**

HASSETT_001207

**RETURN DATE:  JANUARY 11, 2022**       :     **SUPERIOR COURT**

**GOFUND ADVANCE, LLC**             :     **J.D. OF HARTFORD**

**V.**                                  :     **AT HARTFORD**

# REDACTED
                                           :     **DECEMBER 7, 2021**

<u>**WRIT, SUMMONS AND DIRECTION FOR GARNISHMENT OR ATTACHMENT**</u>

**TO ANY PROPERY OFFICER:**

**BY AUTHORITY OF THE STATE OF CONNECTICUT,** you are hereby commanded to summon the Defendants, REDACTED REDACTED , having a place of business at REDACTED REDACTED and REDACTED , residing at REDACTED to appear before the Superior Court for the Judicial District of Hartford, 95 Washington Street, Hartford, Connecticut, on Januray 11, 2022, such appearance to be made by the Defendants' attorneys by filing a written statement of appearance with the clerk of the court on or before the second day following the return date, then and there to answer unto **GOFUND ADVANCE, LLC,** having a place of business in Avon, Connecticut, in a civil action wherein the Plaintiff complains and alleges as set forth in the accompanying complaint.

And you are hereby further commanded to serve a true and attested copy of this writ and of the accompanying Affidavit and Complaint on REDACTED as it is the agent, trustee and/or debtor of the Defendants and may be indebted to the said Defendants.

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070   1
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001208

And you are further commanded, in accordance with the accompanying Affidavit of Debt, to attach to the value of **$29,832.50** of the goods, accounts, property and estate of the defendants herein, anywhere located, including funds at REDACTED.

And you are further commanded to summon these garnishees that are currently holding funds of and/or indebted to the defendants to appear before the court at the time and place above mentioned, then and there to disclose on oath whether they have concealed in its hands the goods or estate of the said defendants, or are indebted to the defendants.

HASSETT_001209

**WHEREFORE**, the Plaintiff claims monetary damages in excess of $14,999, plus interest, attorneys' fees and any and all other relief, legal or equitable, that the Court deems just and proper.

Donna Pare of 945 Hopmeadow Street, Simsbury, Connecticut, is recognized in the sum of $250.00 to prosecute this action.

I hereby certify that I have personal knowledge of the financial responsibility of the Plaintiff and deem it sufficient to pay the costs of this action.

Hereof fail not, but due service and return make.

Dated at Simsbury, Connecticut this 7th day of December, 2021.

_____
Jared M. Alfin, Esq.
Commissioner of the Superior Court

Please enter the appearance of:
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333 x105
Facsimile No.: (860) 651-1888
Juris No.: 407894
Attorneys for Plaintiff

_____
Jared M. Alfin, Esq.
Commissioner of the Superior Court

HASSETT_001210

| | | |
|---|---|---|
| **RETURN DATE:  JANUARY 11, 2022** | : | **SUPERIOR COURT** |
| **GOFUND ADVANCE, LLC** | : | **J.D. OF HARTFORD** |
| V | : | **AT HARTFORD** |

**REDACTED**

:

: **DECEMBER 7, 2021**

<u>**AFFIDAVIT OF DEBT**</u>

| | | |
|---|---|---|
| STATE OF NEW YORK | : | |
| | : | ss. |
| COUNTY OF KINGS | : | |

I, _____Yisroel C. Getter_____, being duly sworn, hereby deposes and say:

1.  I am over the age of eighteen (18) years and understand and believe in the obligation of an oath.

2.  I am an account manager of GOFUND ADVANCE, LLC ("GFA" or the "Company") and have personal knowledge as to the debts owed from the defendants, ▮ REDACTED and REDACTED , to the Company.

3.  REDACTED owns and controls REDACTED

4.  On or about November 16, 2021, GFA, as buyer, and REDACTED as seller, executed an Agreement (the "Agreement"), whereby REDACTED promised to pay GFA the sum of $52,465.00 for future receivables, and other fees as more fully described therein.  A true and accurate copy of the Agreement is attached hereto as **Exhibit A.**  REDACTED executed the

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070     1
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001211

Agreement and a personal guaranty in connection with the Agreement (the "Guaranty").

     5.     GFA would not have entered into the Agreement, but for the personal Guaranty.

     6.     The Agreement is in default as a result of REDACTED failure to make timely payments and failure and/or refusal to reconcile the payment amount. REDACTED has failed to pay pursuant to the Guaranty and continues to operate the business.

     7.     The Agreement provides, among other things, that GFA is entitled to collect its attorney's fees and court costs to enforce the Agreement. REDACTED and REDACTED consented to jurisdiction in Connecticut under the Agreement.

     8.     Furthermore, Section 4.13 of the Agreement contains a Connecticut Commercial Waiver with regards to prejudgment remedies, which is incorporated by reference herein and provides as follows:

> **Prejudgment Remedy Waiver**. EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR

HASSETT_001212

PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

9.   GFA seeks a prejudgment remedy attachment as follows:

| | |
|---|---|
| Balance: | $19,832.50 |
| Anticipated legal fees/costs: | $10,000.00 |
| **Total:** | **$29,832.50** |

10.   GFA seeks an ex-parte prejudgment remedy attachment against REDACTED and REDACTED, jointly and severally, in the amount of **$29,832.50**.

11.   I am not aware of any valid defenses, off-sets or counterclaim to GFA'S claim for damages and that I believe that there is probable cause that a judgment will enter in favor of the Company.

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070   3
(860) 651-1333 Fax (860) 651-1888 Juris No. 407894

HASSETT_001213

AFFIANT,

_____
YISROEL C GETTER

Subscribed and sworn to before me this ___7th___ day of ___December___, 2021.

_____
Print Name:
Notary Public
My Commission Expires ___April   15, 2023___

BREINDY KRAUSZ
Notary Public, State of New York
No. 01KR6390280
Qualified in Kings County
Commission Expires April 15, 2023

HASSETT_001214

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

Exhibit "A"

# ≡ gofund ADVANCE

# CONGRATULATIONS!

You have been approved by Gofund Advance in the amount of: 35,000.00

## CONTRACT CHECKLIST:

To ensure a quick and smooth funding process, please review the important items in checklist

below:

1. Please verify that your name on the documents is the exact same spelling as your name on your driver's license.
2. Please verify that the legal name and address of your business is correct on the documents.
3. Please ensure that your signatures and initials are filled in on all pages of the documents.

HASSETT_001215

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

# ≡gofund ADVANCE

**PURCHASE AND SALE OF FUTURE RECEIVABLES**

Agreement Dated: _11/16/2021_ between GOFUND ADVANCE ("GFA") and the Merchant listed below ("MERCHANT")

## MERCHANT INFORMATION

Merchant's Legal Name: REDACTED

D/B/A: REDACTED          State of Incorporation / Organization: REDACTED

Type of Entity _____

Physical Address: REDACTED

City: REDACTED   State REDACTED   ...ness Phone: _____

Contact Name: REDACTED   Cellphone Number: _____   Email Address: _____

Mailing Address: REDACTED   City: _____   State: _____   Zip: _____

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to GFA (making GFA the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to GFA

Merchant is selling a portion of a future revenue stream to GFA at a discount, not borrowing money from GFA, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by GFA. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. GFA is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and GFA assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give GFA a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

GFA will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, GFA (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as GFA receives payment in full of the Purchased Amount. Merchant hereby authorizes GFA to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. GFA's payment of the Purchase Price shall be deemed the acceptance and performance by GFA of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by GFA remains in the Account and will be held responsible for any fees incurred by GFA resulting from a rejected ACH attempt or an Event of Default. GFA is not responsible for any overdrafts or rejected transactions that may result from GFA's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between GFA and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

Purchase Price: $ _35,000.00_     Purchased Percent: _45_ %     Purchased Amount: $ _52,465.00_

Payment Frequency: DAILY     Remittance: $ _1,600.00_

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM"** ...HEREOF ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERC...

FOR THE MERCHANT (#1) By: REDACTED          REDACTED

FOR THE MERCHANT (#2) By: _____
                          (Print Name and Title)          (Signature)

BY OWNER (#1) By: REDACTED          REDACTED
                  ...t Name and Title)          (Signature)

BY OWNER (#2) By: _____
                  (Print Name and Title)          (Signature)

1 ≡                                              Initial: REDACTED

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### 1 TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to GFA with a Bank acceptable to GFA to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to GFA with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide GFA and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes GFA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to GFA for the receipts as specified herein and to pay such amounts to GFA. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by GFA or not. This additional authorization is not a waiver of GFA's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which GFA did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of GFA.

**1.2 Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by GFA as per the terms of this Agreement.

**1.3 Future Purchase of Increments.** Subject to the terms of this Agreement, GFA offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. GFA reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4 Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to GFA after GFA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to eric@gofundadvance.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by GFA within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by GFA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with GFA's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

**1.5 Adjustments to the Remittance.** As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to GFA to request a decrease in the Remittance. All requests hereunder must be in writing to eric@gofundadvance.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide GFA with viewing access to their bank account as well as all information reasonably requested by GFA to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as

agreed upon on Page 1 of this Agreement.

**1.6 Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize GFA and its agents to investigate their financial responsibility and history, and will provide to GFA any authorizations, bank or financial statements, tax returns, etc., as GFA deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. GFA is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.7 Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide GFA with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide GFA with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from GFA.

**1.8 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by GFA for monies owed to GFA from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by GFA.

**1.9 No Liability.** In no event will GFA be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of GFA's attorney's fees and expenses resulting therefrom.

**1.10 Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, GFA, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.11 Sale of Receipts.** Merchant and GFA agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from GFA to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. GFA has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to GFA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that GFA has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and GFA shall promptly refund to Merchant any interest received by GFA in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that GFA not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.12 Power of Attorney.** Merchant irrevocably appoints GFA as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to GFA from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to GFA; and (v) to contact Merchant's banks and financial institutions using M██REDACTED██

2

Initials: ██████

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which GFA may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

**1.13      Protections Against Default.** The following Protections 1 through 8 may be invoked by GFA immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the GFA electronic check processor;  (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to GFA; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of GFA, and (ii) the written agreement of any GFA or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GFA; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide GFA with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from GFA, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to GFA at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.
**Protection 2.** GFA may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).
**Protection 3.** Merchant hereby authorizes GFA to execute in the name of the Merchant a Confession of Judgment in favor of GFA in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, GFA may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.
**Protection 4.** GFA may enforce its security interest in the Collateral.
**Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to GFA from Merchant.
**Protection 6.** GFA may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if GFA recovers a Judgment against Merchant, Merchant shall be liable for all of GFA's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.  **Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to GFA. Upon breach of any provision in this Agreement, GFA may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. GFA may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to GFA.
**1.14      Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes GFA to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that GFA obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against GFA or any of its affiliates relating to any

(i)investigation undertaken by or on behalf of GFA as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.
**1.15      Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by GFA, including this Agreement and any other GFA documents (collectively, "Confidential Information") are proprietary and confidential information of GFA. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of GFA to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles GFA to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.
**1.16      Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes GFA to use its, his or her name in listings of clients and in advertising and marketing materials.
**1.17      D/B/A's.** Merchant hereby acknowledges and agrees that GFA may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between GFA and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2      REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:
**2.1      Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to GFA, and future statements which will be furnished hereafter at the discretion of GFA, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise GFA of any material adverse change in their financial condition, operation or ownership. GFA may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to GFA within five business days after request from GFA. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.
**2.2      Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.
**2.3      Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.
**2.4      Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.
**2.5      Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without GFA's prior written consent. Any such changes shall be a material breach of this Agreement.
**2.6      Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and GFA, nor shall Merchant change any of its places of business without prior written consent by GFA.
**2.7      Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.
**2.8      Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from GFA to Merchant, execute, acknowledge and deliver to GFA and/or to any other person, firm or corporation specified by GFA, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.
**2.9      No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code

3 REDACTED

Initial:

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10    Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of GFA.

**2.11    Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12    Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13    Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling GFA the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

## 3    EVENTS OF DEFAULT AND REMEDIES

**3.1    Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying GFA of its intent to breach this Agreement;

(d)    the Merchant fails to give GFA 24 hours advance notice that there will be insufficient funds in the account such that the ACH or the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(f)    Merchant shall transfer or sell all or substantially all of its assets;

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)    Merchant shall use multiple depository accounts without the prior written consent of GFA

(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)    Merchant shall change its depositing account without the prior written consent of GFA; or

(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of GFA

(l)    Merchant's bank returns a code other than NSF cutting GFA from its collections

(m)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with GFA.

**3.2    Limited Personal Guaranty** In the Event of a Default, GFA will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to GFA for all of GFA's losses and damages, in addition to all costs and expenses and legal fees associated with such enforcement.

**3.3    Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, GFA may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of GFA in connection with this Agreement may be exercised at any time by GFA after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4    Costs.** Merchant shall pay to GFA all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of GFA's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5    Required Notifications.** Merchant is required to give GFA written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give GFA seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4    MISCELLANEOUS

**4.1    Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by GFA.

**4.2    Assignment.** GFA may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3    Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to GFA shall become effective only upon receipt by GFA. Notices to Merchant shall become effective three days after mailing.

**4.4    Waiver Remedies.** No failure on the part of GFA to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5    Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by GFA by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

**4.6    Survival of Representation,** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7    Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8    Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9    Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and GFA and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10    JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY

4

Initial: █████ REDACTED

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12 **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13 **Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

5

Initial: REDACTED

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: REDACTED

D/B/A: REDACTED

Federal ID#: [REDACTED]

Physical Address: REDACTED

Additional Guarantor(s).

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to GFA a security interest and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to GFA under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to GFA upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover GFA's entitlements under this Agreement, GFA is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of GFA's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, GFA or an affiliate of GFA. GFA is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by GFA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. GFA shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, GFA has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, GFA will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from GFA written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and GFA is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by GFA. Merchant and Guarantor(s) agree(s) to execute and deliver to GFA such instruments and documents GFA may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. GFA is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name. Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to GFA under any other agreement between Merchant or Guarantor(s) and GFA (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as GFA deems necessary to perfect or maintain GFA's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each

hereby authorizes GFA to file any financing statements deemed necessary to perfect or maintain GFA's security interest. Merchant and Guarantor(s) shall be liable for, and GFA may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by GFA in protecting, preserving and enforcing GFA's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** GFA shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, GFA may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that GFA may enter into an agreement with Merchant's landlord giving GFA the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, GFA may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to GFA, whether by acceleration or otherwise.

### GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS. GFA As an additional inducement for GFA to enter into this Agreement, the undersigned Guarantor(s) hereby provides GFA with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to GFA in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, GFA may seek recovery from Guarantors for all of GFA's losses and damages by enforcement of GFA's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral GFA may hold pursuant to this Agreement or any other guaranty.

GFA does not have to notify Guarantor of any of the following events and

6

Initial [REDACTED]

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)       Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) GFA's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to GFA. In addition, GFA may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to GFA; (ii) release Merchant from its obligations to GFA; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's

other obligations to GFA under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that GFA must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1)** By: _____REDACTED_____        _____REDACTED_____
                                (Print Name and Title)                              (Signature)

SSN# ██████████                         **Driver's License Number** _____

**FOR THE MERCHANT (#2)** By: _____        _____
                                (Print Name and Title)                              (Signature)

SSN# _____         **Driver's License Number** _____

**BY OWNER (#1)** By: _____REDACTED_____        _____REDACTED_____
                                (Print Name and Title)                              (Signature)

SSN# ██████████                         **Driver's License Number** _____

**BY OWNER (#2)** By: _____        _____
                                (Print Name and Title)                              (Signature)

SSN# _____         **Driver's License Number** _____

**FOR THE GUARANTOR(S)** By: _____REDACTED_____        _____REDACTED_____
                                (Print Name and Title)                              (Signature)

SSN# ██████████                         **Driver's License Number** _____

**FOR THE GUARANTOR(S)** By: _____        _____
                                (Print Name and Title)                              (Signature)

SSN# _____         **Driver's License Number** _____

7

Initial: ██REDACTED██

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## APPENDIX A - THE FEE STRUCTURE:

A.  **Underwriting Fee**: Minimum of $500.00 or up to 12% of the purchase price for underwriting and related expenses.

B.  **ACH Origination Fee**: Minimum of $500.00 or up to 10% of the purchase price to cover cost of Origination and ACH Setup

C.  **NSF Fee (Standard)**: $50.00 each

D.  **Rejected ACH/Blocked ACH/Default Fee**: $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E.  **Bank Charge Fee**: $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F.  **Wire Fee**: - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

G.  **Attorney's Fee**: $10,000. When merchant breaches any term of this Agreement and GFA is required to retain counsel to enforce, defend or collect any term of this Agreement.

H.  **Unauthorized Account Fee**: $5,000.00 (if a merchant blocks GFA'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

I.  **Default Fee**: $5,000.00 or up to 20% of the funded amount (if a merchant changes bank accounts or switches to another credit card processor without GFA' s consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

J.  **Stacking Fee**: If the Merchant takes any further financing from any other finance /factoring company a fee of 20% of the purchased amount will be added to the Merchants current balance.

K.  **Risk Assessment Fee**: $249.00

L.  **UCC Fee**: $195.00

M.  **Management Fee**: $249.00 monthly funding fee for duration of agreement terms or until balance paid.

FOR THE MERCHANT (#1) B̲y̲ **REDACTED** _____        **REDACTED** _____

                                    (Print Name and Title)        (Signature)

FOR THE MERCHANT (#2) By: _____        _____

                                    (Print Name and Title)        (Signature)

8

Initial: 

HASSETT_001223

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)——**

Merchant: **REDACTED**                    Tax ID: ▇▇▇▇▇▇▇
        (Merchant's Legal Name)

**Merchant Agreement:** Merchant Agreement between GoFund Advance LLC, and Merchant, dated as of: 11/16/2021

Designated Checking Account:

Bank Name: **REDACTED**          Routing: ▇▇▇▇▇▇▇          Account: ▇▇▇▇▇▇▇

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Bank Name:_____          Routing:_____          Account:_____

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes GoFund Advance LLC, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes GoFund Advance LLC to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $ 1,600.00 _____ (Or) Percentage of each Banking Deposit: 45 _____%

On the Following Days: MONDAY - FRIDAY _____.

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that GoFund Advance LLC, may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes GoFund Advance LLC, to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** GoFund Advance LLC, is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until GoFund Advance LLC, has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford GoFund Advance LLC, a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **REDACTED**                    Date: 11/16/2021
(Merchant's Legal Name)                    (Month) (Day) (Year)

Title: **REDACTED**

X **REDACTED**
  (Signature)

Print Name: **REDACTED**

9                                        Initial: **REDACTED**

HASSETT_001224

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from GoFund Advance LLC. We look   forward to being your funding partner for as long as you need.

**Daily ACH Program:**

GoFund Advance LLC, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment.
Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

GoFund Advance LLC, will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank:  REDACTED

Bank portal website: Username:  REDACTED

Password:

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:  NA

Merchant / Owner Signature  REDACTED

Dated  11/16/2021

Initial:  REDACTED

| | | |
|---|---|---|
| **RETURN DATE: JANUARY 11, 2022** | : | **SUPERIOR COURT** |
| **GOFUND ADVANCE, LLC** | : | **J.D. OF HARTFORD** |
| **V.** | : | **AT HARTFORD** |
| **REDACTED** | : | |
| | : | **DECEMBER 7, 2021** |

<u>**APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY**</u>

**TO THE SUPERIOR COURT FOR THE JUDICIAL DISTRICT OF HARTFORD
AT HARTFORD:**

The undersigned represents as follows:

1.       Pursuant to the attached signed Writ, Summons, Complaint, and Affidavit, the Plaintiff, **GOFUND ADVANCE, LLC**, having a place of business in Avon, Connecticut and registered in Connecticut, is about to commence an action against Defendants REDACTED REDACTED having a place of business at REDACTED and REDACTED residing at REDACTED REDACTED, and;

2.       That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and to secure such judgment the applicant seeks an ex-parte prejudgment remedy in the sum of **$29,832.50.**

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070      1
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001226

3.      Section 4.13 of the Agreement that is the subject of this Application provides that the Defendants, waives any right to a notice and hearing under chapter 903a of the Connecticut General Statutes or other statutes or statutes affecting prejudgment remedies and authorizes Plaintiff's attorney to issue a writ for a prejudgment remedy without court order and without the necessity of posting a bond or other security, provided the complaint shall set forth a copy of this waiver.  Therefore, this application is requested ex-parte pursuant to C.G.S. §52-278e(a) and C.G.S. §52-278f and upon Plaintiff's Affidavit in Support of an Ex-Parte Prejudgment Remedy.

**THE PLAINTIFF,**
**GOFUND ADVANCE, LLC**

By:      _____
Jared M. Alfin, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

**Hassett & George, P.C.**    945 Hopmeadow Street, Simsbury, CT  06070    2
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001227

**RETURN DATE:  JANUARY 11, 2022**          :          **SUPERIOR COURT**

**GOFUND ADVANCE, LLC**                          :          **J.D. OF HARTFORD**

**V.**                                                              :          **AT HARTFORD**

REDACTED                                        :

                                                             :          **DECEMBER 7, 2021**

COMPLAINT

<u>**COUNT ONE:**</u>          **Breach of Contract (As against** REDACTED **.** REDACTED

    1.          Plaintiff, **GOFUND ADVANCE, LLC ("GFA")** has a place of business at 304

West Main Street, Suite 2, Avon, Connecticut 06001.

    2.          Defendant, REDACTED

REDACTED                                 **),** has a place of business at REDACTED

REDACTED **.**

    3.          Defendant, REDACTED

REDACTED **.**

    4.          REDACTED owns and controls REDACTED

    5.          On or about November 16, 2021, GFA, as buyer, and REDACTED as seller,

executed an Agreement (the "Agreement"), whereby REDACTED promised to pay GFA the sum

of $52,465.00 for future receivables, plus other fees as more fully described therein.  A true and

accurate copy of the Agreement is attached hereto as **Exhibit A.** REDACTED executed the

Agreement and a personal guaranty in connection with the Agreement (the "Guaranty").

HASSETT_001228

6.      GFA would not have entered into the Agreement, but for the personal Guaranty.

7.      The Agreement is in default as a result of REDACTED failure to make timely payments and failure and/or refusal to reconcile the payment amount. REDACTED has failed to pay pursuant to the Guaranty and continues to operate the business.

8.      The Agreement provides, among other things, that GFA is entitled to collect attorney's fees and court costs to enforce the Agreement.

9.      REDACTED and REDACTED consented to jurisdiction in Connecticut under the Agreement.

10.     Furthermore, Section 4.13 of the Agreement contains a Connecticut Commercial Waiver with regards to prejudgment remedies, which is incorporated by reference herein and provides as follows:

> **Prejudgment Remedy Waiver**. EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070      4
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001229

PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

11.   REDACTED has failed, neglected and/or refused to pay as required under the Agreement.

12.   As a direct result of the breach, GFA has suffered damages.

**COUNT TWO:**       **Breach of Contract (As against** REDACTED **)**

1-12.   GFA incorporates and re-alleges paragraphs 1-12 of Count One as Paragraphs 1-12 of Count Two.

13.   REDACTED has failed, neglected and/or refused to fully pay GFA under the Guaranty of the Agreement.

14.   REDACTED failure to pay GFA constitutes a breach of contract.

15.   As a direct result of the breach, GFA has suffered damages.

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070    5
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001230

**WHEREFORE**, the plaintiff claims the following relief:

1.     Monetary damages;

2.     Interest;

3.     Attorney's fees pursuant to the Agreement/Guaranty; and

4.     Any and all other relief, legal or equitable, that the court deems just and proper.


                              **THE PLAINTIFF,**
                              **GOFUND ADVANCE, LLC**

            By:     _____
                    Jared M. Alfin, Esq.
                    Hassett & George, P.C.
                    945 Hopmeadow Street
                    Simsbury, CT 06070
                    Telephone No.: (860) 651-1333
                    Facsimile No.: (860) 651-1888
                    Juris No. 407894

HASSETT_001231

**RETURN DATE:  JANUARY 11, 2022**     :     **SUPERIOR COURT**

**GOFUND ADVANCE, LLC**     :     **J.D. OF HARTFORD**

**V.**     :     **AT HARTFORD**

**REDACTED**     :

     :     **DECEMBER 7, 2021**

### STATEMENT OF AMOUNT IN DEMAND

The amount in demand in the above captioned action is greater than $15,000.00,

exclusive of attorney's fees.

**THE PLAINTIFF,**
**GOFUND ADVANCE, LLC**

By:     _____

Jared M. Alfin, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070     7
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

HASSETT_001232

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-82FCC59719A5

Exhibit "A"

# ≡ᵢgofund ADVANCE

# CONGRATULATIONS!

You have been approved by Gofund Advance in the amount of: 35,000.00

## CONTRACT CHECKLIST:

To ensure a quick and smooth funding process, please review the important items in checklist

below:

1. Please verify that your name on the documents is the exact same spelling as your name on your driver's license.
2. Please verify that the legal name and address of your business is correct on the documents.
3. Please ensure that your signatures and initials are filled in on all pages of the documents.

HASSETT_001233

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

# ≡gofund ADVANCE |

**PURCHASE AND SALE OF FUTURE RECEIVABLES**
Agreement Dated: __11/16/2021__ between GOFUND ADVANCE ("GFA") and the Merchant listed below ("MERCHANT")

## MERCHANT INFORMATION

Merchant's Legal Name: **REDACTED**

D/B/A: **REDACTED**                    State of Incorporation / Organization: REDACTED

Type of Entity: _____

Physical Address: REDACTED

City: REDACTED                    State: REDACTED                    ____ess Phone: _____

Contact Name: REDACTED    Cellphone Number: _____    Email Address: _____

Mailing Address: REDACTED    City: _____    State: _____    Zip: _____

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to GFA (making GFA the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to GFA

Merchant is selling a portion of a future revenue stream to GFA at a discount, not borrowing money from GFA, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by GFA. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. GFA is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and GFA assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give GFA a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

GFA will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, GFA (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as GFA receives payment in full of the Purchased Amount. Merchant hereby authorizes GFA to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. GFA's payment of the Purchase Price shall be deemed the acceptance and performance by GFA of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by GFA remains in the Account and will be held responsible for any fees incurred by GFA resulting from a rejected ACH attempt or an Event of Default. GFA is not responsible for any overdrafts or rejected transactions that may result from GFA's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between GFA and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

| Purchase Price: $ 35,000.00 | Purchased Percent: 45 % | Purchased Amount: $ 52,465.00 |
|---|---|---|
| Payment Frequency: DAILY | Remittance: $ 1,600.00 | |

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT (#1) By: REDACTED    REDACTED
(Print Name and Title)

FOR THE MERCHANT (#2) By: _____
(Print Name and Title)

BY OWNER (#1) By: REDACTED    REDACTED
(Print Name and Title)    (Signature)

BY OWNER (#2) By: _____
(Print Name and Title)    (Signature)    REDACTED

1 ≡    Initial:

HASSETT_001234

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### 1    TERMS OF ENROLLMENT IN PROGRAM

**1.1    Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to GFA with a Bank acceptable to GFA to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to GFA with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide GFA and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes GFA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to GFA for the receipts as specified herein and to pay such amounts to GFA. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by GFA or not. This additional authorization is not a waiver of GFA's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which GFA did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of GFA.

**1.2    Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by GFA as per the terms of this Agreement.

**1.3    Future Purchase of Increments.** Subject to the terms of this Agreement, GFA offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. GFA reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4    Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to GFA after GFA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to eric@gofundadvance.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by GFA within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by GFA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with GFA's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

**1.5    Adjustments to the Remittance.** As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to GFA to request a decrease in the Remittance. All requests hereunder must be in writing to eric@gofundadvance.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. GFA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and GFA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide GFA with viewing access to their bank account as well as all information reasonably requested by GFA to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as

2

agreed upon on Page 1 of this Agreement.

**1.6    Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize GFA and its agents to investigate their financial responsibility and history, and will provide to GFA any authorizations, bank or financial statements, tax returns, etc., as GFA deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. GFA is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.7    Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide GFA with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide GFA with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from GFA.

**1.8    Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by GFA for monies owed to GFA from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by GFA.

**1.9    No Liability.** In no event will GFA be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of GFA's attorney's fees and expenses resulting therefrom.

**1.10    Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, GFA, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.11    Sale of Receipts.** Merchant and GFA agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from GFA to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. GFA has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to GFA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that GFA has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and GFA shall promptly refund to Merchant any interest received by GFA in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that GFA not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.12    Power of Attorney.** Merchant irrevocably appoints GFA as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to GFA from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to GFA and (v) to contact Merchant's banks and financial institutions using M█████████

Initial:

Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which GFA may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

1.13   **Protections Against Default.** The following Protections 1 through 8 may be invoked by GFA immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the GFA electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to GFA; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of GFA, and (ii) the written agreement of any GFA or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to GFA; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide GFA with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from GFA, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to GFA at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** GFA may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s). **Protection 3.** Merchant hereby authorizes GFA to execute in the name of the Merchant a Confession of Judgment in favor of GFA in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, GFA may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon. **Protection 4.** GFA may enforce its security interest in the Collateral. **Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to GFA from Merchant. **Protection 6.** GFA may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if GFA recovers a Judgment against Merchant, Merchant shall be liable for all of GFA's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to GFA. Upon breach of any provision in this Agreement, GFA may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. GFA may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to GFA.

1.14   **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes GFA to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that GFA obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against GFA or any of its affiliates relating to any

(i)investigation undertaken by or on behalf of GFA as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement. 1.15   **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by GFA, including this Agreement and any other GFA documents (collectively, "Confidential Information") are proprietary and confidential information of GFA. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of GFA to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles GFA to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security. 1.16   **Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes GFA to use its, his or her name in listings of clients and in advertising and marketing materials. 1.17   **D/B/A's.** Merchant hereby acknowledges and agrees that GFA may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between GFA and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2      REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:
2.1      **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to GFA, and future statements which will be furnished hereafter at the discretion of GFA, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise GFA of any material adverse change in their financial condition, operation or ownership. GFA may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to GFA within five business days after request from GFA. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.
2.2      **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.
2.3      **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.
2.4      **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.
2.5      **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without GFA's prior written consent. Any such changes shall be a material breach of this Agreement.
2.6      **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and GFA, nor shall Merchant change any of its places of business without prior written consent by GFA.
2.7      **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.
2.8      **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from GFA to Merchant, execute, acknowledge and deliver to GFA and/or to any other person, firm or corporation specified by GFA, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.
2.9      **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code

3 ≡

Initial_____ [REDACTED]

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10     Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of GFA.

**2.11     Business Purpose**. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12     Defaults under Other Contracts**. Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13     Good Faith**. Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

## 3     EVENTS OF DEFAULT AND REMEDIES

**3.1     Events of Default**. The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)     Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)     Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)     the sending of notice of termination by Merchant or verbally notifying GFA of its intent to breach this Agreement;

(d)     the Merchant fails to give GFA 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(f)     Merchant shall transfer or sell all or substantially all of its assets;

(g)     Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)     Merchant shall use multiple depository accounts without the prior written consent of GFA

(i)     Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)     Merchant shall change its depositing account without the prior written consent of GFA; or

(k)     Merchant shall close its depositing account used for ACH debits without the prior written consent of GFA

(l)     Merchant's bank returns a code other than NSF cutting GFA from its collections

(m)     Merchant shall default under any of the terms, covenants and conditions of any other agreement with GFA.

**3.2     Limited Personal Guaranty** In the Event of a Default, GFA will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to GFA for all of GFA's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3     Remedies**. In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, GFA may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of GFA in connection with this Agreement may be exercised at any time by GFA after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4     Costs**. Merchant shall pay to GFA all reasonable costs associated with (a) an Event of Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of GFA's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5     Required Notifications**. Merchant is required to give GFA written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give GFA seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4     MISCELLANEOUS

**4.1     Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by GFA.

**4.2     Assignment**. GFA may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3     Notices**. All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to GFA shall become effective only upon receipt by GFA. Notices to Merchant shall become effective three days after mailing.

**4.4     Waiver Remedies**. No failure on the part of GFA to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5     Binding Effect;** Governing Law, Venue and Jurisdiction. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by GFA by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

**4.6     Survival of Representation**, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7     Interpretation**. All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8     Severability**. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9     Entire Agreement**. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty herein embody the entire agreement between Merchant and GFA and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10     JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY

4

Initial: REDACTED

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-B2FCC59719A5

MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11   **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12   **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13   **Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

Initial 

HASSETT_001238

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-82FCC59719A5

## SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: REDACTED

D/B/A: REDACTED                                   Federal ID#: ▉▉▉

Physical Address: REDACTED     City: REDACTED

Additional Guarantor(s).

_____

_____

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to GFA a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to GFA under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to GFA upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover GFA's entitlements under this Agreement, GFA is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of GFA's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, GFA or an affiliate of GFA. GFA is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by GFA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. GFA shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, GFA has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, GFA will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from GFA written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and GFA is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by GFA. Merchant and Guarantor(s) agree(s) to execute and deliver to GFA such instruments and documents GFA may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. GFA is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name. Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to GFA under any other agreement between Merchant or Guarantor(s) and GFA (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as GFA deems necessary to perfect or maintain GFA's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each

hereby authorizes GFA to file any financing statements deemed necessary by GFA to perfect or maintain GFA's security interest. Merchant and Guarantor(s) shall be liable for, and GFA may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by GFA in protecting, preserving and enforcing GFA's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** GFA shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, GFA may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that GFA may enter into an agreement with Merchant's landlord giving GFA the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, GFA may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to GFA, whether by acceleration or otherwise.

### GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS. GFA As an additional inducement for GFA to enter into this Agreement, the undersigned Guarantor(s) hereby provides GFA with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to GFA in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, GFA may seek recovery from Guarantors for all of GFA's losses and damages by enforcement of GFA's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral GFA may hold pursuant to this Agreement or any other guaranty.

GFA does not have to notify Guarantor of any of the following events and

6

Initial: REDACTED

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)  Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any  sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) GFA's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to GFA. In addition, GFA may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to GFA; (ii) release Merchant from its obligations to GFA; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's

other obligations to GFA under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that GFA must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

FOR THE MERCHANT (#1) By: REDACTED _____     _____ REDACTED _____
(Print Name and Title)

SSN# REDACTED _____     Driver's License Number_____

FOR THE MERCHANT (#2) By: _____
(Print Name and Title)     (Signature)

SSN#_____     Driver's License Number_____

BY OWNER (#1) By: REDACTED _____     _____ REDACTED _____
(Print Name and Title)     (Signature)

SSN# REDACTED _____     Driver's License Number_____

BY OWNER (#2) By: _____
(Print Name and Title)     (Signature)

SSN#_____     Driver's License Number_____

FOR THE GUARANTOR(S) By: REDACTED _____     _____ REDACTED _____
(Print Name and Title)     (Signature)

SSN# REDACTED _____     Driver's License Number_____

FOR THE GUARANTOR(S) By: _____
(Print Name and Title)     (Signature)

SSN#_____     Driver's License Number_____

Initial: REDACTED

HASSETT_001240

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## APPENDIX A - THE FEE STRUCTURE:

A. **Underwriting Fee**: Minimum of $500.00 or up to 12% of the purchase price for underwriting and related expenses.

B. **ACH Origination Fee**: Minimum of $500.00 or up to 10% of the purchase price to cover cost of Origination and ACH Setup

C. **NSF Fee (Standard)**: $50.00 each

D. **Rejected ACH/Blocked ACH/Default Fee**: $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E. **Bank Charge Fee**: $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F. **Wire Fee:** - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

G. **Attorney's Fee**: $10,000. When merchant breaches any term of this Agreement and GFA is required to retain counsel to enforce, defend or collect any term of this Agreement.

H. **Unauthorized Account Fee**: $5,000.00 (if a merchant blocks GFA'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

I. **Default Fee**: $5,000.00 or up to 20% of the funded amount (if a merchant changes bank accounts or switches to another credit card processor without GFA' s consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

J. **Stacking Fee**: If the Merchant takes any further financing from any other finance /factoring company a fee of 20% of the purchased amount will be added to the Merchants current balance.

K. **Risk Assessment Fee**: $249.00

L. **UCC Fee**: $195.00

M. **Management Fee**: $249.00 monthly funding fee for duration of agreement terms or until balance paid.

<u>FOR THE MERCHANT (#1)</u> By: **REDACTED**

(Print Name and Title)          (Signature)

<u>FOR THE MERCHANT (#2)</u> By: _____

(Print Name and Title)          (Signature)

8

Initial **REDACTED**

HASSETT_001241

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)——**

Merchant **REDACTED**                                Tax ID: ▮▮▮▮▮▮▮▮
(Merchant's Legal Name)

**Merchant Agreement:** Merchant Agreement between GoFund Advance LLC, and Merchant, dated as of: _11/16/2021_

Designated Checking Account:

Bank Name **REDACTED**____   Routing: ▮▮▮▮▮▮▮▮   Account: ▮▮▮▮▮▮▮▮

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Bank Name:_____   Routing:_____   Account:_____

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes GoFund Advance LLC, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes GoFund Advance LLC to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $ _1,600.00_____   (Or) Percentage of each Banking Deposit: _45_____%
On the Following Days: _MONDAY - FRIDAY_____.

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that GoFund Advance LLC, may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes GoFund Advance LLC, to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** GoFund Advance LLC, is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until GoFund Advance LLC, has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford GoFund Advance LLC, a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **REDACTED**_____   Date: _11/16/2021_
(Merchant                                (Month) (Day) (Year)

Title:_____

X **REDACTED**_____
(Signature)

Print Name: **REDACTED**_____

9                                        Initial: **REDACTED**

DocuSign Envelope ID: 0369E09A-BEFC-4A94-932D-62FCC59719A5

## Bank Login Information ———————————————————————————

Dear Merchant,

Thank you for accepting this offer from GoFund Advance LLC. We look   forward to being your funding partner for as long as you need.

**Daily ACH Program:**

GoFund Advance LLC, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

GoFund Advance LLC, will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank:            REDACTED

Bank portal website: Username

Password:

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:            NA

REDACTED                                                        11/16/2021

Merchant / Owner Signature                                       Dated

Initial:  REDACTED

HASSETT_001243