# EXHIBIT 31

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| **RENATO GIOE**<br>a/k/a "Gino" | : | VIOLATIONS:<br>18 U.S.C. § 894(a) (conspiracy to use |
| | : | extortionate means to collect an extension of credit – 1 count) |
| | : | 18 U.S.C. § 894(a) (extortionate collections of credit – 2 counts) |
| | : | Notice of forfeiture |

# INFORMATION

## COUNT ONE

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this information:

1. Defendant RENATO GIOE worked for the collections department for Complete Business Solutions Group, Inc., doing business as Par Funding ("Par Funding"), and at the direction of Person No. 1, known to the United States Attorney, acted as an "enforcer" and used extortionate means, including express and implied threats of violence, to collect payments from its customers.

2. From at least 2013 through in or about July 2020, Par Funding was in the business of funding businesses ("merchant-customers") through short-term financing transactions, referred to by Par Funding as merchant-cash advances ("MCAs"). In these transactions, Par Funding purported to purchase these merchant-customers' future receivables at a discounted price. The purchase price was given to the merchant-customer – typically in a lump

sum – with the expectation that the merchant-customer would use the funds to operate its business. The merchant-customer typically repaid Par Funding the purchase price advanced to it plus an additional amount, which was typically 30% or more of the purchase price. Par Funding typically collected these repayments in installments through daily or weekly debits from the merchant-customer's bank accounts.

3. From at least 2013 through in or about July 2020, Person No. 1 controlled Par Funding's day-to-day operations and owned it indirectly through his wife, who served as his nominee. This structure was designed to hide Person No. 1's control of Par Funding from the outside world, including from investors, due to Person No. 1's significant criminal history, including for convictions of grand larceny and money laundering in connection with a multi-million-dollar fraud.

4. Par Funding's principal place of business was at 141 N. 2nd Street, Philadelphia, Pennsylvania and then 20-22 N. 3rd Street, Philadelphia, Pennsylvania, with an accounting office based at 205 Arch Street, Philadelphia, Pennsylvania.

5. Fast Advance Funding was an entity affiliated with Par Funding. Fast Advance Funding was incorporated in Pennsylvania in July 2013. This entity was an MCA company that at times used the same addresses in Philadelphia that Par Funding used. Fast Advance Funding's 2013 corporation filing with the Pennsylvania Department of State listed its address as 141 North 2nd Street, Philadelphia, Pennsylvania, which was then Par Funding's address. Throughout this conspiracy, Fast Advance Funding's MCAs were underwritten, funded, and collected by the same employees of Par Funding and for all practical purposes functioned as the same entity as Par Funding.

2

6. Defendant RENATO GIOE worked for Par Funding from approximately 2013 through 2018 as a contractor for Par Funding's collections department. During this time, defendant GIOE worked out of Par Funding's Philadelphia offices, where he reported to and took direction from Person No. 1. Defendant GIOE performed this work through a limited liability company formed in Delaware called Stern Group & Associates. Person No. 1 played a direct role in setting up defendant GIOE's limited liability company.

7. Par Funding's collections department was responsible for collecting funds from merchant-customers who did not make their payments on time. Person No. 1, and defendant RENATO GIOE at Person No. 1's direction, contacted delinquent borrowers via phone calls, text messages, and personal visits to their homes and businesses to make express and implied threats of violence to the merchant-customers and their families, such as threats to stick a fork in a merchant-customer's head or to cut off the merchant-customer's hands. The collections department also used various other techniques to harass delinquent merchant-customers, including by making repeated phone calls and emails to representatives of the merchant-customers as well as the merchant-customers' family members, friends, neighbors, religious organizations, and schools.

8. On or about July 27, 2020, the United States District Court for the Southern District of Florida appointed a receiver to operate Par Funding and many of its related entities including Fast Advance Funding.

3

## LOANS MADE BY PAR FUNDING AND FAST ADVANCE FUNDING
## AND COLLECTED BY EXTORTIONATE MEANS

9. On or about July 22, 2014, Fast Advance Funding agreed to provide approximately $8,000 to Victim Business No. 1, owned by Extortion Victim No. 1, which operated several barbershops in Philadelphia, Pennsylvania. This funding was advanced pursuant to an MCA agreement that required Victim Business No. 1 to repay a total of $10,640 over 100 daily payments. Fast Advance Funding and Par Funding subsequently provided additional funding to Victim Business No. 1 through additional agreements, some of which were refinancing agreements – known as "reload" agreements – that incorporated Victim Business No. 1's unpaid balance into a new, larger balance. According to Par Funding's records, Par Funding advanced an approximate total of $120,158.12 to Victim Business No. 1 pursuant to the parties' various MCA agreements.

10. On or about November 30, 2015, Par Funding agreed to provide approximately $118,132 to a technology company, Victim Business No. 2, in Los Angeles, California, and co-owned by Extortion Victims No. 2 and 3, pursuant to an MCA agreement that required Victim Business No. 2 to pay Par Funding at a 1.42 factor rate over 132 payments, for a total repayment amount of $170,400. Victim Business No. 2 subsequently entered into additional "reload" agreements, which increased Victim Business No. 2's debt to Par Funding. According to Par Funding's records, Par Funding advanced an approximate total of $3,590,150 to Victim Business No. 2 pursuant to the parties' various MCA agreements.

11. On or about October 7, 2016, Par Funding agreed to provide approximately $75,000 to a retail hardware business, Victim Business No. 3, owned by Extortion Victim No. 4, with a business address in Lancaster County, Pennsylvania. Par Funding provided

4

the funds pursuant to an MCA agreement that required Victim Business No. 3 to pay back $106,500 in 132 business days. Victim Business No. 3 subsequently entered into additional "reload" agreements, which increased Victim Business No. 3's debt to Par Funding. According to Par Funding's records, Par Funding advanced an approximate total of $179,125 to Victim Business No. 3 pursuant to the parties' various MCA agreements.

12. On or about October 11, 2017, Par Funding agreed to provide approximately $325,000 to a real estate company, Victim Business No. 4, owned by Extortion Victim No. 5, with a business address in Miami, Florida. Par Funding provided the funds pursuant to an MCA agreement that required Victim Business No. 4 to pay back $455,000 in 120 business days. Victim Business No. 4 subsequently entered into additional "reload" agreements, which increased Victim Business No. 4's debt to Par Funding. According to Par Funding's records, Par Funding advanced an approximate total of $4,135,624 to Victim Business No. 4 pursuant to the parties' various MCA agreements.

13. From no later than in or about 2016 until at least in or about July 2020, in the Eastern District of Pennsylvania and elsewhere, defendant

**RENATO GIOE,**
**a/k/a "Gino,"**

knowingly conspired and agreed with Person No. 1, known to the United States Attorney, and with others known and unknown to the United States Attorney to participate in the use of extortionate means within the meaning of Title 18, United States Code, Section 891(7), to collect and attempt to collect extensions of credit from multiple merchant-customers, including Extortion Victim No. 1, Extortion Victims No. 2 and 3, Extortion Victim No. 4, and Extortion

5

Victim No. 5, all persons known to the United States Attorney, in violation of Title 18, United States Code, Section 894(a).

## MANNER AND MEANS

It was part of the conspiracy that:

14. Person No. 1 directed defendant RENATO GIOE to travel throughout the United States to make unannounced personal visits to the businesses and homes of representatives of the merchant-customers, in order to make hostile, threatening, and intimidating communications to these representatives.

15. Defendant RENATO GIOE traveled throughout the United States and made unannounced personal visits to representatives of merchant-customers and made hostile threatening and intimidating communications to those representatives.

16. During these collection efforts, and often in conjunction with defendant RENATO GIOE's personal visits to representatives of the merchant-customers, Person No. 1 made hostile, threatening, and intimidating electronic and telephone communications to these representatives. After defendant RENATO GIOE visited these representatives of the merchant-customers, Par Funding and Person No. 1 continued to collect funds from the merchant-customers and continued to make hostile, threatening, and intimidating electronic and telephone communications as necessary to collect on delinquent credit

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, defendant RENATO GIOE, along with Person No. 1, and others both known and unknown to the United

6

States Attorney, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On multiple occasions beginning no later than in or around early 2016, at a time when Victim Business No. 1 was financially unable to meet Par Funding's repayment terms, defendant RENATO GIOE – at the direction of Person No. 1 – appeared unannounced at Victim Business No. 1's barbershops in Philadelphia on a weekly basis, where defendant GIOE demanded cash payments from Extortion Victim No. 1.

2. When Extortion Victim No. 1 did not have sufficient cash to meet defendant RENATO GIOE's demands, defendant GIOE made hostile, threatening, and intimidating statements to Extortion Victim No. 1, including that he would physically harm Extortion Victim No. 1. Par Funding continued to collect repayments made by Extortion Victim No. 1 after these threats were made until on or about September 16, 2019.

3. On or about February 15, 2018, at a time when Victim Business No. 2 was financially unable to meet Par Funding's repayment terms:

   a. At the direction of Person No. 1, defendant RENATO GIOE appeared unannounced at Victim Business No. 2's Los Angeles office and demanded to speak with Extortion Victim No. 2. Defendant GIOE then spoke to Extortion Victim No. 3 and demanded payment on behalf of Par Funding.

   b. While at Victim Business No. 2's office, defendant RENATO GIOE made hostile, threatening, and intimidating statements to Extortion Victim No. 3, including telling him that the fact that Victim Business No. 2 owed money to Par Funding could affect "wives, households, and children" and could make widows, and telling Extortion Victim

7

No. 3 a story about a suspicious car accident involving another person from whom defendant GIOE was trying to collect money on behalf of Par Funding.

   4.  On or about February 16, 2018:

     a.  Defendant RENATO GIOE returned to Victim Business No. 2's Los Angeles office and again demanded that Extortion Victim No. 3 "just pay the fucking money," while denying that he had threatened Extortion Victim No. 3 the previous day.

     b.  Defendant RENATO GIOE participated in a telephone call with Person No. 1 in the presence of Extortion Victims No. 2 and 3 using the speakerphone function, during which Person No. 1 told defendant GIOE and Extortion Victims No. 2 and 3 that defendant GIOE knew "what to do with this guy [Extortion Victim No. 3]" and to "take care of him [Extortion Victim No. 3]." Par Funding continued to collect repayments made by Extortion Victims No. 2 and 3 after these threats were made until on or about July 10, 2020.

     c.  Defendant RENATO GIOE texted Person No. 1 and Person No. 2, another Par Funding employee, known to the United States Attorney, in a group message and stated, "I'm on top of [a New York merchant, known to the United States Attorney]. I'll find out tomorrow with you. Let me feel him. By the way [Extortion Victim No. 3] is scared could not believe I arrived." Person No. 1 then replied, in pertinent part, "Get all monies in. Also you got a few others."

   5.  In or around the Spring of 2017, at a time when Victim Business No. 3 was financially unable to meet Par Funding's repayment terms, defendant RENATO GIOE – at the direction of Person No. 1 – appeared unannounced at Victim Business No. 3's retail store, where defendant GIOE made hostile, threatening, and intimidating statements to Extortion

8

Victim No. 4 while Person No. 1 was listening on the phone, causing Extortion Victim No. 4 to cry.  Par Funding continued to collect repayments made by Extortion Victim No. 4 after these threats were made until in or about April 2018.

6. On or about June 2, 2018, at a time when Victim Business No. 4 was financially unable to meet Par Funding's repayment terms, Person No. 1 texted Extortion Victim No. 5, stating "U believe I got to send Gino [defendant RENATO GIOE] at you on Monday to get my payments. Btw your paying for these trips. He isn't cheap."  Person No. 1 then texted Extortion Victim No. 5 along with defendant GIOE, stating that defendant GIOE would visit with Extortion Victim No. 5 on Monday, June 4, 2018, "with the hopes of receiving our funds on Monday by business close."  Person No.1 then asked Extortion Victim No. 5 in a text, "If this cannot be accomplished, would u mind if Gino [defendant GIOE] could be a guest at your home until this can be procured."  When Extortion Victim No. 5 responded that he would be willing to let defendant GIOE stay at Extortion Victim No. 5's beach house, Person No. 1 responded, "I thought it would be nice if u stayed together."

7. On or about June 4, 2018:

a. At the direction of Person No. 1, defendant RENATO GIOE arrived at Extortion Victim No. 5's office in Florida, demanded repayment, acted in a hostile and intimidating manner, and refused to leave for approximately eight hours.

b. While defendant RENATO GIOE was at Extortion Victim No. 5's office, defendant GIOE and Extortion Victim No. 5 spoke by phone with Person No. 1 about repayment of the funds advanced to Victim Business No. 4.  Person No. 1 and Extortion Victim No. 5 also exchanged text messages, during which Extortion Victim No. 5 pleaded with Person

9

No. 1, "Can you please get Gino [defendant GIOE] the fuck out of my office, i can't have this shit! I get it, but this doesn't help and I don't want any kind [of] scene."

    c. Defendant RENATO GIOE took Extortion Victim No. 5's Rolex watch, which Extortion Victim No. 5 had offered as a gift of appeasement, prompting Extortion Victim No. 5 to plead by text with Person No. 1, "Please call off the hounds.. [sic] and by that I mean that animal [defendant GIOE] you sent down here."

    8. Par Funding continued to collect repayments made by Extortion Victim No. 5 after these threats were made until on or about January 31, 2020.

    All in violation of Title 18, United States Code, Section 894(a).

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

From in or about 2016 through in or about April 2021, in the Eastern District of Pennsylvania, defendant

**RENATO GIOE,**
**a/k/a "Gino,"**

knowingly used extortionate means within the meaning of Title 18, United States Code, Section 891(7), to collect and attempt to collect extensions of credit from Extortion Victim No. 6, a person known to the United States Attorney.

In violation of Title 18, United States Code, Section 894(a).

11

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

From in or about 2018 through in or about September 22, 2019, in the District of New Jersey, and elsewhere, defendant

**RENATO GIOE,**
**a/k/a "Gino,"**

knowingly used extortionate means within the meaning of Title 18, United States Code, Section 891(7), to collect and attempt to collect extensions of credit from Extortion Victim No. 7, a person known to the United States Attorney.

In violation of Title 18, United States Code, Section 894(a).

12

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

  1. As a result of the violation of Title 18, United States Code, Section 894(a), set forth in this information, defendant

**RENATO GIOE,**
a/k/a "Gino,"

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

  2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

_____
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

*No.* 2 2-  _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**
Eastern District of Pennsylvania
Criminal Division

THE UNITED STATES OF AMERICA

vs.

RENATO GIOE
a/k/a "Gino"

INFORMATION
Count

18 U.S.C. § 894(a) (conspiracy to use extortionate means to collect an extension of credit – 1 count); 18 U.S.C. § 894(a) (extortionate collections of credit – 2 counts); Notice of Forfeiture

A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____