EXHIBIT 84

# New Account Checklist (Business)

Account Title TAILORED FUND CAP LLC DBA MONTHLY FEE

Account Number 0210022984

Opened by GC                              Date Opened 02/19/2021

Verified by LS                            Date Verified 02/22/2021

Cleartouch Input  Verified by LS          Date Verified 02/22/2021

GC     LS     1) New Account Application (completed in its entirety)

GC     LS     2) OnBoard Advisor/Watch List Inquiry for Business/Each signer/All Officers on
                  State Filing (SunBiz) & Registered Agent

GC     LS     3) Account Disclosure Acknowledgment Form

GC     LS     4) Signature Card

GC     LS     5) Corporate Resolution

GC     LS     6) Certification of Beneficial Ownership

N/A    N/A    7) Debit Card Form(s)

N/A    N/A    8) Debit Card(s) Physically Ordered (Printout)

N/A    N/A    9) Field 330 Updated (For Debit Card Fee Reimbursement)

N/A      N/A      10) NGO Form (Non Profit)

GC      LS      11) SunBiz

GC      LS      12) Articles of Incorporation/Articles of Organization /Operating Agreement / Partnership Agreement / Fictitious Name Registration/Minutes

GC      LS      13) NAICS Code Input

GC      LS      14) Copy of Opening Deposit (<u>$50K+ Watch List on Maker</u>)

GC      LS      15) Welcome Letter

GC      LS      16) Completed Checklist

GC      LS      17) Scanned to BSA Profile Folder

GC      LS      18) Change Opt In/Opt out field to 02

**\*\*\*MUST BE COMPLETED WITHIN 5 BUSINESS DAYS FROM ACCOUNT OPENING\*\*\***

# OPTIMUMBANK

**IMPORTANT INFORMATION ABOUT PROCEDURES**
**FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## Business Account Application

Date 02/12/2021                     Account Number 0210022984

Account Title TAILORED FUND CAP LLC DBA

D/B/A if Applicable MONTHLY FEE

Address 1274 49TH ST # 197, BROOKLYN NY 11219-3011

EIN # 84-2190651                    Onboard Verification 02/12/2021

Business Telephone # (929) 605-4104    Contact Person YOSEF YEHUDA BREZEL

Fax # _____    E-Mail optimum@businessfundcorp.com

Type of Business MERCHANT CASH ADVANCE COMPANY                    □

Describe Business Activities INVOICE FACTORING, SHORT TERM ASSET-BACKED LENDING, BUSINESS &INVESTMENT FINANCING

Purpose of Account CASH MANAGEMENT

Address of the Business location 1276 50TH ST STE B, BROOKLN NY 11219

Amount of Opening Deposit: (Copy for file) $_____    NAICS Code 522220

Describe Source of Funds (Deposits) ACCOUNT RECEIVABLES AND REPAYMENTS

Describe Use of Funds (Withdrawals) FUNDING ORIGINATION, BUSINESS OPERATIONS

Reason for choosing OptimumBank CUSTOMER REFERRAL BRIDGE FUNDING

## Account Authorized Signers

Name: BINYAMIN YITZCHAKOV                                    D/O/B: 10/15/1990

SS# 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                        Mother's Maiden Name: ABAYOV

Address 583 GRANT PL, CEDARHURST NY 11516

Primary ID# 475 244 471            Issue Date: 01/07/2020  Exp. Date: 10/15/2027  Issued By NEW YORK DL

Secondary ID# 9854                 Issue Date:_____  Exp. Date: 02/28/2021  Issued By VISA

Home #_____    Cell# (718) 825-8790        Business#_____

Occupation OWNER              Employer PANTHERS CAPITAL

If Retired, occupation prior to retirement_____    Employer_____

Onboard Verification _10/29/20_              E-Mail ben@pantherscapital.com

**Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)** _____Yes    X _____No

Name:_____    D/O/B:_____

SS#_____    Mother's Maiden Name:_____

Address_____

Primary ID#_____    Issue Date:_____  Exp. Date:_____  Issued By_____

Secondary ID#_____    Issue Date:_____  Exp. Date:_____  Issued By_____

Home #_____    Cell#_____    Business#_____

Occupation_____    Employer_____

If Retired, occupation prior to retirement_____    Employer_____

Onboard Verification_____    E-Mail_____

**Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)** _____Yes _____No

Name:_____    D/O/B:_____

SS#_____    Mother's Maiden Name:_____

Address_____

Primary ID#_____    Issue Date:_____  Exp. Date:_____  Issued By_____

Secondary ID#_____    Issue Date:_____  Exp. Date:_____  Issued By_____

Home #_____    Cell#_____    Business#_____

Occupation_____    Employer_____

If Retired, occupation prior to retirement_____    Employer_____

Onboard Verification_____    E-Mail_____

**Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)** _____Yes _____No

## Monthly Anticipated Activity

| Estimated Activity Ranges (Total Debits & Credits) |
| --- |

**All Transactions**

| | |
| --- | --- |
| o | $        1 – $ 100,000 |
| o | $ 100,001 – $ 500,000 |
| o | $500,001 – $1,000,000 |
| X | $1,000,001 – $2,000,000 + |

**Cash (including ATM)**

| | |
| --- | --- |
| o | $        1 – $ 10,000 |
| o | $ 10,001 – $  25,000 |
| o | $ 25,001 – $  50,000 |
| o | $ 50,001 – $ 100,000 + |

**ACH**

| | |
| --- | --- |
| o | $        1 – $ 50,000 |
| o | $ 50,001 – $100,000 |
| o | $100,001 – $250,000 |
| X | $250,001 – $500,000 + |

**Wires**

| | |
| --- | --- |
| o | $        1 – $ 100,000 |
| o | $ 100,001 – $ 500,000 |
| o | $ 500,001 – $1,000,000 |
| X | $1,000,001 – $2,000,000 + |

Will you be originating ACH:  Yes  X____     No ____

Will you be depositing via Remote Deposit Capture (RDC) Mobile Banking:  Yes  X____     No ____

Main Customers  BUSINESSES NEEDING FINANCING

Main Suppliers  OWNERS/INVESTORS

Foreign Wires:  Yes ____   No X____   Monthly Amount  N/A

Countries  N/A_____     Reoccurring:  Yes ____   No X____

Purpose of Wire(s)  FUND LOAN DEALS

Purpose of transfers to/from related accts N/A

Describe Source of Wealth (SOW) EMPLOYMENT

Additional Info N/A

Account Opened By GIOVANNI CUMBERBATCH

# Onboard Advisor

|   | Applicant | Advice | Watch List |
|---|-----------|--------|------------|
| ► | MONTHLY FEE | **PASS** | PASS |

## ▼ Request Summary

| | |
|---|---|
| Date | 02/12/2021 11:12 EST |
| Solution | Watch List |
| Transaction ID | AEAA5F984899E241F2389F5BF7C5F978A0A62A8DC3966BE9E4ECB97F894D2A83 |
| Financial Institution | OptimumBank |
| Region | |
| Branch | OA portal |
| User | lesutton |

## ▼ MONTHLY FEE - PASS

### ▼ Submitted Request Details

| | |
|---|---|
| Business Name | MONTHLY FEE |
| Request ID | 660B596101079C621CD2D00CF0C2E617948ED4FF02C0BA876476027997 12D3CC |
| EIN | |
| Address | |
| Phone | |

### ▼ Watch List - PASS

| | |
|---|---|
| Component Result | NO MATCHES |

**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

# Onboard Advisor

| | Applicant | Advice | Watch List |
|---|---|---|---|
| ► | SIHA, MARSHA | **PASS** | PASS |

## ▼ Request Summary

| | |
|---|---|
| **Date** | 02/12/2021 11:30 EST |
| **Solution** | Watch List |
| **Transaction ID** | 00EA9ADAA9D76C459182E2DB19D847008850D504F4E1D872F5916E53BF9C2081 |
| **Financial Institution** | OptimumBank |
| **Region** | |
| **Branch** | OA portal |
| **User** | lesutton |

## ▼ SIHA, MARSHA - PASS

### ▼ Submitted Request Details

| | |
|---|---|
| **Full Name** | MARSHA SIHA |
| **Request ID** | 291276FDF8BC36F9B49EA5BB1EBA27BF2D69F9F71305A4DB428CF9178B3B9C80 |
| **SSN** | |
| **Address** | |
| | |
| **DOB** | |
| **Home Phone** | |
| **Work Phone** | |
| **Email** | |

### ▼ Watch List - PASS

| | |
|---|---|
| **Component Result** | NO MATCHES |

**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

# Onboard Advisor

|   | Applicant | Advice | Watch List |
|---|-----------|--------|------------|
| ► | LEGALINC CORPERATE SERVICES IN | **PASS** | PASS |

## ▼ Request Summary

| Date | 02/12/2021 11:33 EST |
|------|----------------------|
| Solution | Watch List |
| Transaction ID | 8BEC43A2203E1F31EF1D7D1222D5072B16EA4EAD0FFD169ECC8C9E33D24117F1 |
| Financial Institution | OptimumBank |
| Region | |
| Branch | OA portal |
| User | lesutton |

## ▼ LEGALINC CORPERATE SERVICES IN - PASS

### ▼ Submitted Request Details

| Business Name | LEGALINC CORPERATE SERVICES IN |
|---------------|-------------------------------|
| Request ID | 1C08720CE6999E03F7BA7505D9F35E9CDA00F25B35F98E0A233818A179 F90620 |
| EIN | |
| Address | |
| Phone | |

### ▼ Watch List - PASS

| Component Result | NO MATCHES |
|------------------|------------|

**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

Onboard Advisor Overall Advice                                        Page 1 of 2

# Onboard Advisor

| | Applicant | Advice | Watch List | Identity Verification | Fraud & Risk |
|---|---|---|---|---|---|
| ► | TAILORED FUND CAP LLC | PASS | PASS | PASS | PASS |

## ▼ Request Summary

| | |
|---|---|
| Date | 01/07/2021 18:33 EST |
| Solution | Verification Fraud and Risk Bundle |
| Transaction ID | A30C30D83F46CF3AF77E4DA8ABC33C7B1E564D767250CED8013476DEC18FE87D |
| Financial Institution | OptimumBank |
| Region | |
| Branch | Fort Lauderdale |
| User | gcumberbatch |

## ▼ TAILORED FUND CAP LLC - PASS

### ▼ Submitted Request Details

| Business Name | TAILORED FUND CAP LLC |
|---|---|
| Request ID | C931157CBAC1FDCA148B668D5B1BF6B68E2419DBDBDD614BECF77AB8508ACFA9 |
| EIN | 84-2190651 |

| Address |
|---|
| 1274 49TH ST # 197 |
| BROOKLYN |
| NY |
| 11219 |

| Phone | 929-605-4104 |
|---|---|

### ▼ Watch List - PASS

| Component Result | NO MATCHES |
|---|---|

### ▼ Identity Verification - PASS

| Component Result | 40 |
|---|---|

| Risk Indicators | |
|---|---|
| Code | Description |
| 27 | Unable to verify phone number |
| 26 | Unable to verify SSN/TIN |
| 08 | The input phone number is potentially invalid |
| 64 | The input address returns a different phone number |

*Called to verified*
*EIN a Hacker*

Onboard Advisor Overall Advice                                          Page 2 of 2

| Applicant Summary | | |
|---|---|---|
| Field | Matched | Additional |
| Company Name | TAILORED FUND CAP | TAILORED FUND CAP |
| Address | | |
| Street Line 1 | 1274 49TH ST | |
| City | BROOKLYN | |
| State | NY | |
| Zip | 11219 | |
| EIN | | |
| Phone | | |
| Date First Seen | | |

| Address History |
|---|
| No information found. |

| Supplementary Data | | | |
|---|---|---|---|
| Address Type | | | |
| Phone Type | 2 -- Business | | |
| Business Description | | | |
| SOS Filing Name | | | |
| SIC Code | | | |
| Bankruptcy Count | 0 | Bankruptcy Recent Filing | |
| Unreleased Lien Count | | Unreleased Lien Recent Filing | |
| Released Lien Count | | | |

▼Fraud & Risk - PASS

| Component Result | 0 |
|---|---|
| Cumulative Loss | 0.00 |
| FCRA Flag | |

| Match Records |
|---|
| No information found. |

**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

# Onboard Advisor

| | Applicant | Advice | Watch List | Identity Verification | Fraud & Risk |
|---|---|---|---|---|---|
| ▶ | BREZEL, YOSEF | PASS | PASS | PASS | PASS |

## ▼Request Summary

| | |
|---|---|
| Date | 01/07/2021 18:37 EST |
| Solution | Verification Fraud and Risk Bundle |
| Transaction ID | 53D72DE00BA2486C13774701B50A6C642983DF33CFEB6404D7E6373088A8E039 |
| Financial Institution | OptimumBank |
| Region | |
| Branch | Fort Lauderdale |
| User | gcumberbatch |

## ▼ BREZEL, YOSEF - PASS

### ▼Submitted Request Details

| | |
|---|---|
| Full Name | YOSEF YEHUDA BREZEL |
| Request ID | 4E2EB4B3835DB243863B217E8C72F71F5A6024C9F2B4E2C918B83CD930F9FD3C |
| SSN | 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 |
| Address | 1009 E 2ND STREET<br>BROOKLYN<br>NY<br>11230 |
| DOB | 12/21/1987 |
| Home Phone | 347-446-0445 |
| Work Phone | |
| Email | |

| US Drivers License | |
|---|---|
| Number | 703 949 767 |
| State | NY |
| Expiration Date | 12/21/2023 |

| Other ID | |
|---|---|
| Type | OT - Other |
| Number | 1248 |
| State | |
| Country | |
| Expiration Date | 01/31/2021 |

Onboard Advisor Overall Advice                                          Page 2 of 3

▼Watch List – PASS

| Component Result | NO MATCHES |
|---|---|

▼Identity Verification – PASS

| Component Result | 50 |
|---|---|

*(handwritten in left margin: Cell phone BC attached)*

| Risk Indicators | |
|---|---|
| Code | Description |
| 10 | The input phone number is a mobile number |
| DF | The input driver's license number is valid and is not found in the public record |

| Red Flags | |
|---|---|
| Code | Description |
| **Suspicious Documents Codes** | |
| DF | The input driver's license number is valid and is not found in the public record |
| **Suspicious Phone Codes** | |
| 10 | The input phone number is a mobile number |

| Applicant Summary | | |
|---|---|---|
| Field | Matched | Additional |
| First Name | YOSEF | |
| Middle Name | YEHUDA | |
| Last Name | BREZEL | |
| DOB | 12/21/1987 | |
| Address | | |
| Street Line 1 | 1009 E 2ND ST | |
| City | BROOKLYN | |
| State | NY | |
| Zip | 11230 | |
| SSN | 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 | |
| Phone | 347-446-0445 | |
| Driver License Number | | |

| Address History | | | |
|---|---|---|---|
| Address | Date First Seen | Date Last Seen | Best Address |
| 1009 E 2ND ST<br>BROOKLYN<br>NY<br>11230 | 11/2017 | 12/2020 | ✓ |
| 5806 21ST AVE APT 4<br>BROOKLYN<br>NY<br>11204 | 03/2011 | 10/2020 | |
| 461 VAN BRUNT ST STE 14A | 04/2014 | 01/2020 | |

BROOKLYN
NY
11231

### Supplementary Data

| DOB Verified | Verified |
| --- | --- |
| DOB Match Level | 8 - Month, Day, and year match |
| Passport Validated | Not Validated |

### SSN Issued Information

| Valid | Location | Start Date | End Date |
| --- | --- | --- | --- |
| G - Good | New York | 01/1991 | 12/1992 |

### Decedent Info

No information found.

### Follow Up Actions

| Action | Description |
| --- | --- |
| C | Verify name with Address (via DL, utility bill, Directory Assistance, paycheck stub, or other Government Issued ID) |

▼ Fraud & Risk - PASS

| Component Result | 0 |
| --- | --- |

| Cumulative Loss | 0.00 |
| --- | --- |
| FCRA Flag | |

| Match Records | |
| --- | --- |
| No information found. | |

Disclaimer:
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.



*Monthly Fee*

# OPTIMUMBANK

| | |
|---|---|
| **Corporate Office** | **Plantation Branch** |
| 2929 E. Commercial Blvd. | 10197 Cleary Blvd |
| Ft. Lauderdale, FL 33308 | Plantation, FL 33324 |
| Ph. (954) 900-2800 | Ph. (954) 900-2860 |
| **Ft. Lauderdale Branch** | **Deerfield Beach Branch** |
| 2929 E. Commercial Blvd. | 2215 W. Hillsboro Blvd. |
| Ft. Lauderdale, FL 33308 | Deerfield Beach, FL 33442 |
| Ph. (954) 900-2850 | Ph. (954) 900-2880 |

**ATM Locations:** PRESTO! Network ATM's including all Publix ATM's

## Account Disclosures

Account Number: 0210022984

- ☑ Deposit Account Agreement
- ☑ Truth in Savings Disclosure
- ☑ Funds Availability Policy and Substitute Checks and Your Rights
- ☑ Electronic Funds Transfer Agreement
- ☑ Privacy Policy
- ☑ Schedule of Fees

## Unlawful Internet Gambling

Unlawful Internet Gambling transactions are not permitted; therefore, this account will not have transactions involving Internet Gambling.

Customer acknowledgement:

_____    Date: FEB 16 2021

_____    Date: _____

**Member
FDIC**

Disclosure Acknowledgement (05/2015)



| NEW ACCOUNT INFORMATION | Financial Institution Name And Address |
|---|---|
| | OptimumBank |
| | 2929 E COMMERCIAL BLVD |
| | SUITE 101 |
| | Fort Lauderdale, FL 33308-4041 |
| DATE  02/11/2021 | 954-900-2850 |
| Check if applicable:  ☐ Temporary   ☐ Replacement | |

**ACCOUNT INFORMATION**

AMOUNT OF DEPOSIT $ 0.00     PLAN #

ACCOUNT NUMBER  0210022984

ACCOUNT T.I.N.  84-2190651

TITLE OF ACCOUNT
TAILORED FUND CAP LLC DBA
MONTHLY FEE

1274 49TH ST # 197
BROOKLYN, NY 11219-0000

OWNERSHIP TYPE  Business DBA

PRODUCT NAME  Commercial Checking

Words, numbers or phrases preceded by a ☐ are applicable only when marked, i.e., ☒ .  Opened By  Latina Sutton

**BUSINESS ENTITY INFORMATION**

BUSINESS NAME AND ADDRESS
TAILORED FUND CAP LLC DBA

1274 49TH ST # 197
BROOKLYN, NY 11219-0000

ASSUMED NAME IF D/B/A
MONTHLY FEE

CONTACT NAME  YOSEF YEHUDA BREZEL

CONTACT TITLE

CONTACT PHONE  (929)605-4104

OTHER

| | |
|---|---|
| BUSINESS FILING STATE | NY |
| ENTITY DOCUMENT | AO |
| LAST FILING DATE | 06/24/2019 |
| FILING EXPIRATION | |
| DATE ESTABLISHED | 06/24/2019 |
| NATURE OF BUSINESS | MERCHANT CASH ADVANCE |
| PRIMARY LOCATION | BROOKLYN, NY |
| RESOLUTION DATE | 02/11/2021 |
| E-MAIL ADDRESS | OPTIMUM@BUSINESSFUNDCORP.COM |
| FACSIMILE AUTHORIZATION ON FILE | ☐ YES   ☒ NO |
| LIMITED LIABILITY COMPANY TAX CLASSIFICATION: | |
| BUSINESS ENGAGES IN INTERNET GAMBLING* | ☐ |

* If box is checked you must provide evidence of authority to engage in Internet Gambling.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Exempt payee code, if any:
Exemption from FATCA reporting code, if any:

Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (Notice: If you are subject to backup withholding, cross out this line), and
3. I am a U.S. citizen or other U.S. person (defined in the W-9 instructions), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Taxpayer Identification Number:  84-2190651

SIGNATURE     YOSEF YEHUDA BREZEL     02/11/2021    DATE

**ADDITIONAL TERMS**      Account Alternate Address:

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.**  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**ACKNOWLEDGMENT.**  By signing this document, the undersigned acknowledge that they have opened the type of account designated above, and have received, understand and agree to be bound by the terms of the Account Agreement for that account type. The undersigned certify that all information provided to the institution is true and accurate. If this is a consumer account, the undersigned acknowledge receipt of an Account Disclosure, and a copy of this institution's Privacy Policy. The undersigned also acknowledge receipt, where applicable, of this institution's Funds Availability Policy and/or Electronic Fund Transfer Agreement. If this account is opened in the name of the business entity, all signers are acting on behalf of the business entity. All signers authorize this institution to make inquiries from any consumer reporting agency, including a check protection service, in connection with this account.

| NUMBER OF SIGNATURES REQUIRED  1 | | | | | ☒ FACSIMILE ALLOWED |
|---|---|---|---|---|---|
| ☐ Authorized Signer Only   Title:  Authorized Signer | | | ☐ Authorized Signer Only   Title: | | |
| X | | | X | | |
| YOSEF YEHUDA BREZEL   ID# 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  DOB 12/21/1987  Date  02/11/2021 | | | | ID#  DOB  Date | |
| ☐ Authorized Signer Only   Title: | | | ☐ Authorized Signer Only   Title: | | |
| X | | | X | | |
| ID#  DOB  Date | | | | ID#  DOB  Date | |

ACCOUNT NUMBER   0210022984

| OWNER/SIGNER #1      NAME AND ADDRESS | | |
|---|---|---|
| YOSEF YEHUDA BREZEL<br>1009 E 2ND ST<br>BROOKLYN, NY 11230 | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date:<br>ID Expiration: | Driver's License<br>703 949 767<br>New York<br><br>04/30/2019<br>12/21/2023 |
| Title/Capacity:  Authorized Signer<br>EMPLOYER NAME AND ADDRESS<br><br>TAILORED FUND CAP LLC | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | Other Personal ID<br>1248 |
| Tax ID Number:   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<br>Date of Birth:    12/21/1987<br>Primary Phone:   (347)446-0445<br>Secondary Phone: (929)605-4100 | ID Expiration:<br>Verification:<br>Unique Identifier:<br>E-Mail Address: | 01/31/2021<br>01/07/2021<br>GROSS<br>admin@businessfundcorp.com |

| OWNER/SIGNER #2      NAME AND ADDRESS | | |
|---|---|---|
| | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date:<br>ID Expiration: | |
| Title/Capacity:<br>EMPLOYER NAME AND ADDRESS | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number:<br>Date of Birth:<br>Primary Phone:<br>Secondary Phone: | ID Expiration:<br>Verification:<br>Unique Identifier:<br>E-Mail Address: | |

| OWNER/SIGNER #3      NAME AND ADDRESS | | |
|---|---|---|
| | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date:<br>ID Expiration: | |
| Title/Capacity:<br>EMPLOYER NAME AND ADDRESS | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number:<br>Date of Birth:<br>Primary Phone:<br>Secondary Phone: | ID Expiration:<br>Verification:<br>Unique Identifier:<br>E-Mail Address: | |

| OWNER/SIGNER #4      NAME AND ADDRESS | | |
|---|---|---|
| | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date:<br>ID Expiration: | |
| Title/Capacity:<br>EMPLOYER NAME AND ADDRESS | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number:<br>Date of Birth:<br>Primary Phone:<br>Secondary Phone: | ID Expiration:<br>Verification:<br>Unique Identifier:<br>E-Mail Address: | |

VERIFICATION / FOLLOW-UP

BENEFICIARY DESIGNATION. THE FOLLOWING BENEFICIARY(IES) ARE DESIGNATED:      ☐  See Addendum

1.                                          2.
3.                                          4.

ACCOUNT NUMBER:  0210022984

**UNIFORM SINGLE-PARTY OR MULTIPLE-PARTY ACCOUNT FORM**
**OWNERSHIP. (Select One And Initial)**

☐   SINGLE-PARTY ACCOUNT.                                                                   _____ Initials

☐   MULTIPLE-PARTY ACCOUNT.                                                           _____ Initials

☐   MULTIPLE-PARTY ACCOUNT-TENANCY BY THE ENTIRETY. (The parties must be husband and wife.)   _____ Initials

☐   Trust - Separate Agreement Account.                                          _____ Initials

☐   Other:                                                                                         _____ Initials

DISCLAIMER:   If you have chosen any other type of ownership, it is your expressed intent not to create a Tenancy by the Entirety.

**RIGHTS AT DEATH. (Select One And Initial)**

☐   SINGLE-PARTY ACCOUNT. On the death of the party, ownership passes as part of the party's estate.   _____ Initials

☐   SINGLE-PARTY ACCOUNT WITH POD (PAY ON DEATH) DESIGNATION. On the death of the party, ownership passes to the designated pay-on-death beneficiaries in equal shares and is not part of the party's estate.   _____ Initials

☐   MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP. On the death of a party, ownership passes to the surviving party or parties.   _____ Initials

☐   MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP AND POD (PAY ON DEATH) DESIGNATION. On the death of a party, ownership passes to the surviving party or parties. At the death of the last surviving party, ownership passes to the designated pay-on-death beneficiaries in equal shares and is not part of the last surviving party's estate.   _____ Initials

☐   MULTIPLE-PARTY ACCOUNT WITHOUT RIGHT OF SURVIVORSHIP. On the death of a party, that party's ownership share in the account passes as part of the decedent party's estate.   _____ Initials

**AUTHORIZED SIGNER (AGENT) DESIGNATION.**   (Consumer Account) An agent may make account transactions for parties but have no ownership rights at death unless named as POD beneficiaries. If an agent(s) will be designated to transact business on this account, provide the information and collect the signature of the agent(s) below:

AGENT #1:                                            AGENT #2:

Tax ID Number:            Date of Birth:            Tax ID Number:            Date of Birth:

X _____            X _____
                              Date                                                              Date

Will agent(s) have power to transact business on this account after your disability or incapacity?   ☐ Yes   ☐ No

**CONVENIENCE ACCOUNT - COSIGNER DESIGNATION.**   (Consumer Account) You have designated the following person(s) as the convenience/cosigner(s) on this account. If a convenience/cosigner will be designated to transact business on this account, provide the information and collect the signature of the person(s) below:

COSIGNER #1:                                        COSIGNER #2:

Tax ID Number:            Date of Birth:            Tax ID Number:            Date of Birth:

X _____            X _____
                              Date                                                              Date

**DESIGNATION AUTHORIZATION.**   All parties must sign below to authorize this designation for either the Authorized Signer (Agent) Designation or the Convenience Account- Cosigner Designation, when appropriate for account.

X _____            X _____
                              Date                                                              Date

X _____            X _____
                              Date                                                              Date

**UNIFORM TRANSFERS TO MINORS ACT/UNIFORM GIFTS TO MINORS ACT DESIGNATION.**   Under the provision of the Uniform Transfers to Minors Act/Uniform Gift to Minor Act as adopted by this state, an account has been opened by _____, serving as Custodian under the Act for the following Minor:

Name:                                                    Date of Birth:
Address:

## RESOLUTION OF CORPORATIONS, PARTNERSHIPS & LLCS

DATE: 02/11/2021

| TO: NAME AND ADDRESS OF FINANCIAL INSTITUTION | FROM: NAME AND ADDRESS OF ENTITY |
|---|---|
| OptimumBank | TAILORED FUND CAP LLC DBA |
| 2929 E COMMERCIAL BLVD | MONTHLY FEE |
| SUITE 101 | |
| Fort Lauderdale, FL 33308-4041 | |
| (954)900-2850 | 1274 49TH ST # 197 |
| | BROOKLYN, NY 11219-0000 |

Use this *Resolution of Corporations, Partnerships and LLCs* to document the granting of Deposit authority by the governing body of the business entity to specified individuals. This form may be used by legal entities, such as corporations, professional corporations, general partnerships, limited partnerships, limited liability partnerships, and limited liability companies.

Words, numbers or phrases preceded by a ☐ are applicable only when marked, i.e., ☒ .

I certify that I am a duly and legally elected/appointed, qualified representative and keeper of the records ("Designated Representative") of/for the legal entity ("Entity") named above, that the following is a true and complete copy of a Resolution duly adopted at a meeting of the governing body of the Entity held on the   11TH   day of   FEBRUARY 2021   in accordance with law and the governing documents of the Entity, and that my delivery of this Resolution to Financial Institution certifies to Financial Institution that such Resolution is still in full force and effect.

This is a ☒ For Profit   ☐ Nonprofit   Entity.

IT IS RESOLVED THAT:

The following described officers, members, managers, partners, employees, designated parties or agents of the Entity referred to below as "Authorized Signers", whose names and signatures appear below, are authorized for and on behalf of the Entity to have the following indicated powers as contained in this Resolution:

DEPOSITORY ACCOUNT. Perform the following for the account(s) indicated on Page 2, in the name of the Entity, subject to any terms and conditions governing the account(s), such as:

**Authorized Signers**

1. Open and maintain the account(s); _____

2. Make deposits to the account(s); _____

3. Endorse for negotiation, negotiate, and receive the proceeds of any negotiable Instrument, check, draft, or order for the payment of money payable to or belonging to the Entity by writing, stamp, or other means permitted by this Resolution without the designation of the person endorsing; _____

4. Make withdrawals from the account(s) in any manner permitted by the account(s); _____

5. Transfer funds from the account(s) in Financial Institution to any account whether or not held at this Financial Institution and whether or not held by this Entity; _____

6. Transfer funds to the account(s) in Financial Institution from any account whether or not held at this Financial Institution and whether or not held by this Entity; _____

7. Approve, endorse, guarantee, and identify the endorsement of any payee or any endorser of any negotiable Instrument, check, draft or order for the payment of money whether drawn by the Entity or anyone else and guarantee the payment of any negotiable Instrument, check, draft, or order for the payment of money; and _____

8. Delegate to others the authority to approve, endorse, guarantee, and identify the endorsement of any payee or endorser on any negotiable Instrument, check, draft, or order for the payment of money and to guarantee the payment of any such negotiable Instrument, check, draft, or order for the payment of money. _____

9. All of the above. ___ALL___

SAFE DEPOSIT BOX. Lease a Safe Deposit Box(es) with Financial Institution, make inspections of, deposits to and removals from Box(es), and exercise all rights and be subject to all responsibilities under the Lease. _____

NIGHT DEPOSITORY. Enter into a Night Depository Agreement with Financial Institution and exercise all rights and be subject to all responsibilities under the Agreement. _____

LOCK BOX. Enter into a Lock Box Agreement with Financial Institution and exercise all rights and be subject to all responsibilities under the Agreement. _____

DEBIT CARD/ATM CARD. Apply for, receive and utilize debit cards, automated teller machine cards, or other access devices to exercise those powers authorized by this Resolution or other Resolutions then in effect. _____

CASH MANAGEMENT. Enter into a Cash Management Agreement with Financial Institution, and exercise all rights and be subject to all responsibilities under the Agreement. _____

OTHER AUTHORITY- describe: _____

Further, this Resolution continues on Page 2 of this document, and all of the power and authority granted are incorporated in this Resolution.

© Copyright Compliance Systems, Inc. 2003-2012 ITEM 5169L1 (03/2012) Page 1 of 2                    www.compliancesystems.com

RESOLUTION APPLIES TO (check all that apply):  [X] ALL ACCOUNTS     [ ] SAFE DEPOSIT BOX NUMBER(S):
[X] ALL FUTURE ACCOUNTS     [ ] SPECIFIC ACCOUNTS - NUMBER(S):

| NAME AND TITLE | SIGNATURE | LIMITATIONS |
|---|---|---|
| 1. YOSEF YEHUDA BREZEL | X | COUNTERSIGNERS: |
| 2. | X | COUNTERSIGNERS: |
| 3. | X | COUNTERSIGNERS: |
| 4. | X | COUNTERSIGNERS: |
| 5. | X | COUNTERSIGNERS: |
| 6. | X | COUNTERSIGNERS: |
| 7. | X | COUNTERSIGNERS: |
| 8. | X | COUNTERSIGNERS: |

**SIGNATURE CERTIFICATION.** I certify that the foregoing are names, titles, and genuine signatures of the current Authorized Signers of the Entity authorized by the above Resolution.
IN WITNESS WHEREOF, I have subscribed my name as Designated Representative of the Entity on the date shown below.

02/11/2021
DATE

DESIGNATED REPRESENTATIVE:
YOSEF YEHUDA BREZEL

**IT IS FURTHER RESOLVED AS FOLLOWS, the Entity certifies to the Financial Institution that:**

- Unless specifically designated, each of the Authorized Signers whose signature appears above may sign without the other(s);

- (Select if applicable) [ ] **FACSIMILE SIGNATURES.** The Financial Institution shall be entitled to honor and charge the Entity for all such negotiable instruments, checks, drafts, or other orders for payment of money drawn in the name of the Entity, on the indicated account(s), including an order for electronic debit, whether by electronic tape or otherwise, regardless of by whom or by what means a facsimile signature or other non-manual signature (collectively, "Facsimile Signatures") may have been affixed, or electronically communicated, if such Facsimile Signatures resemble the specimens duly certified to or filed with the Financial Institution for any of the named Authorized Signers, regardless of whether any misuse is with or without the negligence of the Entity. The Specimen Facsimile Signature Exhibit, when attached, is incorporated into and is an integral part of this Resolution. The Entity agrees that the duty of maintaining the security of any such Facsimile Signatures or device by which they are affixed is solely that of the Entity. Your authorization notwithstanding, Financial Institution is not obligated to accept or pay any items bearing Facsimile Signatures;

- As used herein, any pronouns relative to the signers for the Entity shall include the masculine, feminine, and neutral gender, and the singular and plural number, wherever the context so admits or requires;

- All items deposited with prior endorsements are guaranteed by the Entity;

- All items not clearly endorsed by the Entity may be returned to the Entity by the Financial Institution or, alternatively, the Financial Institution is granted a power of attorney in relation to any such item to endorse any such item on behalf of the Entity in order to facilitate collection;

- Financial Institution shall have no liability for any delay in the presentment or return of any negotiable instrument or other order for the payment of money, that is not properly endorsed;

- Financial Institution is directed and authorized to act upon and honor any withdrawal or transfer instructions issued and to honor, pay and charge to any depository account or accounts of the Entity, all checks or orders for the payment of money so drawn when signed consistent with this Resolution without inquiring as to the disposition of the proceeds or the circumstances surrounding the issuance of the check or the order for the payment of the money involved, whether such checks or orders for the payment of money are payable to the order of, or endorsed or negotiated by any one or more of the Authorized Signers signing them or such party in their individual capacities or not, and whether they are deposited to the individual credit of or tendered in payment of the individual obligation of any one or more of the Authorized Signers signing them or of any other such party or not;

- Financial Institution shall be indemnified for any claims, expenses or losses resulting from the honoring of any signature certified or refusing to honor any signature not so certified; and

- Notwithstanding any modification or termination of the power of any Authorized Signer of the Entity, this Resolution shall remain in full force and bind the Entity and its legal representatives, successors, assignees, receivers, trustees or assigns until written notice to the contrary signed by, or on behalf of, the Entity shall have been received by the Financial Institution, and that receipt of such notice shall not affect any action taken by the Financial Institution prior to receipt of such notice in reliance on this Resolution.

Additional comments or instructions:

# *OptimumBank*

## BENEFICIAL OWNERSHIP CERTIFICATION FORM

### WHAT IS THIS FORM?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e. the beneficial owners) helps law enforcement investigate and prosecute these crimes.

### WHO HAS TO COMPLETE THIS FORM?

This form must be completed by the person opening a deposit or loan account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form a legal entity includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a Non-U.S. country. Legal entity does not include sole proprietorships, unincorporated associations or natural persons opening accounts on their own behalf.

### WHAT INFORMATION DO I HAVE TO PROVIDE?

This form requires you to provide the name, address, date of birth and Social Security Number (or passport number or other similar information, in the case of Non-U.S. persons) for the following individuals (i.e. the beneficial owners):

    (i)    Each individual, if any, who owns, directly or indirectly, 25% or more of the equity interests of the legal entity customer (e.g. each natural person who owns 25% or more of the shares of the corporation; &

    (ii)    An individual with significant responsibility for managing the legal entity customer (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer)

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under Section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under Section (i), you must provide the identifying information of one individual under Section (ii). It is possible that in some circumstances the same individual may be identified in both sections (e.g. the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual under Section (i) and up to five individuals (i.e. one individual under Section (ii) and four 25% equity holders under Section (i)).

The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

10/2017

1 | P a g e

JAN 5 – 2021

# OptimumBank

## BENEFICIAL OWNERSHIP CERTIFICATION FORM

Persons opening a deposit or loan account on behalf of a legal entity must provide the following information[1].

| Name of Person Opening Account | Yosef Brezel |
|---|---|
| Name, Type and Address of Legal Entity for which the Account is being Opened | TAILORED FUND CAP LLC 1274 49th St #197 |

Please provide the following information[2] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25% or more in the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification numbers | Ownership % |
|---|---|---|---|---|---|
| Yosef Brezel | 12/21/1987 | 1009 E 2ND Street, Brooklyn / NY / 11230 | 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 | | 100% |

*...Continued on the following page*

**IMPORTANT:** If there is a legal entity that owns 25% or more of this legal entity customer, please complete the **Beneficial Ownership Addendum** located on Page 4.

---

[1] Modeled from FinCEN Appendix A, Certification Regarding Beneficial Owners of Legal Entity Customers.
[2] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[3] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

10/2017

JAN 5  202

# OPTIMUMBANK

## BENEFICIAL OWNERSHIP CERTIFICATION FORM

Please provide the following information[4] for **one** individual with significant responsibility for managing the legal entity listed above, such as:

☒ An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer); OR.

☐ Any other individual who regularly performs similar functions.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number. | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number |
|------|---------------|---------|-------------------------------------------|---------------------------------------------------------------------------------------------------------|
| Yosef Brezel | 12/24/1967 | 1009 E 2ND Street, Brooklyn / NY / 11230 | 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 | |

I, Yosef Brezel _____, hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

_____    JAN 5 - 2021 _____
Signature                                        Date

Legal Entity Identifier: _____ (Optional)

---

[4] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[5] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

10/2017                                                                                                3 | P a g e



# OPTIMUMBANK

## BENEFICIAL OWNERSHIP ADDENDUM

This addendum should be used when there is legal entity or entities that owns 25% or more of the legal entity customer opening this account.

| Legal Entity Name[6] | |
|---|---|
| % Ownership in Customer Opening the Account | |

Please provide the following information[7] for each individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25% or more in the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar Identification number[8] | Ownership % |
|---|---|---|---|---|---|
| | | | | | |

Are any of the individuals listed above also owners in the legal entity opening the account?

|  | YES | NO |
|---|---|---|
|  | ☐ | ☐ |

If you answered "YES", please comment on whether any of the individuals listed above own, in the aggregate[9], 25% or more of the legal entity opening the account.

---

[6] Name of the legal entity that has ownership in the customer seeking to open the account.
[7] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[8] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.
[9] Notate whether any individual listed on Page 4 is also a minority owner in the company listed on Page 2. If so, aggregate their ownership interests to determine whether any of those individuals own 25% or more of the entity listed on Page 2 (i.e. indirectly).

10/2017

4 | P a g e

JAN 5 - 2021

# CERTIFICATE OF ASSUMED NAME

## OF

# TAILORED FUND CAP LLC

Pursuant to General Business Law § 130

Filed by: File Right LLC

5314 16 Avenue, Suite 139

Brooklyn, NY 11204

**Account number - DH**

**Client Reference # TFCL**

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on December 16, 2020.

Brendan C. Hughes
Executive Deputy Secretary of State

Rev. 10/20

**CERTIFICATE OF ASSUMED NAME**

**OF**

**TAILORED FUND CAP LLC**

Pursuant to General Business Law § 130

FIRST:          The name of the Limited Liability Company is:    TAILORED FUND CAP LLC

SECOND:      This Limited Liability Company is formed under the Limited Liability Company Law.

THIRD:          The assumed name is:    MONTHLY FEE

FOURTH:      The principal place of business in the State of New York is

1274 49TH STREET, SUITE 197

BROOKLYN, NY 11219

FIFTH:          The County, within this state, in which business will be conducted under the assumed name, is          KINGS

SIXTH:          The address where business will be carried on or transacted under the assumed name is

1274 49TH STREET, SUITE 197

BROOKLYN, NY 11219

**/s/Yosef Brezel**

Yosef Brezel, Member

N.Y.S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

ONLINE FILING RECEIPT

==================================================================

ENTITY NAME: TAILORED FUND CAP LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)          COUNTY: KING

==================================================================

FILED:06/24/2019 DURATION:********** CASH#:190624010186 FILE#:190624010186
                         DOS ID:5576216

      FILER:                                          EXIST DATE
      ------                                          ----------
      MARSHA SIHA                                     06/24/2019
      17350 STATE HWY 249
      #220
      HOUSTON, TX 77064

      ADDRESS FOR PROCESS:
      -------------------
      LEGALINC CORPORATE SERVICES INC.
      1967 WEHRLE DRIVE
      SUITE 1 #086
      BUFFALO, NY 14221

      REGISTERED AGENT:
      ----------------
      LEGALINC CORPORATE SERVICES INC.
      1967 WEHRLE DRIVE
      SUITE 1 #086
      BUFFALO, NY 14221



      The limited liability company is required to file a Biennial Statement with the
      Department of State every two years pursuant to Limited Liability Company Law
      Section 301. Notification that the Biennial Statement is due will only be made via
      email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
      receive an email notification when the Biennial Statement is due.

==================================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **
SERVICE CODE: 00

FEE:         205.00                    PAYMENTS      205.00
             ------                                  ------
FILING:      200.00                    CHARGE        205.00
TAX:           0.00                    DRAWDOWN        0.00
PLAIN COPY:    5.00
CERT COPY:     0.00
CERT OF EXIST: 0.00
==================================================================
                                          DOS-1025 (04/2007)

Authentication Number: 1906240322  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov

# ARTICLES OF ORGANIZATION
## OF
## TAILORED FUND CAP LLC
### Under Section 203 of the Limited Liability Company Law

THE UNDERSIGNED, being a natural person of at least eighteen (18) years of age, and acting as the organizer of the limited liability company hereby being formed under Section 203 of the Limited Liability Company Law of the State of New York certifies that:

**FIRST:** The name of the limited liability company is:

**TAILORED FUND CAP LLC**

**SECOND:** To engage in any lawful act or activity within the purposes for which limited liability companies may be organized pursuant to Limited Liability Company Law provided that the limited liability company is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency, or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

LEGALINC CORPORATE SERVICES INC.
1967 WEHRLE DRIVE
SUITE 1 #086
BUFFALO, NY 14221

**FIFTH:** The limited liability company designates the following as its registered agent upon whom process against it may be served within the State of New York is:

LEGALINC CORPORATE SERVICES INC.
1967 WEHRLE DRIVE
SUITE 1 #086
BUFFALO, NY 14221

**SIXTH:** The existence of the limited liability company shall begin upon filing of these Articles of Organization with the Department of State.

**SEVENTH:** The limited liability company shall have a perpetual existence.

**EIGHTH:** The limited liability company shall defend, indemnify and hold harmless all members, managers, and former members and managers of the limited liability company against expenses (including attorney's fees, judgments, fines, and amounts paid in settlement) incurred in connection with any claims, causes of action, demands, damages, liabilities of the limited liability company, and any pending or threatened action, suit, or proceeding. Such indemnification shall be made to the fullest extent permitted by the laws of the State of New York, provided that such acts or omissions which gives rise to the cause of action or proceedings occurred while the Member or Manager was in performance of his or her duties for the limited liability company and was not as a result of his or her fraud, gross negligence, willful misconduct or a wrongful taking. The indemnification provided herein shall inure to the benefit of successors, assigns, heirs, executors, and the administrators of any such person.

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

MARSHA SIHA,   (signature)
_____
MARSHA SIHA , ORGANIZER
17350 STATE HWY 249
#220
HOUSTON, TX 77064


Filed by:
MARSHA SIHA
17350 STATE HWY 249
#220
HOUSTON, TX 77064


**FILED WITH THE NYS DEPARTMENT OF STATE ON: 06/24/2019**
**FILE NUMBER: 190624010186; DOS ID: 5576216**

Page 2 of 2

# TAILORED FUND CAP LLC

### REVENUE PURCHASE AGREEMENT

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated____between TAILORED FUND CAP LLC ("TFC") the Merchant(s) listed below ("Merchant") and the Individual(s) listed below ("Guarantor")

### MERCHANT INFORMATION

Merchant's Legal Name:_____

_____

_____

D/B/A:_____

State of Incorporation / Organization:_____

Type of Entity_____

Physical Address:_____

City:_____  State:_____  Zip:_____  Business Phone:_____

Guarantor(s) Name:_____  Cellphone Number:_____  Email Address:_____

Mailing Address:_____  City:_____  State:_____  Zip:_____

Purchase Price: $_____   Purchased Percent_____%   Purchased Amount: $_____

Payment Frequency:_____   Remittance $_____

In consideration of payment by TFC to Merchant of the Purchase Price set forth above, Merchant hereby sells, assigns and transfers to TFC (making TFC the absolute owner) the Purchased Percentage of all of Merchant's payments, receipts, settlements and funds paid to or received by or for the account of Merchant from time to time on and after the date hereof in payment or settlement of Merchant's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the Purchased Amount has been delivered by or on behalf of Merchant to TFC.

Merchant is selling a portion of a future revenue stream to TFC at a discount, and is not borrowing money from TFC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by TFC. The Remittance is a good faith estimate of TFC's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. TFC is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and TFC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give TFC a reasonable and fair opportunity to receive the benefit of its bargain. TFC acknowledges that it may never receive the Purchased Amount if the Merchant does not generate sufficient revenue. Merchant and Guarantor(s)(s) are only guaranteeing their performance of the terms of this Revenue Purchase Agreement and are not guaranteeing the payment of the Purchased Amount. The Initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

TFC will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, TFC (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as TFC receives payment in full of the Purchased Amount. Merchant hereby authorizes TFC to ACH debit the agreed Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. Merchant agrees not to make or cause debits to the Account (other than in favor of TFC) at any time that would cause the balance therein on any business day to be insufficient to fund payment in full of the agreed Remittance. The Account may not be used for any personal, family or household purposes. Merchant will provide TFC with all required access codes and monthly bank statements regarding the Account so that TFC may monitor the Account. TFC payment of the Purchase Price shall be deemed the acceptance and performance by TFC of this Agreement. Merchant understands that it is responsible for ensuring that the agreed Remittance to be debited by TFC remains in the Account and will be held responsible for any fees incurred by TFC resulting from a rejected ACH attempt or an Event of Default. TFC is not responsible for any overdrafts or rejected transactions that may result from TFC's ACH debiting the agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between TFC and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1) By: _____              _____
                            (Print Name and Title)                               (Signature)

FOR THE MERCHANT (#2) By: _____              _____
                            (Print Name and Title)                               (Signature)

BY GUARANTOR(S) (#1) By: _____              _____
                            (Print Name and Title)                               (Signature)

BY GUARANTOR(S) (#2) By: _____              _____
                            (Print Name and Title)                               (Signature)

1

## MERCHANT AGREEMENT TERMS AND CONDITIONS

**1**      **TERMS OF ENROLLMENT IN PROGRAM**

**1.1**      **Merchant Deposit Agreement and Payment.** Merchant shall (A) execute an agreement acceptable to TFC with a Bank acceptable to TFC to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to TFC with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide TFC and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes TFC and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to TFC for the receipts as specified herein and to pay such amounts to TFC. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by TFC or not. This additional authorization is not a waiver of TFC's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account that TFC did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of TFC.

**1.2**      **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by TFC as per the terms of this Agreement.

**1.3**      **Reconciliation.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a retroactive reconciliation of the total Remittance Amount. All requests hereunder must be in writing to Reconciliations@businessfundcorp.com Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. TFC retains the right the request additional reasonable documentation including without limitation bank login or access to view Merchant's accounts using third party software, and Merchant's refusal to provide access shall be a breach of this Agreement and TFC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by TFC within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by TFC shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with TFC's right and ability to debit Merchant's Account while the request is pending or to unilaterally modify the Remittance Amount, in any method other than the ones listed in this Agreement.

**1.4**      **Adjustments to the Remittance.** As long an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice to TFC to request a decrease in the Remittance, should they experience a decrease in its Future Receipts. All requests hereunder must be in writing to Reconciliations@businessfundcorp.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. TFC retains the right the request additional reasonable documentation including without limitation bank login or 3rd party software access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and TFC shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Merchant shall provide TFC with viewing access to their bank account as well as all information reasonably requested by TFC to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.5**      **Financial Condition.** Merchant and Guarantor(s)(s) (as hereinafter defined and limited) authorize TFC and its agents to investigate their financial responsibility and history, and will provide to TFC any authorizations, bank or financial statements, tax returns, etc., as TFC requests in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. TFC is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6**      **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide TFC with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide TFC with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from TFC.

**1.7**      **Indemnification.** Merchant and Guarantor(s)(s) hereby jointly and severally indemnify and hold harmless TFC and each Processor, their respective officers, directors, agents and representatives, and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by any such indemnitee as a direct or indirect result of (a) claims asserted by TFC for monies owed to TFC from Merchant and (b) actions taken by indemnitee in reliance upon any fraudulent, misleading or deceptive information or instructions provided by TFC.

**1.8**      **No Liability.** In no event will TFC be liable for any claims asserted by Merchant or Guarantor(s)s under any legal or equitable theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s)(s). In the event these claims are nonetheless raised, Merchant and Guarantor(s)s will be jointly liable for all of TFC's attorney's fees and expenses resulting therefrom.

**1.9**      **Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, TFC, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10**      **Sale of Receipts.** Merchant and TFC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from TFC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. TFC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Merchant acknowledges that TFC's share of Receipts collected are being held by Merchant in trust and as the sole property of TFC until they are remitted to TFC. Payments made to TFC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. By this Agreement, Merchant transfers to TFC full and complete ownership of the Purchased Amount and Merchant retains no legal or equitable interest therein. TFC hereby appoints Merchant, and Merchant accepts appointment, as servicer for and on behalf of TFC for the purpose of collecting and delivering Receipts to TFC as required by this Agreement until TFC has received the Receipts Purchased Amount, and Merchant agrees that all such Receipts shall be received and held in trust for the benefit of SPFL for purposes of carrying out the terms of this Agreement. Merchant agrees that it will treat the amounts received and the Purchased Receipts delivered to TFC under this Agreement in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that TFC is entitled to audit Merchant's accounting records upon reasonable notice in order to verify compliance. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that TFC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and TFC shall promptly refund to Merchant any interest received by TFC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that TFC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11**      **Power of Attorney.** Merchant irrevocably appoints TFC and its agents and representatives, as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to TFC from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to TFC, and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s)(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which TFC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

**1.12**      **Protections against Default.** The following Protections 1 through 8 may be invoked by TFC immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the TFC electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to TFC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts or ceases the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of TFC, and (ii) the written agreement of any TFC or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to TFC; (e) Merchant takes any action, fails

2

to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor, (f) Merchant fails to provide TFC with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from TFC, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to TFC at law, in equity or otherwise pursuant to this Agreement.

Protection 1. The full uncollected Purchased Amount plus all fees (including attorney's fees and costs of collection in the amount of 30% of the Purchased Amount then outstanding due under this Agreement and the attached Security Agreement become due and payable in full immediately.

Protection 2. TFC may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

Protection 3. Merchant hereby authorizes TFC to execute in the name of the Merchant a Confession of Judgment in favor of TFC pursuant to the terms of the Confession of Judgment. Upon an Event of Default, TFC may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

Protection 4. TFC may enforce its security interest in the Collateral including sending demand letters to account debtors and credit card processors.

Protection 5. TFC may exercise any and all rights and remedies of a secured party under Uniform Commercial Code Article 9

Protection 6. TFC may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if TFC recovers a judgment against Merchant, Merchant shall be liable for all of TFC's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

Protection 7. This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to TFC. Upon breach of any provision in this Agreement, TFC may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. TFC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to TFC.

Protection 8. TFC may debit Merchant's depository accounts wherever situated in such amounts as determined by TFC in its sole discretion for purposes of collecting funds for application to the unrealized Purchased Amount and other amounts owed by Merchant to TFC by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to TFC.

1.13 Protection of Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor(s), in respect of himself or herself personally, authorizes TFC to disclose information concerning Merchant's and each Owner's and each Guarantor(s)'s credit standing (including credit bureau reports that TFC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor(s) hereby and each waives to the maximum extent permitted by law any claim for damages against TFC or any of its affiliates relating to any (i)investigation undertaken by or on behalf of TFC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.14 Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by TFC, including this Agreement and any other TFC documents (collectively, "Confidential Information") are proprietary and confidential information of TFC. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of TFC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles TFC to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.15 Publicity. Merchant and each of Merchant's Owners and all Guarantor(s)s hereto hereby authorizes TFC to use its, his or her name in listings of clients and in advertising and marketing materials.

1.16 D/B/A's. Merchant hereby acknowledges and agrees that TFC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between TFC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

2        REPRESENTATIONS, WARRANTIES AND COVENANTS
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1        Financial Condition and Financial Information. Merchant's and Guarantor(s)s' bank and financial statements, copies of which have been furnished to TFC, and future statements which will be furnished hereafter at the discretion of TFC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantor(s)s have a continuing, affirmative obligation to advise TFC of any material adverse change in their financial condition, operation or ownership. TFC may request statements at any time during the performance of this Agreement and the Merchant and Guarantor(s)s shall provide them to TFC within five business days after request from TFC. Merchant's or Guarantor(s)s' failure to do so is a material breach of this Agreement.

2.2        Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3        Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4        Use of Funds. Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5        Electronic Check Processing Agreement. Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without TFC's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6        Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and TFC, nor shall Merchant change any of its places of business without prior written consent by TFC.

2.7        Daily Batch Out. Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

2.8        Estoppel Certificate. Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from TFC to Merchant, execute, acknowledge and deliver to TFC and/or to any other person, firm or corporation specified by TFC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9        No Bankruptcy. As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection pursuant to the United States Bankruptcy Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10        Unencumbered Receipts. Merchant has good, complete, unencumbered and marketable title to all Receipts and all collateral in which TFC has been granted a security interest under the Security Agreement, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever other than in favor of TFC or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of TFC.

2.11        Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or householdpurposes.

2.12        Defaults under Other Contracts. Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person orentity.

2.13        Good Faith. Merchant and Guarantor(s)s hereby affirm that Merchant is receiving the Purchase Price and selling TFC the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business

3        EVENTS OF DEFAULT AND REMEDIES
3.1        Events of Default. The occurrence of any of the following events shall constitute an "Event of Default"hereunder:
(a)        Merchant or Guarantor(s) shall violate any term or covenant in this Agreement;
(b)        Any representation or warranty by Merchant or Guarantor(s) in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;
(c)        the sending of notice of termination by Merchant or verbally notifying TFC of its intent to breach thisAgreement;
(d)        the Merchant fails to give TFC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored

3

by Merchant's bank, the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(e)    Merchant fails to provide its bank statements, and/or month to date bank activity, and/or accounts receivable reports, and/or bank login information within two (2) business days of a request by TFC;

(f)    Merchant shall voluntarily transfer or sell all or substantially all its assets.

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant.

(h)    Merchant shall use multiple depository accounts without the prior written consent of TFC or takes any other action that intentionally interferes with or prevents TFC from receiving the Purchased Amount in accordance with the terms of this Agreement.

(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)    Merchant shall change its depositing account without the prior written consent of TFC; or

(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of TFC

(l)    Merchant's bank returns a code other than NSF cutting TFC from its collections

(m)    Merchant or any Owner/Guarantor(s), directly or indirectly, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, which operates a business similar to or competitive with that of Merchant.

(n)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with TFC.

3.2    Limited Personal Guaranty Upon the occurrence of an Event of Default, TFC will enforce its rights against the Guarantor(s) of this transaction. Said Guarantor(s) will be jointly and severally liable to TFC for all of TFC's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

3.3    Remedies. Upon the occurrence of an Event of Default occurs and is not waived pursuant to Section 4.4. hereof, TFC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of TFC in connection with this Agreement may be exercised at any time by TFC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.4    Attorney's Fees. Upon the occurrence of an Event of Default, and TFC retains an attorney or law firm to enforce this Agreement, Merchant and Guarantor(s) agree that a fee equal to 30% of the Remaining Balance (purchased amount less amount remitted by Merchant) ("Attorney's Fees") shall be immediately assessed Merchant and Guarantor(s) agree that the calculation for Attorney's Fees is reasonable.

3.5    Costs. Merchant shall pay to TFC all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of TFC's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

3.6    Required Notifications. Merchant is required to give TFC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give TFC seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

4    MISCELLANEOUS
4.1    Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by TFC.

4.2    Assignment. TFC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3    Notices. All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to TFC shall become effective only upon receipt by TFC. Notices to Merchant shall become effective three days after mailing.

4.4    Waiver Remedies. No failure on the part of TFC to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5    Binding Effect; Governing Law, Venue and Jurisdiction. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums attachments, exhibits, and other documents relating to this Agreement in any way, shall be binding upon and inure to the benefit of Merchant and Guarantor(s) on the one hand, and TFC and their respective successors and assigns, except that Merchant and Guarantor(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of TFC which consent may be withheld in TFC's sole discretion. TFC reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if TFC so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). All Parties to this Agreement, including but not limited to, Merchant, Guarantor(s), Corporate Guarantor(s) Merchant and Guarantor(s) that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant and Guarantor(s) waives any right to oppose any motion or application made by TFC to transfer such proceeding to an Acceptable Forum. Merchant and Guarantor(s) hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by TFC by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

4.6    Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7    Interpretation. All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto asdrafter.

4.8    Severability. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9    Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty herein embody the entire agreement between Merchant Guarantor(s) and Corporate Guarantor(s)s and TFC and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10    JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREB THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12    Facsimile & Digital Acceptance. Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13    Hefer Iska. All of our business are done in accordance to the "HI-BP" which can be reviewed at the following link "shorturl.at/djBIR"

4

Initial:_____

## SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Merchant's Legal Name:_____

D/B/A:_____ Federal ID#:_____

Physical Address:_____ City:_____ State:_____ Zip:_____

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. To secure Merchant's obligations under the Revenue Purchase Agreement to make available or deliver Purchased Amount to TFC and TFC's right to realize the Purchased Amount, as and to the extent required by the terms of the Revenue Purchase Agreement, and performance of and compliance by Merchant with its other undertakings and agreements herein, Merchant and Guarantor(s)(s) grants to TFC a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s)(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s)(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to TFC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets") Merchant agrees to provide other security to TFC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover TFC's entitlements under this Agreement, TFC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of TFC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, TFC or an affiliate of TFC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

In the event Merchant, any of its officers or directors or any Owner/Guarantor(s), during the term of the Revenue Purchase Agreement or while Merchant remains liable to TFC for any obligations under the Revenue Purchase Agreement, directly or indirectly, including acting by, through or in conjunction with any other person, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, whether corporate, partnership, limited liability company or otherwise, which operates a business similar to or competitive with that of Merchant, such entity shall be deemed to have expressly assumed the obligations due TFC under the Revenue Purchase Agreement. With respect to any such entity, TFC shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity as debtor, an initial UCC financing statement and to have it filed with any and all appropriate UCC filing offices. TFC shall be held harmless by Merchant and each Owner/Guarantor(s) and be relieved of any liability as a result of any such authentication and filing of any such financing Statement or the resulting perfection of its ownership rights or security interests in such entity's assets. TFC shall have the right to notify such entity's payors or account debtor (as defined by the UCC) of TFC's rights, including without limitation, TFC's right to collect all accounts, and to notify any payment card processor or creditor of such entity that TFC has such rights in such entity's assets. Merchant also agrees that, at the TFC's discretion, TFC may choose to amend any existing financing statement to include any such newly formed entity as debtor.

This security interest may be exercised by TFC without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. TFC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, TFC has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, TFC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from TFC written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor(s) (s) agree(s) that this is a contract of recoupment and TFC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s)(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by TFC. Merchant and Guarantor(s)(s) agree(s) to execute and deliver to TFC such instruments and documents TFC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. TFC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s)(s) name.

Merchant and Guarantor(s)(s) each acknowledge and agree that any security interest granted to TFC under any other agreement between Merchant or Guarantor(s)(s) and TFC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s)(s) each agrees to execute any documents or take any action in connection with this Agreement as TFC deems necessary to perfect or maintain TFC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s)(s) each hereby authorizes TFC to file any financing statements deemed necessary by TFC to perfect or maintain TFC's security interest. Merchant and Guarantor(s)(s) shall be liable for, and TFC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by TFC in protecting, preserving and enforcing TFC's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s)(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** TFC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, TFC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that TFC may enter into an agreement with Merchant's landlord giving TFC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, TFC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to TFC, whether by acceleration or otherwise.

5

Initial:_____

## GUARANTY OF PERFORMANCE

As an additional inducement for TFC to enter into the Revenue Purchase Agreement, the undersigned Guarantor(s)(s) hereby provides TFC with this Guaranty. Guarantor(s)(s) will not be personally liable for any amount due under the Revenue Purchase Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of the Revenue Purchase Agreement. Each Guarantor(s) shall be jointly and severally liable for all amounts owed to TFC in the Event of Default. Guarantor(s)(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement including the Merchant's full and timely delivery of the Purchased Amount pursuant to (and limited by) the Revenue Purchase Agreement, in each case as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor(s)'s obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor(s) Waivers. In the event of a breach of the above, TFC may seek recovery from Guarantor(s)s for all of TFC's losses and damages by enforcement of TFC's rights under this Agreement without first seeking to obtain payment from Merchant, any other Guarantor(s), or any Collateral or Additional Collateral TFC may hold pursuant to this Agreement or any other guaranty. In addition, Section 4.5, 4.10 and 4.11 are expressly reiterated in the Security Agreement and Guaranty herein. TFC is not required to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations, (iv) TFC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to TFC. In addition, TFC may take any of the following actions without releasing Guarantor(s) from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to TFC; (ii) release Merchant from its obligations to TFC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor(s) to obtain reimbursement for payment under the Merchant Agreement and this Agreement are paid in full, Guarantor(s) shall not seek reimbursement from Merchant or any other Guarantor(s) for any amounts paid by it under this Agreement. Guarantor(s) permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other Guarantor(s), or any collateral provided by Merchant or any other Guarantor(s), for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that TFC must return any amount paid by Merchant or any other Guarantor(s) of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor(s)'s obligations under this Agreement shall include that amount.

Guarantor(s) Acknowledgement. Guarantor(s) acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

This Security Agreement and Guaranty and Guaranty of Performance shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if TFC so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant, Guarantor and Corporate Guarantors waives any right to oppose any motion or application made by TFC to transfer such proceeding to an Acceptable Forum.

The Merchant, Guarantor(s) and Corporate Guarantor(s) acknowledge that they have read Paragraph 4.5 of this Agreement in its entirety and understand that they are waiving their right to Service of Process by traditional manners and will accept process of any Summons and Complaint or other legal process by certified mail return receipt requested to the Mailing Address on Page 1 of this Agreement.

FOR ALL MERCHANT(S) (#1) By: _____    _____
                                        (Print Name and Title)                                           (Signature)

SSN# _____

FOR ALL MERCHANT(S) (#2) By: _____    _____
                                        (Print Name and Title)                                           (Signature)

SSN# _____

GUARANTOR(S) (#1) By: _____    _____
                                        (Print Name and Title)                                           (Signature)

SSN# _____

GUARANTOR(S) (#2) By: _____    _____
                                        (Print Name and Title)                                           (Signature)

SSN# _____

6

PROPERTY OF TAILORED FUND CAP LLC                                    Initial:_____

<u>**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT), DIRECT PAYMENTS (ACH DEBITS), AND CHECK DEBIT**</u>

Merchant:_____
(Merchant's Legal Name)

Merchant Agreement: Merchant Agreement between CSB and Merchant, dated as of: _____

Designated Checking Account:

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. This Authorization Agreement for Direct Deposit (ACH Credit), Direct Payments (ACH Debits), and Check Debit is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Merchant authorizes CSB to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. By signing below, Merchant also authorizes CSB to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits or to initiate a Check Debit to the Designated Checking Account, as follows:

Bank Name:_____     Branch:_____

Federal ID#:_____

ABA: Routing:_____     DDA: Account:_____

Bank Name:_____     Branch:_____

Federal ID#:_____

ABA: Routing:_____     DDA: Account:_____

In the Amount of: $ _____

(Or) Percentage of each Banking Deposit: _____%

On the Following Days:_____

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that CSB may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes CSB to initiate ACH entries to correct any erroneous payment transaction.

MISCELLANEOUS. CSB is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated  Checking Account must comply with applicable  provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until CSB has received written notification from Merchant at the address set forth below at least 5 banking days prior to its termination to afford CSB a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all  ACH entries initiated in accordance with this Authorization Agreement.

Merchant agrees to be bound by the ACH Rules as defined by the National ACH Association (NACHA). Merchant understands that this authorization is to remain in full force and effect until CSB has received written notification from me of its termination at least five (5) business days prior to the payment due date. Merchant further understands that canceling their ACH authorization does not relieve them of the responsibility of paying account in  full, and that if Merchant cancels or revokes this authorization before any remaining debt is paid in full, the CSB may take additional actions including legal actions to secure the debt.

Merchant:_____     Print Name:_____
(Merchant's Legal Name)

Title:_____     X_____
(Signature)

Date:_____.
(Month) (Day) (Year)

## APPENDIX A – THE FEE STRUCTURE:

A.  Underwriting Fee: $          to cover Underwriting and relates expenses.

B.  UCC Filing Fee: $499.00 and are not an automated process, requiring us to charge this fee to cover costs.

C.  NSF Fee Standard: $50.00 (each) up to TWO TIMES ONLY before a default is declared.

D.  Bank Change Fee: $50.00 When Merchant requires a change of Bank Account to be debited, requiring us to adjust our system.

E.  Blocked ACH Payment: $5,000.00 This fee is applied when Merchant directs the bank to BLOCK our ACH Debits. Blocking ACH Debits will place Merchant's account in default.

F.  Default Fee: Shall be applied to Merchant's account in the event that Merchant defaults under the terms of the Merchant Agreement.

G.  ACH Processing Fee: $249.00 (or 10% of the contract amount, depending on size of advance) ACH's are labor intensive

H.  Account Management Fee: At the end of each month, Merchant will pay to TFC an Account Management Fee. This fee will not be applied towards the reduction of the Purchased Amount. This monthly fee will equal the average of all the payments received as a Specified percentage of the Merchants settlement amount for that Month.

I.  Miscellaneous Service Fee: Merchant shall pay certain fees for services related to the origination and maintenance of Accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or 0.00 for a bank ACH. The current charge for the underwriting and origination of each Merchant

J.  Working Capital Funding: A fee of $5,000.00 or 10% shall be applied every time Merchant enters into any arrangement, agreement, or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than TFC

K.  Contract Service Fee: Commencing at date funded (the "Start Date"), merchant shall pay a fee of $499.00 per month (the "Monthly Fee") the monthly fee is payable each month during the term of this agreement, at a minimum of three months.

L.  Attorney's Fee: $10,000. When merchant breaches any term of this Agreement and TFC is required to retain counsel to enforce, defend or collect any term of this Agreement.

[ALL FEES ARE SUBJECT TO CHANGE]

FOR THE MERCHANT (#1) By: _____     _____
                                        (Print Name and Title)                              (Signature)


FOR THE MERCHANT (#2) By: _____     _____
                                        (Print Name and Title)                              (Signature)

7

PROPERTY OF TAILORED FUND CAP LLC

Bank Login Information

Dear Merchant,

Thank you for accepting this offer from TFC. We look forward to being your funding partner for as long as you need.

Daily ACH Program:

TFC will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

TFC will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank: _____

Bank portal website:

Username: _____

Password: _____

Security Question / Answer 1: _____

Security Question /Answer 2: _____

Security Question / Answer 3: _____

Any other information necessary to access your account:

_____

_____          _____

Merchant / Owner Signature                                                                      Date

9

PROPERTY OF TAILORED FUND CAP LLC                                                      Initial:_____

# OptimumBank

02/19/2021

TAILORED FUND CAP LLC
1274 49TH ST # 197
BROOKLYN NY 11219

Dear Mr. YOSEF YEHUDA BREZEL,

Thank you for allowing OptimumBank to help you with your recent account opening. We are committed to providing our customers with the highest level of service and the most innovative banking products possible.

We are very glad you chose us as your financial institution and hope you will take advantage of our wide variety of checking, savings, and commercial products, all designed to meet your specific needs.

For more detailed information about any of our products or services, please refer to our website, www.OptimumBank.com, or visit any of our convenient locations. You may contact us by phone at 954-900-2800.

Please do not hesitate to contact me directly, should you have any questions. We will contact you in the very near future to ensure you are completely satisfied with the services you have received thus far.

Respectfully,

Latina E Sutton
Personal Banker
2929 E Commercial Blvd
Ft. Lauderdale, FL 33308
954-900-2800

Case 1:22-cv-01245-JSR     Document 172-35     Filed 02/13/23     Page 43 of 43

Inst: 051      Branch: 003      Window Machine: 002      Teller: 00032      Time: Mon Feb 22 14:33:41 2021

**Updates on previous screen successful.**

MONTHLY FEE                    Account Number    0210022984              Officer Code

| Field | Description | Value | I/D | Field | Description | Value | I/D |
|-------|-------------|-------|-----|-------|-------------|-------|-----|
| 714 | ATM/POS OD OPTION | 2 | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |
| 000 | | | ⌄ | 000 | | | ⌄ |

Next Profile  [2 ⌄]   Next Account Number   [0210022984]

[Inquire]   [Update]   [Reset]